UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD F. MILLER,
Plaintiff,

v.

PHILIPP HOLZMANN *et al.*,
Defendant.

Civil Action No. 95-1231 (RCL/JMF)

**REPORT AND RECOMMENDATION**

Currently pending and ready for resolution is Defendant Harbert Construction Services (U.K.), Ltd. and Bill Harbert International Construction, Inc.'s Motion to Dismiss the Government's Second Amended Complaint [#288]. For the reasons stated below, I recommend that the motion be denied.

I.   Harbert Construction Services (U.K.) Ltd.

In my Report and Recommendation, I concluded that the allegations in relator's Second Amended Complaint and the government's Complaint in Intervention were insufficient and did not allege the nature of the fraud perpetrated with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. As to Harbert Construction Services (U.K.), Ltd. ("Harbert U.K."), I insisted that the complaint specify "whether a representative of this corporation (who shall be identified by name, if possible) agreed with representatives of Holzmann, Harbert, and Anderson (again, named if possible) to submit the rigged bids on Contract 20A." Miller v. Holzmann, No. 95-CV-1231, 2006 WL 568722, at *8 (D.D.C. Mar. 9, 2006). I also demanded that the United States "indicate whether a representative of this corporation [ ] agreed with

Holzmann, Harbert and Anderson that the winning bidder on Contract 07 would pay the losing bidder a 'loser's fee' and that the Joint Venture would submit the higher bid and receive a payment from the co-conspirator who got the contract." Id.  Finally, I insisted that the government "specify whether a representative of Harbert U.K. agreed with Holzmann, Harbert and Anderson that the Joint Venture would submit a higher, complimentary bid on Contract 29 so that the unnamed co-conspirator could get the contract." Id.

The government, while not necessarily accepting my projected theory of liability, has modified its allegations as to Harbert U.K. substantially in its Second Amended Complaint.  It alleges that in May 1998, Anderson, working on behalf of Harbert International, Inc. ("HII"), Bilhar and Harbert U.K. attended a meeting in the Frankfurt offices of Holzmann where the potential competitors discussed the submission of non-competitive bids on Contract 20A. United States Second Amended Complaint ¶ 30.  It then alleges that Peter Schmidt and "co-conspirators acting on behalf of . . . HII, Bilhar, and Harbert U.K." along with Holzmann and Jones negotiated a bid-rigging agreement with Bilfinger+Berger, under which it was agreed that Fru-Con Construction, Inc. would submit an artificially inflated bid on Contract 20A in exchange for payment of money." Id. ¶ 31.  In June 1998, representatives of HII, Bilhar, Harbert U.K. and Jones are alleged to have met to decide upon how inflation would be added to the bid price that was to be submitted in the name of HII and Jones on Contract 20A. Id. ¶ 32.  On August 3, 1998, Holzmann, "acting under the direction of Peter Schmidt on behalf of [ ] Holzmann, Jones, HII, Bilhar, and Harbert U.K. negotiated an agreement with Archirodon Group, Inc., under which it was agreed that George A. Fuller Company would not bid on Contract 20A in exchange for payment of money." Id. ¶ 34.  On August 3, 1998, "Anderson, acting on behalf of [ ] HII, Bilhar,

Harbert U.K., Holzmann and Jones, submitted a letter to the project owner of Contract 20A, increasing the previously submitted Harbert-Jones Joint Venture bid on contract 20A by 3.5 percent to approximately $129 million. Id. ¶ 36. "Anderson and [ ] Schmidt, acting on behalf of [ ] HII, Bilhar, Harbert U.K., Holzmann, and Jones, renegotiated the payment terms of the bid-rigging agreement with Archirodon Group, Inc. on Contract 20A." Id. ¶ 49. They, acting on behalf of the same defendants, "met with agents from Archirodon Group, Inc. to discuss the payment schedule under the bid-rigging agreement on Contract 20A. Id. ¶ 50. "Harbert U.K. then made at least two payments in the amounts of approximately $532,000 and $319,000 to [ ] Holzmann, knowing that the purpose of these payments was to pay off co-conspirators." Id. ¶ 59(d). "Harbert U.K. and Holzmann charged the Harbert-Jones Joint Venture for 'pre-bid consulting services' and 'U.S. consulting services.'" Id. ¶ 59(a).

These allegations provide more than adequate notice by the government of its expected proof as to Harbert U.K.. Harbert U.K. now knows that the government will claim that Anderson was working on behalf of Harbert U.K. (*inter alios*) when he attended the meeting in Frankfurt at which the bid-rigging scheme was specifically discussed. It also knows that the government will claim that Peter Schmidt was working with "conspirators" acting on behalf of Harbert U.K. (again *inter alios*) when representatives of Holzmann and Jones agreed that Fru-Con would submit the artificially inflated bid and be paid off in return. While the "conspirators" are not named, the government has indicated that it will prove that a representative of Harbert U.K. was a party to the bid rigging deal and present when the deal was made.[1] Harbert U.K. also

---

[1] I would have to assume that discovery has indicated who the government claims were the actual "conspirators" who acted on Harbert U.K.'s behalf. If it has not, I will order the government to file a praecipe stating the names of the "conspirators" to whom it is referring in

knows that the government is alleging that Harbert U.K.'s representative discussed how much inflation would be added to the bid with other parties to the scheme and that Peter Schmidt, representing Harbert U.K. (*inter alios*) specifically agreed that the George A. Fuller Co. would not bid and that Anderson and Schmidt, acting on Harbert U.K.'s behalf would increase the bid submitted by Holzmann and Jones to approximately $129 million.  Similarly, Harbert U.K. knows that the government is alleging that Anderson and Schmidt, acting on behalf (*inter alios*) of Harbert U.K. re-negotiated the payment due Archirodon for not bidding.  Finally, Harbert U.K. knows that the government alleges that it made two substantial payments to Holzmann, knowing that the money was going to be used to pay off the conspirators and to have then charged the joint bid for two false or phony expenditures.  Thus, Harbert U.K. knows the government's theory of its liability–that it was, by virtue of its participation in the Frankfurt meeting, a co-conspirator in the bid rigging scheme, that Anderson and Schmidt were acting on its behalf when they made the deal to rig the bids, that Harbert U.K. paid money to some of the participants in exchange for their not bidding, and that it covered up what it had done with phony charges for "consulting services."

I appreciate that Harbert U.K. sees inconsistencies in paragraphs 30, 31, 32, 34 and 36[2] in terms of identifying on whose behalf Schmidt and Anderson are acting but that goes to the sufficiency of the government's proof, not to the adequacy and particularity of its allegations. Nor can I accept its contention that "these paragraphs offer nothing more that the generalized

---

paragraph 31.

[2] Harbert Construction Services (U.K.), Ltd. and Bill Harbert International Construction, Inc.'s Reply in Support of Their Renewed Motion to Dismiss the Government's Second Amended Complaint ("Reply") at 5.

allegations that Schmidt and Anderson were acting on behalf of all of the alleged co-conspirators." Id. at 5-6. That is not so. While Harbert U.K. may quarrel with their accuracy, these paragraphs specifically indicate, by name, the entities on whose behalf Schmidt and Anderson were working and meet the requirements of my order. Whether the government can make its case is an entirely different question.

Additionally, as to the other two contracts, the government's silence is deafening; it makes no allegations whatsoever as to Harbert U.K.'s participation in the bid-rigging of the other two contracts, meaning that it has no case as to them. Thus, Harbert U.K. knows that it need not mount a defense to any allegations as to contracts 07 and 29.

II.     Bill Harbert International Construction, Inc.

The only allegations in the government's Second Amended Complaint as to this defendant is that in the period between December 10, 1991, and June 20, 1993, "agents for [Bill Harbert International Construction, Inc. ("BHIC")], acting on behalf of the Harbert-Jones Joint Venture, submitted and caused to be submitted to USAID 33 invoices" and that in the period between "December 10, 1991, until January 18, 1995, agents for defendant BHIC, acting on behalf of the Harbert-Jones Joint Venture, submitted to USAID a total of 22" invoices. United States' Second Amended Complaint ¶¶ 44, 72. The 1991 submission was for Contract 20A and the other for Contract 07.[3] In each instance, the government alleges that the BHIC submitted the invoices in documents entitled "Contractor's Certificate and Agreement with Agency for International Development–Contractor's Invoice and Contract Abstract" in which BHIC falsely certified that no one had been compensated to earn the contract when in fact more than

---

[3] There is no allegation of a submission by BHIC as to Contract 29.

$5,226,000 had been paid to certain participants in the bid-rigging scheme so that the Harbert-Jones Joint Venture would be awarded the contract.

BHIC seizes upon the absence of any allegation that it *knew* that the statements the government identifies were false and argues that, since the government does not specify when it gained knowledge of the conspiracy, it is left to guess `"what the government contends it did to obtain knowledge of the conspiracy." Reply at 3.

In my view, that takes the particularity requirement of Rule 9 too far and threatens to resurrect the hyper-technical requirements of code pleading. In the ordinary language of modern legal pleadings, that the word "knowingly" is missing should not lead to dismissal. A complaint may be dismissed for its insufficiency only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Since the government can prevail if it proves that BHIC knew the representations in the documents accompanying the invoices were false, that minimal standard is met even though the word "knowingly" is not in the paragraphs to which I have referred. BHIC is on notice that the government is alleging that BHIC's role in the conspiracy was to submit the invoices. I have to presume that the government is alleging BHIC's representatives knew of the bid rigging conspiracy when it submitted the invoices. Without such knowledge, the government has no case whatsoever against BHIC and would not dare continue its prosecution of its case. To do so would subject it to significant consequences, including liability under Rule 11 of the Federal Rules of Civil Procedure. I will therefore presume that the government has evidence of such knowledge; if it does not, I expect it to dismiss its case against BHIC forthwith.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.** See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).


Dated: _____
        JOHN M. FACCIOLA
        UNITED STATES MAGISTRATE JUDGE