**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**RICHARD F. MILLER,**

    **Plaintiff,**

    **v.**                                          **CA No. 95-01231 (RCL/JMF)**

**PHILLIP HOLZMANN, et al.,**

    **Defendants.**

**REPORT AND RECOMMENDATION**

Although my Report and Recommendation dated October 31, 2006 addressed certain issues raised in Bill L. Harbert's Motion to Dismiss the Relator's Fourth Amended Complaint [#285], this Report and Recommendation addresses the remaining issues. As explained further herein, I recommend that Harbert's motion be denied.

In my Report and Recommendation dated March 9, 2006, I required that the relator's complaint be amended to allege the specific individual participation of Bill Harbert in the bid rigging conspiracy if the relator intended to impose liability upon Bill L. Harbert as an individual. Miller v. Holzmann, No. 95-CV-1231, 1006 WL 568722, at *10 (D.D.C. 2006).

Relator has now done so. In paragraph 28 he alleges that Mr. Harbert promised to pay Tommy Kitchens, the chief financial officer of Harbert U.K. and Harbert International Establishment $1 million dollars for his role in administering the payoffs that were associated with the bid rigging scheme. Relator's Fourth Amended Complaint for False Claims Act Violations and Demand for Jury Trial ¶ 28. He then alleges that:

    1.        Mr. Harbert saw to it that relator, who had learned of the details of the bid-

      rigging conspiracy, did not attend future meetings of the Harbert/Jones joint venture. Id. ¶ 42.

2. Mr. Harbert received millions of dollars from the bid-rigging conspiracy and Anderson told Mr. Harbert the amount of false invoices to be paid to Holzmann so that Holzmann could pay the conspirators not to bid or submit complimentary bids for contract 20A. Id. ¶¶47, 49.  Mr. Harbert recorded the amount of false invoices–to the penny–and the payment dates of the false invoices on his pocket calendar. Id. ¶50.

3. Mr. Harbert authorized transfers of over $3 million to Holzmann to pay off the conspirators (*id*) and was aware of a fraudulent "sale/leaseback" transaction between Harbert International, Inc. and Sabbia for construction equipment used on contract 20A. Id. ¶ 51.

4. As to contract 29, Mr. Harbert conspired to rig the bids on this contract and Mr. Harbert personally agreed with Holzmann, Harbert International Inc., and Anderson that Harbert/Jones would submit a higher complimentary bid on contract 29.

In my view, as to these two contracts, the allegations are sufficient and comply with the requirements of my order.  As to contract 20A, they specify Mr. Harbert's personal involvement in the bid rigging scheme and as to contract 29, relator has undertaken the burden to prove that Mr. Harbert personally agreed to rig the bids.  They also identify the specific things that Mr. Harbert did to advance the scheme, i.e., pay Kitchens to administer the payoffs to the participating bid riggers, prevent relator from attending meetings where he might learn more of

the bid rigging conspiracy, authorize the transfer of over $3 million to Holzmann to pay off his fellow conspirators and personally agree with his co-conspirators that Harbert/Jones would submit a higher complimentary bid on contract 29. Holzmann also transferred $2.01 million to an account controlled by Mr. Harbert. Most significantly, relator charges Mr. Harbert with learning from Anderson the amount of false invoices that would be paid to Holzmann so that Holzmann could pay the conspirators not to bid or submit complimentary bid and totaling them to the penny, with payment dates, in his pocket calendar.

Mr. Harbert surely knows now exactly what relator is alleging and the theory of his case, i.e., that Harbert personally and individually participated in the bid-rigging conspiracy and profited directly from it with full knowledge of what all the conspirators, including himself, were doing and had to do to make the scheme work.

Because that is so, I cannot equate this case, as Mr. Harbert does, with cases that have indicated that non-specific allegations, based on "information and belief," did not meet the particularity requirements of Rule 9(b). First, it is not true, as Mr. Harbert charges, that allegations based on information and belief are in themselves insufficient to meet the requirements of that rule. Rule 9(b) cannot be construed to have amended the rest of the Federal Rules, which have always been interpreted to permit a pleader to premise an allegation or denial upon information and belief, provided, of course, that the pleader is also complying with the requirements of Rule 11(b)(3). He is certainly correct to point out that in cases where all the allegations of fraud are based on information and belief that the pleader, when challenged, must demonstrate that the information, establishing the fraud, is peculiarly within the defendant's knowledge and present a "sufficient statement of facts upon which the allegations of fraud are

based so as to provide the Court and defendants with notice of the allegations." <u>United States ex rel. Grynberg v. Alaska Pipeline Co.</u>, No. 95-CV-725, 1997 WL 33763820, at *5 (D.D.C. March 27, 1997). While, by my count, three of the numbered paragraphs of the Fourth Amended Complaint (¶¶ 27, 49 and 50) are based on information and belief, the entire complaint specifically charge Mr. Harbert's personal involvment in the scheme from his paying Kitchens to make the requisite payoffs to his learning from Anderson about the phony invoices and then pocketing millions of dollars from the scheme. Surely, he has to know that relator has taken on the burden of showing Mr. Harbert's knowing participation in a criminal scheme that made him rich and he surely knows all the specific allegations that relator says he will prove.

    I appreciate that Mr. Harbert denies these allegations to the point of insisting that he be permitted to file a motion under Rule 11 to establish that relator lacks any evidentiary basis for the allegations of serious criminal behavior he makes. But, I will not permit him to do so now. Judge Lamberth has said that this case is going to trial in January. If, at the trial, relator's case comes a cropper and collapses, Judge Lamberth will have adequate remedies to sanction relator for making baseless allegations if Mr. Harbert establishes that is what he has done.

    **Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).**

<br>

                                                             _____
                                                             JOHN M. FACCIOLA
Dated:                                                     UNITED STATES MAGISTRATE JUDGE