IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
ex rel. Richard F. Miller, )
 )
 Plaintiff, )
 )   Case No. 1:95CV01231-RCL-JMF
 v. )
 )
PHILIPP HOLZMANN A.G., et al. )
 )
 Defendants. )

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN RESPONSE TO COURT ORDER OF DECEMBER 12, 2006**

Defendants Bill Harbert International Construction, Inc., Harbert Construction Services

(U.K.) Ltd., Bilhar International Establishment, and Bill L. Harbert (hereinafter "these

Defendants") respectfully submit this Memorandum of Points and Authorities In Response to

Court Order of December 12, 2006.

**INTRODUCTION**

On December 12, 2006, this Court entered an Order [Dkt. 460] stating that its decision

concerning a Motion to Compel the production of relator's Privilege Log Entries ## 34, 35, 40,

and 41 [Dkt. 367] needed further consideration and, as such, ordered supplemental briefing on

the following issues of law:

 1.      Was relator's counsel correct in asserting that the "common interest" rule
 precluded his client's surrender of the privileged documents to the government from
 being deemed a waiver of the privilege vis a vis any third party, such as the defendants?

 2.      Irrespective of the answer to question #1, did the surrender of the documents to
 the government constitute a waiver of the privilege under (a) the law of this Circuit; (2)
 the prevailing views of the other Circuits?  See Edna Selan Epstein, The Attorney-Client
 Privilege and the Work Product Doctrine, 619 (4th ed 2001).

The Court should find that none of the documents in question are privileged for the following reasons: (1) no "common interest" exists between relator and the government because the interest of the two parties are not inherently aligned; and (2) the dissemination of the documents constitutes a waiver of privilege under the law of this Circuit and other Circuits.

## I.      The Common Interest Rule Does Not Apply To The Documents In Question.

The common interest privilege, also referred to as the joint defense or joint prosecution privilege, "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Id. (quoting Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998)).  The common interest privilege requires the party asserting privilege to demonstrate that, "(1) the communications were made in the course of a [common legal] effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."  *See Mineba Co. Ltd. v. Papst,* 228 F.R.D. 13, 16 (D.D.C. 2005) (stating that the common interest privilege requires evidence of a coordinated legal strategy between two or more parties).  Although case law does allow the common interest privilege in the context of a *qui tam* action, this protection is not afforded in all circumstances.  *See, e.g., United States ex rel. [redacted] v. [redacted]*, 209 F.R.D. 475, 479 (D. Utah 2001) ("This is not to say, however, that Relators and the United States will always share this community of interest"); *see also United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554 (C.D. Cal. 2003) (noting that government may use relator's communications in a manner adverse to him in order to: "(a) to justify the government's position in a dispute over the relator's share of a recovery, (b) to demonstrate the relator is not the 'original source' of the information alleged in the complaint,

and (c) to demonstrate that the relator's complaint should be dismissed for failure to state a claim").

When, as here, the interests of the government and relator are not inherently aligned, the common interest privilege cannot apply.  *See generally*, Mahaffey, George S. Jr., *Taking Aim at the Hydra: Why the "Allied-Party Doctrine" Should Not Apply in Qui Tam Cases When the Government Declines to Intervene*, 23 Rev. Litig. 629 (2004) (noting that, "because the relator's goals are primarily monetary, the informer's financial interest under a qui tam statute undermines the comparable public interest in dispassionate assessment of whether and how to prosecute violations of a penal statute").

Relator bears the burden establishing that a common interest privilege applies. Accordingly, relator must prove that the communications were made in an effort to further the commonly-shared interest of both the government and relator.  *See Mineba*, 228 F.R.D. at 17 (stating that "the intent of *one* of the parties to enter into an agreement is *insufficient* to establish the existence of a [common interest] privilege.") (emphasis added).  Relator cannot do that because at the time of the disclosure, relator's and government's interests were not been "inherently aligned."  Therefore, the common interest doctrine does not apply.

Relator suggests that the privilege applies simply because the documents in question are communications from relator's counsel sent directly to counsel for the government.  [Dkt. 383] However, the simple indication that the communications were between counsel for the two parties does not satisfy relator's burden of establishing the common interest privilege.

At the time that he shared these documents with the government, relator was arguably a potential subject of the government's subsequent criminal inquiry.  Indeed, in his own deposition, Mr. Miller acknowledges that based on his knowledge of the facts and his knowledge

of "antitrust and other laws" that he "had possibly some exposure in this [i.e., the bid rigging allegations]." Miller Deposition Tr. At 272: 3-5. He further acknowledged that had he gone forward earlier, many of the alleged false claims would not have been made. Miller Tr. 274: 8. Therefore, at the time of the disclosure, relator's interests may have been at direct odds with the government's interests; at the very least, their respective interests were not "inherently aligned."[1]

Moreover, at the time of the disclosure, there could not have been any explicit common interest agreement between the relator and the government, as the government presumably was not even aware of the allegations. Because there was no explicit agreement in place at the time of the disclosure, this case is distinguishable from *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 2004 WL 2009413 (D.D.C., Aug. 12, 2004) (Lamberth, J.).

Relator and the government had divergent interests at the time of the disclosure, and they have continued to have divergent interests in some respects throughout the litigation. For instance, their respective interests diverge with respect to the "bounty fees" that relator would recover should civil liability damages be awarded. *See, e.g., United Staes ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 561 (C.D. Cal. 2003); *Searcy v. Philips Elec. N. Am. Corp.*, 117 F.3d 154, 160 (5th Cir. 1997); *United States ex rel. [redacted] v. [redacted]*, 209 F.R.D. 475, 479 (D. Utah 2001). This was an issue on which the government and relator diverged from the very outset of the litigation, and they were certainly adverse to one another in this regard at the time the disclosure of the documents at issue was made.

---

[1]     In order to establish common interest, the parties must prove that their interests are *inherently aligned. See United States ex rel. [redacted]*, 209 F.R.D. at 479 (noting that the common interest privilege applies when "different persons or entities have *identical* legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice") (emphasis added)*; Mineba, 228 F.R.D. at 16* (protecting work product from discovery "among attorneys with *identical* litigation perspectives") (emphasis added). In order for relator to satisfy his burden of proving that common interest exists, he must establish that "the nature of the interest [is] identical, not similar." *United States ex rel. [redacted]*, 209 F.R.D. at 479.

Obviously, the common interest privilege cannot apply where, as here, the parties' interests are adverse at the time of disclosure.  The burden of proving the applicability of the common interest privilege requires more than a demonstration that the two parties are not directly in conflict.  Relator fails to meet the burden of establishing that a common interest exists between himself and the government.  It is only when two parties' interests are inherently aligned that a common interest may be forged.  Relator has provided no evidence that the documents in question were created in furtherance of a cohesively-aligned, common legal effort and then shared with the government in furtherance of that effort.  Accordingly, the common interest privilege does not and cannot apply.

## II.     Relator's Voluntary Disclosure to the Government Waived Privilege

Assuming *arguendo* that the common interest privilege does apply to these documents, relator must also establish that there has been no waiver of the privilege.  *Id.*  Relator has not done this.  At the very most, relator and the Civil Division of the Department of Justice shared a common interest in pursuing civil damages against the named defendants.[2]  There cannot have been a common interest between relator and the Criminal Division of the Department of Justice.[3]  Therefore, once the documents at issue were disclosed to the Criminal Division, any common interest that could have applied was waived by the government and the relator.  Thus, the privilege was broken.  The fact that the disclosure was made within the government does not save the alleged privilege.

---

[2]     These Defendants deny that such a common interest ever existed.  Moreover, these Defendants note that while the government ultimately intervened in this matter, it did so only with respect to certain of relator's claims and only against some of the defendants named in relator's Complaint.

[3]     While the interests of relator and the Criminal Division were not necessarily adverse, their respective interests cannot have been "inherently aligned" such that a common interest privilege would apply between them.

Common law provides authority for both the attorney-client privilege and the work product privilege, but this protection must be construed narrowly. *See Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) (noting that privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth"). As a general rule, disclosure to a third party of material otherwise privileged results in a waiver of that privilege. *See United States v. Bernard*, 877 F. 2d 1463, 1465 (10th Cir. 1989) (stating that, "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client privilege and waives the privilege"); *United States v. Ryans*, 903 F.2d 731, 741 (10th Cir. 1990) (noting that "the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party").

In the instant case, relator provided documents he claims are privileged to the United States Antitrust Division. Although relator asserts a common interest between himself and the Civil Division of the Department of Justice, the documents were ultimately disclosed to the Criminal Division of the DOJ. Relator argues that these disclosures do not constitute a waiver simply because "the government" was the party to whom the materials were disclosed. The case law of this Circuit and the prevailing views of other Circuits provide no such exception for documents produced to the government. Indeed, a waiver of privilege is a waiver of privilege regardless of whether the materials were disclosed to the government or a non-government entity.

In *Periman Corp. v. United States*, the D.C. Circuit considered the issue of whether disclosure of privileged documents to the government could be exempt from waiver of the privilege. 665 F.2d 1214 (D.C. Cir. 1981). This Court held that when the company disclosed

certain documents to the SEC, it "destroyed the confidential status of the seven attorney-client communications." *Id.* at 1219. It mattered not that the documents were first disclosed to the government. *Id.*

Once a party decides to remove the cloak of confidentiality or privilege, it has removed it for all litigants. *See Id.* at 1221 (noting that "the client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit"); *see also, In re Subpoena Duces Tecum*, 738 F.2d 1367 ( D.C. Cir. 1984) ("It would be unreasonable to suppose that litigation with these other adversaries was not anticipated at the time of disclosure to the SEC. It would be inconsistent and unfair to allow appellants to select according to their own self-interest to which adversaries they will allow access to the materials").

The law of this Circuit is clear: Once disclosure of privileged documents or information occurs, the privilege has been waived. *Periman Corp.* 665 F.2d at 1220; *see also In Re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) (rejecting work-product protection against discovery by a grand jury of documents a company had previously made available to the SEC).

Other Circuits are in agreement that disclosure of otherwise privileged documents to the government constitutes a waiver of the privilege. *See* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 619 (4th ed. 2001) (explaining that, as a general rule, disclosure of work-product materials to a governmental or regulatory agency constitutes a waiver of privilege.) The Tenth Circuit rejected the notion that disclosure of privileged material to the government was immune to waiver, stating that, "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *See Bernard*, 887

F.2d at 1465, *see also Ryans*, 903 F.2d at 741 ("The confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant").

The Second Circuit also contains case law that strongly supports the position that privilege is waived when documents are disclosed to the government.  *See Information Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998) (holding that "work product immunity is lost when a party simply makes a voluntary submission of material to a government agency to incite it to attack the informant's adversary"); *U.S. Info. Sys., Inc. et al. v Int'l Bhd. Of Elec. Workers Local Union Number 3, et al.*, 2002 U.S. Dist. LEXIS 19363 (S.D.N.Y. 2002) (holding that voluntary disclosure of work-product material to a prosecutor waived any protection); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2nd Cir. 1993) ("An allegation that a party facing a federal investigation and the prospect of a civil fraud suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine").

In similar fashion, the First, Third and Sixth Circuits have also held that when privileged materials are disclosed to the government, the privilege is waived.  *See United States v. Mass. Inst. Of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) (holding that disclosure of privileged documents to a third party constitutes a forfeiture of privilege because to do otherwise would create a path "which has no logical terminus"); *Westinghouse v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3rd Cir. 1991) ("We hold that Westinghouse's disclosure of work product to the SEC and the DOJ waived the work-product doctrine against all adversaries. … Moreover, an exception for disclosure to governmental agencies is not necessary to further the doctrine's purpose"); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002) (holding

that privilege has been waived, stating that, "[t]he ability to prepare one's case in confidence …
has little to do with talking to the Government. … Whether or not to 'show your hand' is
quintessential litigation strategy").

The issue at hand involves written communications from relator's counsel sent directly to
counsel for the government.  The documents are also said to contain attached work product notes
prepared by relator himself and communicated to his attorney.  Both attorney-client and work
product privileges have been asserted for these documents.  Relator argues that these privileges
remain despite the fact that the documents were disclosed to a third party, because the disclosure
was made to the government.  This argument is without merit.  The case law of this Circuit, as
well as the prevailing view of other Circuits, maintains that waiver of privilege occurs when
documents are disclosed to a third party regardless of whether the third party is a governmental
entity.

Relator voluntarily chose to disclose the subject documents to the Department of Justice,
which then circulated the documents to both the Civil and Criminal Divisions.  It cannot be
argued that there was a joint, or common interest amongst the relator, the Civil Division, and the
Criminal Division.  The relator's disclosure, and the government's subsequent dissemination of
the information and documentation was neither compelled nor required.  Rather, the disclosure
was made freely and in furtherance of relator's own self interest.  Among all of relator's
documents and communications that concern the case at hand, these particular documents,
although privileged, were deemed important enough by relator to disclose them to the
government.  Once this disclosure was made, any such privileged that these documents may have
qualified for was then waived.

Attorney-client and work product privilege are important doctrines that permit clients to communicate confidentiality with their counsel and allow attorneys to protect their strategy and preparations for litigation.  Presumably, relator and his counsel have many other documents in their possession that are protected by attorney-client and work product privilege.  No one is suggesting that relator is not entitled to the protection that these privilege doctrines provide.  However, once relator chooses to disclose otherwise privileged documents to the government, any privilege once enjoyed for those documents is waived.

Public policy should not allow relator to disclose privileged documents to a third party when relator believes disclosure benefits him and then turn around and invoke a privilege preventing further disclosure of the very same documents to other interested parties.  *See Frontier Refining, Inc.*, 136 F.3d at 704 ("a litigant cannot use the work product doctrine as both a sword and shield by selectively using he privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion").  Courts have also been reluctant to find a common interest privilege when a party attempts to use privilege as both a sword and shield.

> A well-traveled route to achieving relief in civil litigation has been to persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation against that party.  The party who travels that route should not be protected from disclosure of its statements … In such circumstances, the party asserting work product and the government agency are not allies: they have not agreed on a common strategy, much less commenced joint or even parallel litigation.

*U.S. Info. Sys. Inc.*, 2002 U.S. Dist Lexis 19363 at 13.

Any privilege that may have once applied to the subject documents was waived when the documents were disclosed to the government.  The fact that the disclosures were made to the

government, as opposed to a non-governmental entity, does nothing to change the consequence of waiver.  The only remaining avenue that could exempt the subject documents from waiver is the common interest privilege.  However, relator fails to meet the burden of establishing that a common interest exists between himself and the government.  It is only when two parties' interests are inherently aligned that a common interest may be forged.  Relator has provided no evidence that the documents in question were made in the course of an inherently aligned common legal effort and then communicated in furtherance of that effort.  Accordingly, relator fails to establish a common interest between himself and the government.  Because the subject documents were disclosed to a third party absent the establishment of a common interest, any privileges that may have once applied have indeed been waived.

## CONCLUSION

For the foregoing reasons, these Defendants respectfully request that the Court compel relator's production of documents described by its privilege log entries ##34, 35, 40 and 41.

Respectfully submitted this 18th day of December, 2006.


/s/ June Ann Sauntry_____
June Ann Sauntry, D.C. Bar # 464269
Bryan B. Lavine (*Admitted Pro Hac Vice*)
James J. Mills (*Admitted Pro Hac Vice*)
TROUTMAN SANDERS LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 962-6675 (fax)

Barry Coburn, D.C. Bar # 358020
TROUT CACHERIS PLLC
1350 Connecticut Avenue, N.W.
Suite 1220
Washington, D.C. 20036
(202) 464-3300
(202) 464-3319 (fax)

Attorneys for Defendants
BILL HARBERT INTERNATIONAL
CONSTRUCTION, Inc., HARBERT
CONSTRUCTION SERVICES (U.K.) LTD.,
BILHAR INTERNATIONAL ESTABLISHMENT,
and BILL L. HARBERT

## CERTIFICATE OF SERVICE

I, June Ann Sauntry, an attorney, hereby certify that on this 18th day of December, 2006,

a copy of Defendants' Memorandum of Points and Authorities In Response to Court Order of

December 12, 2006 was served on all parties and counsel in this through use of the Court's CM-

ECF document filing system.

/s/ June Ann Sauntry
June Ann Sauntry

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308
(404) 885-3000 (phone)
(404) 962-6766 (fax)

1734816-1                                    - 13 -