## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RICHARD F. MILLER,**

    **Plaintiff,**

    **v.**                              **CA No. 95-01231 (RCL/JMF)**

**PHILLIP HOLZMANN, et al.,**

    **Defendants.**

### REPORT AND RECOMMENDATION

Currently pending and ready for resolution is <u>Bilhar International Establishment's Memorandum in Support of its Motion for Judgment on the Pleadings Regarding the United States' Second Amended Complaint and the Relator's Fourth Amended Complaint</u> [#332]. Following an evidentiary hearing held on December 7, 2006, and based on the following findings of fact and conclusions of law, I recommend that Bilhar's motion be granted.

### FINDINGS OF FACT

#### Corporate Organization and Pleadings

1.    On September 21, 1993, Harbert International Establishment changed its name to Bilhar International Establishment. <u>United States' Opposition to Defendant Bilhar International Establishment's Motion for Judgment on the Pleadings</u> at 3.

2.    On June 30, 1995, relator filed his original complaint. <u>Complaint for False Claims Act Violations and Demand for Jury Trial</u>.  The following parties were named:

    a.    Philipp Holzmann, A.G.

    b.    Bill Harbert International Construction, Inc.

     c.      Harbert International Establishment, Inc.

     d.      Harbert Corporation

     e.      Harbert International, Inc.

     f.      Harbert U.K. Services, Ltd.

     g.      J.A. Jones Construction Co.

     h.      Fru-Con Construction Corp.

     i.      Sabbia A.G.

Id. at 1-2.

3.     Defendant Harbert International Establishment, Inc. was described in relator's original complaint as "a Liechtenstein corporation which, upon information and belief, has its principal place of business in Birmingham, Alabama." Id. at 3.

4.     On June 28, 1999, relator filed his first amended complaint.  The following parties were added:

     a.      American International Contractors, Inc.

     b.      George A. Fuller Co.

First Amended Complaint for False Claims Act Violations and Demand for Jury Trial.

5.     On July 20, 1999, a partial seal was lifted as to relator's first amended complaint regarding:

     a.      Philipp Holzmann, A.G.

     b.      J.A. Jones Construction Co.

     c.      Fru-Con Construction Corp.

     d.      Parent Corp. of Fru-Con

Order (July 20, 1999) at 1.

6.    On October 19, 1999, a partial seal was lifted as to relator's first amended complaint

regarding:

    a.    American International Contractors, Inc.

    b.    George A. Fuller Co.

    c.    Parent Corp. of George A. Fuller Corp.

Order (Oct. 19, 1999) at 1.

7.    On December 6, 2000, the United States Agency for International Development

("USAID") sent notice of suspension to Harbert International Establishment. Bilhar

International Establishment's Reply in Support of its Motion for Judgment on the

Pleadings, Attachment 2, Part A at 2.

8.    On December 14, 2000, counsel for Bill L. Harbert, Bill Harbert International

Construction, Inc., and Harbert International Establishment responded to USAID's notice

of suspension. Id., Attachment 2, Part A.  In its response, counsel provided USAID with

detailed descriptions of the various Harbert entities.

    a.    Harbert Construction Corporation, a company involved in the construction

    business, was organized in 1949.  The company was owned primarily by John M.

    Harbert.  Bill L. Harbert owned up to 6.5% of the company. Id., Attachment 2,

    Part A at 4.

    b.    Harbert Corporation, a holding company, was formed in 1981, when Harbert

    Construction Corporation sold certain assets.  The company was owned primarily

    by John M. Harbert.  Bill L. Harbert owned up to 6.5% of the company.  Bill L.

3

Harbert sold his interest in the company back to Harbert Corporation in 1994. <u>Id.</u>, Attachment 2, Part A at 4-5.

c.     <u>Harbert International, Inc.</u> was formed in 1981 to carry on the construction business of Harbert Construction Corporation.  It was 100% owned by Harbert Corporation. <u>Id.</u>, Attachment 2, Part A at 5.

d.     <u>Harbert International Establishment</u> was formed in 1975 in Liechtenstein. Harbert International, Inc. owned 58% of the company and Bill L. Harbert owned 42%.  In 1989, Harbert International, Inc. owned 50% of the company and Bill L. Harbert owned 50%.  In 1991, Bill Harbert International Construction, Inc. owned 79% of the company and Bill L. Harbert owned 21%.  In 1993, the name of Harbert International Establishment was changed to Bilhar International Establishment.  The ownership stayed the same. <u>Id.</u>, Attachment 2, Part A at 5.

e.     <u>Bill Harbert International Construction, Inc.</u> was formed in 1991, when the name was given to an Alabama corporation, BLH Enterprises, Inc., which was originally incorporated in 1986.  Bill L. Harbert owned 100% of both BLH Enterprises, Inc. and Bill Harbert International Construction, Inc.  In 1992, BLH Enterprises, Inc., which was primarily involved in real estate development, changed its name to Bill Harbert International Construction, Inc.  Its corporate domicile was changed to Delaware.  In 1992, Bill Harbert International Construction, Inc. began its involvement in construction. <u>Id.</u>, Attachment 2, Part A at 6.

4

       f.      <u>Harbert International Establishment</u> was established in 1993 in Liechtenstein.

             Bill L. Harbert owned 51% and Billy Harbert owned 49%. <u>Id.</u>, Attachment 2, Part

             A at 6.

       g.      <u>B. L. Harbert International, L.L.C.</u> was established in 1999 in Delaware.  Initially,

             Billy Harbert owned 95% and Bill L. Harbert owned 5%.  As of December 1,

             2000, Billy Harbert owned 99% and B. L. Harbert International, Inc. (a

             corporation owned 100% by Billy Harbert) owned 1%. <u>Id.</u>, Attachment 2, Part A

             at 6-7.

9.     On January 16, 2001, relator filed his second amended complaint. <u>Second Amended

Complaint for False Claims Act Violations and Demand for Jury Trial</u>.  The following

parties were added:

       a.      Bill L. Harbert

       b.      Roy Anderson

<u>Id.</u> at 2.

10.    On February 12, 2001, the seal was lifted as to relator's second amended complaint.

<u>Order</u> (Feb. 12, 2001) at 1.

11.    On March 13, 2001, the government filed its complaint in intervention. <u>United States'

Complaint in Intervention</u>.  The following parties were named:

       a.      Philipp Holzmann, A.G.

       b.      Bill Harbert International Construction, Inc.

       c.      Harbert International Establishment, Inc.

       d.      Harbert Corporation

    e.      Harbert International, Inc.

    f.       Harbert U.K. Services, Ltd.

    g.      J.A. Jones Construction Co.

    h.      Sabbia A.G.

    i.       Roy Anderson

Id. at 3-4.

12.    Defendant Harbert International Establishment, Inc. is described in the government's complaint in intervention as a Liechtenstein corporation that has its principal place of business in Birmingham, Alabama. Id. at 3.

13.    On July 12, 2001, the government served Harbert International Establishment, Inc. a copy of the complaint in intervention. Relator Richard F. Miller's Memorandum in Opposition to Bilhar International Establishment f/k/a Harbert International Establishment's Motion for Judgment on the Pleadings ("Relator's Opp.") at 4 n.1.

14.    On July 25, 2001, a grand jury sitting in the Northern District of Alabama issued an indictment against the following parties:

    a.      Bill Harbert International Construction, Inc.

    b.      Bilhar International Establishment f/k/a Harbert International Establishment

    c.      Roy Anderson

Relator's Opp. at 3.

15.    On July 31, 2001, Harbert International Establishment filed a motion for an extension of time to file an answer on behalf of "Harbert International Establishment (incorrectly captioned as Harbert International Establishment, Inc.)" Motion for Extension of Time to

<u>File Answer on Behalf of defendants Bill Harbert International Construction, Inc.,</u>

<u>Harbert International Establishment, Inc., and Harbert U.K. Services, Ltd., and</u>

<u>Supporting Memorandum</u> at 1.

16.     On February 4, 2002, Bilhar pled guilty to conspiracy in the Alabama bid-rigging case. Relator's Opp. at 3.

17.     On May 30, 2002, Harbert International Establishment, Inc. filed its answer to the government's complaint in intervention. <u>Answer of Defendant Harbert International Establishment, Inc.</u>

18.     On December 6, 2002, relator moved to amend his complaint. <u>Opposition to Defendants' Motion to Dismiss and Memorandum in Support of Relator Richard F. Miller's Motion for Leave to File Third Amended Complaint for False Claims Act Violations</u>.

19.     On December 18, 2002, the government moved to amend its complaint. <u>Plaintiff United States' Opposition to Defendants Harbert Construction Services (U.K.) Ltd. And Bill Harbert International Construction, Inc.,'s Motion to Dismiss Plaintiff's Complaint in Intervention and Plaintiff's Motion for Leave to File First Amended Complaint</u>. Specifically, the government sought to substitute Bilhar International Establishment for Harbert International Establishment, Inc. <u>Id.</u> at 30.

20.     On March 9, 2006, relator filed his third amended complaint. <u>Third Amended Complaint for False Claims Act Violations and Demand for Jury Trial</u>.  The following entities were named as defendants for the first time:

    a.      Bilhar International Establishment f/k/a Harbert International Establishment

    b.      ABB ASEA Brown Boveri, Ltd.

7

c.        ABB SUSA, Inc. f/k/a Sadelmi USA, Inc.

Id. at 1-2.

The following parties were omitted:

a.        Harbert International Establishment, Inc.

b.        Fru-Con Construction Corp.

Id.

21.   On March 9, 2006, the government filed its first amended complaint. United States' First

Amended Complaint.  The following entities were named as defendants for the first time:

a.        Bilhar International Establishment f/k/a Harbert International Establishment

b.        Harbert International Establishment

c.        Harbert Construction Services (U.K.) Ltd.

Id. at 3-6.

The following parties were omitted:

a.        Harbert International Establishment, Inc.

b.        Harbert UK Services Ltd.

Id.

22.   On April 24, 2006, relator filed its fourth amended complaint. Relator's Fourth Amended

Complaint for False Claims Act Violations and Demand for Jury Trial.  Harbert

Construction Services (U.K.), Ltd. ("UK") was named as a defendant for the first time

and Harbert UK Services Ltd. was omitted. Id. at 1-2.

23.    On April 24, 2006, the government filed its second amended complaint. <u>United States'</u>

<u>Second Amended Complaint</u>.  Harbert International Establishment was omitted. <u>Id.</u> at 3-7.

24.    On May 22, 2006,[1] counsel for Bilhar accepted service of the government's summons and

second amended complaint.  Counsel for Bilhar waived service of the summons of

relator's fourth amended complaint on June 2, 2006. <u>Bilhar International Establishment's</u>

<u>Memorandum in Support of its Motion for Judgment on the Pleadings Regarding the</u>

<u>United States' Second Amended Complaint and the Relator's Fourth Amended</u>

<u>Complaint</u> at 2.

25.    On June 12, 2006, Bilhar filed its answer to the government's second amended

complaint. <u>Bilhar International Establishment's Answer to the United States' Second</u>

<u>Amended Complaint</u>.   Bilhar filed its answer to relator's fourth amended complaint on

July 24, 2006.

26.    Bilhar, a privately-held Liechtenstein company, pled guilty on February 4, 2002, to

engaging in a conspiracy to suppress and eliminate competition on construction contracts

funded by the USAID. <u>Relator Richard F. Miller's Response to Order to Show Cause</u>

("Miller's Response"), Exhibit T at 44 (Transcript of plea of guilty).  Bilhar admitted that

it understood that the government was charging it with a conspiracy to rig bids related to

Contracts 20A, 29 and 07. <u>Id.</u> at 40.

27.    Harbert International Establishment was founded in 1975.  Harbert International

Establishment, Inc. was incorporated in 1999.

---

1 Relator asserts that counsel for Bilhar accepted service on May 31, 2006, rather than May 23, 2006.  The
difference is insignificant.

28. On March 8, 1991, Harbert International Establishment assigned all of its rights under contract 20A. Miller's Response, Exhibit DD.

29. The first allegedly false claim for payment pursuant to contract 20A was on October 3, 1989, and the last on June 20, 1993. United States Complaint in Intervention, Schedule A.

30. The first allegedly false claim for payment pursuant to contract 07 was on September 5, 91, and the last on January 18, 1995. Id.

31. The first allegedly false claim  on contract 29 was on July 10, 1990, and the last on September 19, 1993. Id.

**Findings Pertaining to the Hearing**

32. Robert B. Bell has represented the relator in this qui tam case since 1995. December 7, 2006 Hearing Transcript ("TR") at 63, line 19.

33.  In May 1992, his client, Richard F. Miller (hereafter "Miller" or "relator") provided him with a chart that Miller had created to illustrate the organization of the Harbert entities before and after what Miller believed was a re-organization of those entities.  Miller intended to sue all the entities that appeared on the second page of the chart, *i.e.*, the "post-reorganization" page.  Harbert International Establishment is one of the entities on that page. TR at 64, line 24.

34. Miller's second amended complaint, the one that was unsealed and served, names as a defendant Harbert International Establishment, Inc.  Bell indicated that the entity he intended to sue was a Liechtenstein corporation (Second Amended Complaint, ¶ 6) that was owned or controlled by Bill Harbert International Corporation (id. ¶23).  It was the

10

entity to which Harbert International, Inc. assigned its interest in contract 20A.  Harbert

International Establishment was therefore going to perform the responsibilities imposed

by contract 20A, rather than Harbert International Inc.  Bell identified this entity, Harbert

International Establishment, in the complaint, as Harbert International Establishment,

Inc.  The "Inc." is what he called a scrivener's error, a mistake that he did not catch. TR

at 67, line 23 - TR at 70, line 24.

35.    Bell now understands that Harbert International Establishment "changed its name" to

Bilhar International Establishment in 1993 and that a new entity, also called Harbert

International Establishment, came into existence in the same year.  The Harbert

International Establishment that came into existence in 1993 is not owned by Bill Harbert

International Corporation and came into existence after the work done pursuant to

contract 20A was completed. TR at 71, line 11 - TR at 71, line 19.

36.    Bell learned that Harbert International Establishment had changed its name to Bilhar

when he read the indictment that named Bilhar as a defendant.  He learned in 2003 that a

new entity, called Harbert International Establishment, had come into existence in 1993.

In that same year, 2003, he also learned that in 1999, a company had been incorporated in

Alabama called Harbert International Establishment, Inc. and that it was not owned by

Bill Harbert International Corporation. TR at 71, line 23 - TR at 72, line 24.

37.    In December 2002, relator filed the Third Amended Complaint.  It added claims

premised on contracts 07 and 29, added parties, and subtracted parties who had settled.  It

also corrected the initial error; it now listed "Bilhar International Establishment" as a

defendant. TR at 73, line 3.

38.     Bell insisted that it was clear to him that when counsel for what had mistakenly been
        called Harbert International Establishment Inc. moved to enlarge the time within which
        its clients had to answer the Second Amended Complaint, they knew that the entity
        mistakenly called "Harbert International Establishment, Inc." was meant to be Harbert
        International Establishment. TR at 72, line 12.

39.     Carolyn Mark is the attorney in the Civil Division of the Department of Justice who has
        been responsible for this case since its inception.  The United States' Complaint in
        Intervention, filed on March 13, 2001, named as defendants:  Phillip Holzmann A.G.,
        Bill Harbert International Construction, Inc., Harbert International Establishment, Inc.,
        Harbert Corporation, Harbert International Inc., Harbert U.K. Services, Ltd., J.A. Jones
        Construction Company, Sabbia A.G., and Roy Anderson.

40.     Mark intended that the words "Harbert International Establishment, Inc." describe the
        Liechtenstein entity that was involved in the allegations of bid rigging, and that was in
        existence at the time of the bid rigging and the submission of the false claims.  What
        Mark called  "the new one", *i.e.*, Harbert  International Establishment, that came into
        existence in 1993, was formed after the conduct alleged in the complaint.  When the
        indictments against BHIC, Bilhar, formerly known as Harbert International
        Establishment, were returned in 2001, Mark realized that the Liechtenstein company had
        changed its named to Bilhar and there was no "Inc." after that entity's title.  When she
        named Harbert International Establishment, Inc. as the defendant in the United States'
        Complaint in Intervention, she intended to sue the entity that she knew as Harbert

International Establishment, the entity she now knew had changed its name to Bilhar. TR at 110, line 2 - TR at 114, line 10.

41.    Keith Morgan is the Assistant United States Attorney who is responsible for the prosecution of this case.  He took the responsibility for effectuating service of the United States' Complaint in Intervention.  He spoke to June Ann Sauntry and Brian B. Lavine, of the firm of Troutman and Sanders, and one of them indicated that they would accept service on behalf of Harbert International Establishment.  Morgan then went through a list of the defendants named in the government's Complaint and when he got to Harbert International Establishment, Inc., Sauntry and Lavine explained that the correct name of the entity was Harbert International Establishment; that the "Inc." that followed those words in the caption was a typographical error. TR at 140, line 16 - TR at 142, line 21.

42.    At the time of this conversation, Morgan had no knowledge of the entity known as Bilhar.  He intended to serve Harbert International Establishment, the company that was involved in the bid rigging alleged in the government's complaint.  When Sauntry and Lavine thereafter moved for an extension of time within which to answer the government's complaint, Morgan viewed that as being the act of Harbert International Establishment, the entity he had intended to sue, *i.e.*, the company that was involved in the criminal investigation. TR at 142, line 25 - TR at 145, line 21.

43.    At the time of his conversation with Sauntry and Lavine, he had no knowledge of an entity called Bilhar; he learned of it in 2001 when he saw that Harbert International Establishment had changed its name. TR at 145, line 24.

44.     Relator's counsel and counsel for the United States made no immediate motions to
amend the complaints because this case was stayed and in a dormant state while the
criminal case was proceeding to its conclusion.  Ultimately, they made the necessary
corrections to the captions of this case.[2] TR at 147, line 1.

45.     Sauntry began her representation of Bilhar, Harbert International Establishment and Bill
Harbert International Construction in January 1996 in connection with a grand jury
investigation.  The actual company named Harbert International Establishment, Inc. is
what she termed a "shelf corporation" and her firm began to represent it upon service of
relator's complaint in 2001 when relator's complaint identified it as a defendant. TR at
17, line 15 - TR at 19, line 3.

46.     Sauntry believed that the relator and the government intended to sue Harbert
International Establishment, the entity that came into existence in 1993 and not Bilhar,
the entity that was formed when Harbert International Establishment, which had been in
existence for several years, changed its name to Bilhar in 1993. TR at 44, line 11.

47.     Sauntry answered the complaint on behalf of Harbert International Establishment, the
entity formed in 1993 and the only one that bore the name; the earlier Harbert
International Establishment had changed its name to Bilhar.  Sauntry believed that the
government intended to sue the Harbert International Establishment that had come into
existence in 1993 but mistakenly put the word "Inc." after its name in the caption. TR at
45, line 9 and TR at 61, line 5.

_____

2 Note that the government in the caption of the Second Amended Complaint named as defendants Bilhar
International Establishment f/k/a Harbert International Establishment and Harbert International Establishment.  Mark
acknowledged that naming the latter as a defendant in the corrected caption of the Second Amended Complaint was
a mistake.

14

48.     The government always treated Harbert International Establishment and Bilhar as
separate entities when Sauntry's firm represented those two entities during the antitrust
investigation.  Each received letters from the government indicating that it was a target of
the grand jury's investigation and each received a subpoena from the grand jury for its
records.  Indeed, at one point, the government indicated that it would indict Bilhar and
Harbert International Establishment as well as other defendants.  Thus, Sauntry believed
that the government (and the relator) were suing Harbert International Establishment, the
entity that had come to existence in 1993, since it was clear to her that Bilhar and Harbert
International Establishment were two separate entities. TR at 61, line 5.

49.     Lavine, Sauntry's partner, believed, as Sauntry did, that the government did not intend to
sue Bilhar.  Instead, he thought that the relator and the government sued Harbert
International Establishment, the entity that had come into existence in 1993, and that the
use of the word "Inc." after the words Harbert International Establishment was a
typographical error.  Thus, when he moved for an extension of time within which to
answer the complaint he did so on behalf of Harbert International Establishment. TR at
180, line 13 - TR at 182, line 16.

50.     The discussions that Lavine had with the government always focused on Bilhar and
Harbert International Establishment being separate entities.  Thus, as Sauntry also
explained, the government had issued separate grand jury subpoenas and target letters to
Bilhar and Harbert International Establishment, as it did to Bilhar and UK.

51.     Indeed, Lavine and his colleagues had detailed discussions with the government, which at
one point, fully intended to indict Harbert International Establishment and Bilhar.  Given

how the government and Lavine and his colleagues also treated Bilhar and Harbert

International Establishment as separate entities, he viewed the complaint as carrying

forth that notion and asserting a claim against the entity that he had represented during

the grand jury investigation, namely, Harbert International Establishment. TR at 181, line

9.

## Final Conclusion

The government and relator have not convinced me by a preponderance of the evidence

that either Bill Harbert or Sauntry and Lavine knew or should have known that, but for a mistake

concerning the identity of the proper party, the action asserted in relator's Second Amended

Complaint and the United States' Complaint in Intervention would have been brought against

Bilhar, even though those documents named Harbert International Establishment, Inc. as a party

defendant.

## CONCLUSIONS OF LAW

### Applicable Legal Principles

A plaintiff who has named, as a defendant, the wrong party may amend her complaint to

name the correct party even if the statute of limitations has run if the requirements of Rule 15(c)

of the Federal Rules of Civil Procedure are met.[3]  E.g. Gipson v. Wells Fargo Corp., 382

F.Supp. 2d 116 (D.D.C. 2005).  A more difficult case is presented when the plaintiff, rather than

---

3 I.e., (1) relation back is permitted by the law that provides the statute of limitations applicable to the action (2) the
claim asserted in the amended pleading arose out of the same conduct, transaction or occurrence set forth in the
pleading to be amended; (3) the amendment changes the party or the name of the party and (4) within the period of
time permitted by Rule 4(m) the party to be brought in has (a) received such notice of the action that the party will
not be prejudiced in maintaining a defense on the merits or (b) knew or should have known that, but for the mistake
concerning the identity of the proper party, the action would have been brought against the party.  Note that the
prejudice cannot be the loss of the defense of the statute of limitations; if it were, the rule would be meaningless.
See Felix v. New York City Police, 811 F. Supp. 124, 128 (S.D.N.Y. 1992).

seeking to correct the name of an existing party, seeks to add a party.  Thus, if an

injured seaman who previously sued the ships on which he was injured, sought to add the United

States as a defendant when he learned that the ships were owned by the United States Navy, he

could not possibly justify the amendment on the grounds that his naming the ships was a

misnomer.  He could only insist that Rule 15(c) reaches beyond cases of misnaming the correct

defendant to mistakes as to who the proper defendant is.  In this case, the mistake being

corrected is not a misnomer—naming x as a party when x's correct name is y—but rather, the

mistake being corrected is the failure to name a party that should have been named in the first

place had the seaman known then what he knows now. Arthur v. Maersk, Inc., 434 F.3d 196 (3d

Cir. 2006).

Whether Rule 15(c) may capture the  seaman's situation as easily as it does the situation

in cases involving a misnomer like that in Gipson divides federal courts in decisions that are

irreconcilable.[4]  Compare Arthur v. Maersk, Inc., 434 F.3d at 196 with Locklear v. Bergman & 

Beving, 457 F.3d 363 (4th Cir. 2006) (lack of knowledge of who is proper party is not a mistake

as that word is used in Rule 15(c)(3)(B)) and  Worthington v. Wilson, 8 F.3d 1253 (7th Cir.

1993) (same).

Thus, if this case were being litigated in the Third Circuit, this opinion would probably

not be necessary.  It would be of little moment whether the relator's and the government's

naming Harbert International Establishment, Inc. was or was not a misnomer; they would be

permitted to amend the complaint to name Bilhar once I concluded that their adding Bilhar was

---

4 The Third Circuit itself noted that its interpretation was inconsistent with the majority of courts that have held that only a misnomer or misidentification of an existing party can constitute a mistake concerning the identity of the proper party under Rule 15(c). Arthur, 434 F.3d at 208.

based on knowledge gained since they filed the complaint and that the remaining requirements of Rule 15(c) were met.  But, in this Circuit, the controlling precedent is, if not to the precise contrary, at best inconsistent with the Third Circuit's approach.

In <u>Rendall-Speranza v. Nassim</u>, 107 F.3d 913 (D.C. Cir. 1997), the court of appeals aligned itself clearly with the courts that have held that Rule 15(c) only reaches a misnomer. The court of appeals stated: " A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." <u>Id.</u> at 919.  Thus the change permitted by Rule 15(c) – the correction of what that rule describes as a "mistake concerning the identity of the proper party" – is the correction of the name of an obviously intended defendant. <u>Id.</u>

### Rule 15(c) Applies to this Case

The first question therefore presented is whether Rule 15(c) applies in this case and I conclude that its does.  I fully credit the testimony of the relator's and the government's counsel that they intended to sue the entity whose name they thought was Harbert International Establishment and that they were unaware that it had changed its name to Bilhar before they filed their complaints.  This case, therefore, is controlled by <u>Randall-Speranza</u>; it involves the misnaming of an intended defendant and not the addition of a new defendant.

It is certainly true that government and relator's counsel would not have made the mistake they did if they were privy to what the grand jury investigation disclosed and the careful articulation of the differences among the many Harbert enterprises provided the government by Sauntry and Lavine.  But, I credit government and realtor's counsel's testimony

18

that they were not privy to any of that information.

## Knowledge

The fundamental requirement for the application of Rule 15(c)(3) is that the party named correctly in the amended complaint knew or should have known, upon the receipt of the complaint that mistakenly names another party, that, but for the mistake concerning its identity, the action would have been brought against the correct party.  Thus, the tougher question is whether the government and the relator have convinced me that, as the rule requires, Bilhar knew or should have known that, but for the mistake made, Bilhar was the entity the relator and the government intended to sue when they named Harbert International Establishment, Inc. as one of the defendants.

I conclude that it cannot be said that either Bill Harbert, who was served with relator's complaint,[5] or the lawyers for Bilhar, who were served with the <u>United States' Complaint in Intervention</u>, knew that, but for the mistake, relator and the government intended to sue Bilhar, rather than the party they mistakenly named, Harbert International Establishment, Inc.

## Bill Harbert

The portion of Mr. Harbert's testimony that was read into the record indicates only that he "would only think" that there would be one entity called Harbert International Establishment and that it "would seem unusual" that there were two different companies that bore the same name that had both been established in Liechtenstein. TR at 229, line 14 - TR at 229, line 16. That testimony hardly makes it more likely than not that he read relator's complaint and understood that relator was intending to sue Bilhar or that he should have known that relator

---

[5] Relator proceeds upon the theory that service upon Harbert was service upon an officer, a managing or general agent of the entities it sued. TR at 246-47.

was.

## The Lawyers

As to the lawyers, it is clear that they did not actually know that the relator and the government intended to sue Bilhar when they named Harbert International Establishment, Inc. as the defendant. They specifically denied that they did and it is absurd to suggest that they perjured themselves. To the contrary, as Lavine specifically testified, he represented Harbert International Establishment (and other parties) from at least the time in 2000 when the investigation began on the agency level and the government announced its intention to suspend contract 20A. December 21, 2006 Hearing, Plaintiffs' Exhibit 3. In that letter, Lavine and Sauntry's law firm clarified for the government the complicated and often interlocking nature of the Harbert enterprises, making it clear that Harbert International Establishment and Bilhar were separate entities.

Moreover, throughout the grand jury investigation, the government treated Bilhar and Harbert International Establishment as separate entities. The government issued separate target letters and subpoenas to each of them and treated them as distinct entities. Indeed, the government, as Lavine urged them to do, decided not to indict Harbert International Establishment when the grand jury indicted Bilhar, BIHC, and Roy Anderson; the government had, at one time, intended to indict both Bilhar and Harbert International Establishment. Thus, I must credit Lavine's and Sauntry's testimony that they thought that (1) the government had sued Harbert International Establishment as an entity distinct from Bilhar rather than suing Bilhar and that (2) its doing so was consistent with the manner in which the Antitrust Division had treated Bilhar and Harbert International Establishment as separate entities in the period leading up to the

indictment of Bilhar.

### Should They Have Known?

Since I am convinced that neither Bilhar nor counsel for Bilhar knew that the government and the relator were intending to sue Bilhar when they sued the entity they called Harbert International Establishment, Inc. the question presented is whether they should have known.

### The Relator's and the Government's Arguments

The government and the relator insist that Bilhar's counsel had to know that they were intending to sue Bilhar because, whatever named they called it, their complaints made it clear that they intended to sue a Liechtenstein company to which Harbert International Inc.'s interest in contract 20A was assigned. That only describes the entity that came into existence after 1993 and was known as "Bilhar, formerly known as Harbert International Establishment."

Additionally, the bid rigging on contract 20A occurred in the 1988-1989 period and Bilhar did not come into existence until 1993.

But, it is also true that another defendant, BHIC, did not come in existence until 1992 but was named as a defendant. TR at 163, line 13 - TR at 163, line 18. Furthermore, the United States' Complaint in Intervention charged a conspiracy to rig the bids on contracts 07 and 29 as well as the bids on contract 20A and the schedule attached to the United States' Complaint in Intervention indicate that the false claims were submitted on contracts 07 and 29 in the period from September 5, 1991 to September 19, 1996. Thus, as Mark conceded, if Harbert International Establishment had been involved in submitting claims as to contract 07, a reasonable person could infer that the government was suing that entity that came into existence in 1993. TR at 134, line 11 - TR at 134, line 18.

Second, both complaints describe Harbert U.K. Services[6] as an English corporation in which Harbert International Establishment holds a 49% interest. United States'Complaint in Intervention ¶15; Relator's Second Complaint in Intervention ¶9.  But, when the complaints were served, counsel for Bilhar knew that Bilhar did not own a 49% interest in Harbert U.K., but Harbert International Establishment did.  See TR at 244, line 25 - TR at 245, line 9; TR at 170, line 15 - TR at 170, line 16 (Morgan refuses to concede that paragraph 15 of the Complaint in Intervention is true of Harbert International Establishment).

Furthermore, paragraphs 16 and 19 of the relator's Second Amended Complaint for False Claims Act Violations and Demand for Jury Trial describe Roy Anderson as President of Harbert International Establishment but the government conceded that Anderson was president of Harbert International Establishment from its formation until Anderson retired. TR at 170, line 18 - TR at 171, line 20.

Finally, the complaints, after identifying the defendants, then speak broadly of the "defendants" conspiring with each other to rig bids.  Indeed, I have found that the allegations of those complaints did not meet the requirements of Rule 9 that they specify the role each of the defendants played in the conspiracy.  These broad, unspecific complaints themselves do not give certain notice that the relator and the government were suing Bilhar and I have just explained why the sections of them that the relator and the government point to as doing so really do not. Each of those sections can just as easily be interpreted as indicating an intention to sue Harbert International Establishment.

### Final Conclusion

---

6 Another misnomer; its correct name is Harbert Construction Services (U.K.) Limited.

Thus, the evidence supporting the thesis that counsel had to know that the relator and the government were really suing Bilhar and not Harbert International Establishment, Inc. is, at best, equivocal.

Furthermore, we now know that the Antitrust Division had treated Harbert International Establishment and Bilhar as separate and distinct entities and, in light of that, the lawyers for those entities viewed them as separate entities as well. Nothing in their experience to that point would have made it inevitably obvious to them that the government and the relator were abandoning any desire to seek recompense from the entity known during the investigation as Harbert International Establishment. Certainly there was nothing in the complaints that could possibly compel me to conclude that Lavine and Sauntry (1) were either lying or being disingenuous when they testified that they thought the relator and the government were suing Harbert International Establishment or (2) missed such clear and obvious expressions of the government's and the relator's intent to sue Bilhar that they should have know that their belief that Harbert International Establishment, rather than Bilhar, was the intended defendant was certainly mistaken.

The government and relator have failed to convince me by a preponderance of the evidence that the lawyers for Bilhar should have known that the relator and government were suing it. I therefore recommend that Bilhar's motion to dismiss be granted.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985).**

Dated:                                              _____
                                                    JOHN M. FACCIOLA
                                                    UNITED STATES MAGISTRATE JUDGE