UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RICHARD F. MILLER,**

    **Plaintiff,**

    **v.**                                                  **CA No. 95-01231 (RCL/JMF)**

**PHILLIP HOLZMANN, et al.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

Before me are <u>Defendants Bill Harbert International Construction Inc., Harbert Construction Services (U.K.), Ltd.'s and Bilhar International Establishment's Motion for Dismissal as a Sanction due to Discovery Abuses by the Government</u> [# 416] and <u>Harbert International, Inc.'s Motion to Dismiss for Discovery Abuses by the Government</u> [#409]. For the reasons stated in this Report and Recommendation, I recommend that the motions be denied.

## FINDINGS OF FACT

My review of the parties' submissions convinces me that there is no genuine issue as to the following facts:

1. The Federal Bureau of Investigation began an investigation of possible bid rigging of the contracts involved in this case but closed its file in late 1997 or early 1998. The file contained memoranda of interviews, a closing memorandum and recordings of conversations that were taped by relator at the behest of the Antitrust Division of the Department of Justice (hereafter "Antitrust").

2. The FBI file was not specifically identified as the FBI file in the government's

       privilege log.  The defendants learned of its existence on October 19, 2006.

3.     The Office of Inspector General ("OIG") of the Agency for International Development ("AID") has also conducted an investigation of this matter.

4.     There once existed a file created by OIG in which materials pertinent to the investigation were placed.  It contained notes, analyses, witness interviews, correspondence, evidence logs and summaries prepared by agents working on the case.

5.     Keith Morgan, Esq. and Carolyn Mark, Esq., who are employed by the Department of Justice, were assigned to the qui tam action filed by relator upon the filing of relator's complaint in this court in 1995.

6.     In March 1996, a third party made a request pursuant to the Freedom of Information Act ("FOIA") for information pertaining to the contracts at issue in this case.  Ultimately, the FOIA office for AID conducted a search for documents relevant to the request and made selected documents available to the requester.  This office also made a copy of the documents available to Antitrust.

7.     In May 2005, the AID FOIA office destroyed its copy of these documents.

8.     Antitrust received documents pursuant to subpoenas served upon the defendants in this case and upon other parties.  Ultimately, the Civil Division of the Justice Department received documents from Antitrust and produced selected documents to the defendants in this case.  Certain documents, however, were withheld on the grounds of the law enforcement and other privileges.  The government served a privilege log on the defendants on August 24, 2006.  It did not contain any reference to the FBI file.

9. During the bidding process, documents called "engineer estimates" were used by AID to assess the reasonableness of the bids on the contracts at issue. There were six such estimates but only two for contract 20A have been found.

10. On October 4, 2006, counsel for Harbert International, Inc. ("HII") were permitted to review 240 boxes of information that had been obtained during the investigation of the contracts at issue in this case.

11. A document to which Robert Hemler, the President of ABB/SUSA, made reference during his deposition was made available to HII by the government after Hemler's deposition was completed.

### The Contention of the Harbert Defendants

The Harbert defendants premise their motion to dismiss on several actions or occurrences: (1) that the OIG investigative file is missing; (2) that the file created by the FBI has not been disclosed nor are its contents listed in the privilege log that was served on August 24, 2006; (3) that the USAID FOIA office destroyed its copies of the documents; (4) that the engineer estimates cannot be found; (5) that the production of the 240 boxes of information was delayed; (6) that the government's production was incomplete in that there are no documents from Holzmann or from an accounting firm that reviewed the financial records of Harbert International Establishment and one or more of the Harbert-Jones joint ventures; and (7) that the government failed to produce a document to which a deposed witness, Robert Hemler, was referring during his deposition and that it was only produced after the deposition.

### The Controlling Legal Principles

These defendants do not invoke those sections of the Federal Rules of Civil Procedure

that permit the award of sanctions[1] but do invoke the court's inherent authority. That invocation brings in its wake severe restrictions on the exercise of that power, particularly when the party demands dismissal of the complaint.

First, the inherent authority of the court should only be exercised when an applicable rule or statute is "not up to the task." Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991). The exercise of this power is subject to the requirement that it be based on a showing of bad faith. United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992); Lucas v. Spellings, 408 F. Supp. 2d 8, 10 (D.D.C. 2006). See also Shepherd v. Am. Broad. Cos. Inc., 62 F.3d 1469 (D.C. Cir. 1995).

Second, the preference for trials on the merits requires that the ultimate sanction of dismissal be exercised only when the court specifically finds that other alternatives to dissipate the prejudice done to the opposing party or the court's calendar are unavailable or futile. Bonds v. District of Columbia, 93 F.3d 801, 809 (D.C. Cir 1996). Accord: Webb v. District of Columbia, 146 F.3d 964, 971-72 (D.C. Cir. 1998). If the sanction is based on deterrence alone, the determination to dismiss the case must be based on a finding of flagrant or egregious misconduct. Bonds, 93 F.3d at 809.

### The Categories at Issue

The actions claimed to warrant sanctions in this case have had radically different consequences. In some instances, the information sought is lost forever while in others the

---

[1] For an extremely useful chart of those sanctions, see Paul W. Grimm, Charles S. Fax and Paul Mark Sandler, Discovery Problems And Their Solutions, 272-78 (2005).

production of the information was, it is claimed, delayed to defendants' detriment. Thus, in one instance, a document that could have been effectively used during a deposition was not produced until after the deposition. Finally, the defendants claim that the government has still not produced documents they should have produced.

## Information That Is in Existence

As to the category of information that is in existence, but was not produced, the alternative to dismissal is self evident: order its production if it is discoverable or the filing of a certification that, despite a diligent search, it cannot be found. Information that cannot be found will then be in the category of lost information and the court will have to grapple with its absence. But, if there is other information and it can be produced and analyzed before trial, it would be a gross abuse of discretion to dismiss a case because certain information was produced sooner rather than later. A specific trial date has not been set. While the discovery deadline that I set was demanding, I cannot find that the delay in production in itself so prejudiced the defendant that it warrants the remedy of dismissal if the documents are produced before trial. To that end, I expect that, discovery having ended, within the next ten days: (1) the government will produce any documents it agreed to produce but has not; (2) if necessary, the government will certify that it cannot find certain documents that have been requested by the defendants; (3) the government will file a privilege log as to any documents it has now found but as to which it claims some privilege.

## The Document Produced after the Deposition

As noted, a document that could have been used in a witness deposition was produced after the witness testified. Dismissing the case because of the failure to produce a single document that could have been used in a deposition is truly to burn down the barn to roast the

pig.

## The FBI File

This record is unclear as to whether the FBI file exists. The defendants tell me that they only learned of its existence on October 19, 2006 and that it is not listed on the government's privilege log filed on August 24, 2006. I have seen an e-mail from Mark, indicating that, while she would request the file from the FBI, she would not agree to produce it until she first reviewed it. <u>Harbert International Inc.'s Motion to Dismiss for Discovery Abuses by the Government</u>, Exhibit 35. Unfortunately, the government does not speak to defendants' contentions as to the FBI file in its opposition and I do not know what its position is. I will therefore order the government to file a praecipe within 5 days indicating whether the file exists and whether the government is claiming that any of its contents are privileged. If the government claims any privileges, it will simultaneously file a privilege log as required by Federal Rule of Civil Procedure 26(b)(5).

## Privileged Documents

The government has withheld from its production the documents it claimed to be privileged in the privilege log of August 24, 2006. The government has not moved for a protective order nor have the defendants moved to compel, and discovery has ended. There is nothing more I can do.

I now turn to the evidence that has been lost.

## The Lost Evidence

It is the law of this Circuit that a party has an obligation to preserve evidence it knew or reasonably should have known was relevant to the litigation and the destruction of which would

prejudice the other party to that litigation. Shepherd, 62 F.2d at 149.  The ultimate sanction of dismissal is appropriate only if the movant proves a failure to comply with this obligation by clear and convincing evidence. Id.

### Engineering Estimates

Other evidence in this case establishes that the bid on contract 20A, submitted by Harbert International, Inc., was prepared in 1988, rejected in July of that year and that a new bid on contract 20A was accepted in December 1988.  See Miller v. Holzmann, No. 95-CV-1231, 2006 WL 39371, at *1-2.  Since the engineering estimates at issue were prepared when the successful bid was being prepared, they had to come into existence no later than December 1988.

The first voucher on contract 20A was paid by the United States on October 3, 1989 and the last on June 20, 1993. Schedule A, United States' Complaint in Intervention.  Relator filed his complaint in 1995.

The engineering estimates, which cannot be found, had to come into existence prior to the acceptance of contract 20A in 1988.  There is no predicate for the imposition of an obligation of the government to keep them in the period from their creation, whenever it was, to the filing of the relator's complaint in 1995.  Shepherd imposes an obligation to preserve evidence "relative to the litigation." Shepherd, 62 F.2d at 149.  That standard presupposes the existence of litigation and there was none until relator filed his complaint in 1995.

 Indeed, I go further and find no premise for the assertion that in that period, litigation could be reasonably anticipated merely from the submission of the vouchers between 1989 and 1993 or from anything that occurred in the next two years before relator filed his complaint.

The estimates could also have been lost in the period between the date of the filing of the complaint to the present.  But, all we know is that they are gone. Since it is as likely that they

disappeared in the period from 1988 to 1995, when the government had no obligation to keep them, as it is that they disappeared thereafter, when the government did, there is no premise for me to find, let alone by the required clear and convincing evidence, that their loss occurred at a time when the government had an obligation to keep them. I must therefore deny the defendants' motion to dismiss; this record does not and cannot conclusively establish that the estimates were lost at a time when the government was obliged to keep them.

### The FOIA Documents

A FOIA request sought, as to contracts 20A and 07, the following documents:

1. Any estimates, bids, and/or contract awards submitted by or given to any entity;

2. The implementation, execution, and/or financing of such contracts;

3. Any communication and correspondence between US AID and any entity involved in bidding for, or performing and work on, any of the above-referenced contracts; and

4. Any audits conducted by or on behalf of the USAID [for Contracts 20A and 07].

Plaintiff United States' Opposition to Harbert Defendants' Motions to Dismiss at 47.

There is no dispute that the AID FOIA office collected documents that, initially, appeared to be responsive to the FOIA request but eliminated documents that, on closer examination, were not relevant to the request. Additionally, other documents were not produced because the AID FOIA office considered them exempt from disclosure by virtue of the exemption provisions of FOIA, i.e., 5 U.S.C. §§ 552 (j) & (k).[2]

As a result, two files came into existence, one maintained by the AID FOIA office that

---

[2] All references to the United States Code are to the electronic versions that appear in Westlaw and Lexis.

contained everything that had been collected and a second that contained everything except documents withheld as (1) irrelevant to the FOIA request and (2) relevant but exempted from disclosure.

We now know that the first file–the one that had everything–was destroyed in 2005. The AID FOIA officer who destroyed it explained that its destruction was authorized by the pertinent National Archives and Administration Act schedule. She also indicated that she was not aware that this lawsuit or any other litigation was pending and that she would not have destroyed the file had she known it was. Harbert International, Inc.'s Motion to Dismiss for Discovery Abuses by the Government, Exhibit 49 at 112-15.

The government dismisses the significance of all this by assuring us that very few documents were withheld as exempt and that it is unlikely that documents found by the FOIA office not to meet the description in the FOIA request would nevertheless be relevant to this case. But, there are two problems with that analysis. The government does not present me with the Vaughn[3] index or any other documentation supporting its claim that very little was withheld. In any event, "very little" does not tell me anything about the significance of what was withheld. Those documents could have been useless or the classic "smoking gun." At this point, all we can do is guess and that is no way to resolve a legal or factual issue.

The second problem is that FOIA exemptions are not coterminous with the discovery standard that requires the production of information that is either relevant to a claim or defense or likely to lead to such evidence. Fed. R. Civ. P. 26(b)(1). Obviously, a document exempted

---

[3] See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

from FOIA may be perfectly relevant to this action; once again, it may even be the "smoking gun." Without seeing the exempted documents, it is impossible to do anything more than guess as to the significance of the documents that have now been destroyed.

Since the destruction of these documents is significant, I must determine whether their destruction is potentially sanctionable because their destruction should have been prevented by the lawyers assigned to this case.

## Litigation Holds

The concept of a litigation hold–that is, the prevention of the destruction of documents once litigation has commenced–has been discussed most urgently in the context of electronic discovery where, for example, an individual computer is programmed in the ordinary course to destroy information after a period of time or where, for example, persons using a computer network, who are unaware of the litigation, destroy electronically stored discoverable information.[4] Preventing that destruction may require a "litigation hold"– i.e., disabling the automatic deletion feature or communicating to all persons who have the potential to destroy the discoverable information not to do so.

The Sedona Conference has suggested the following as a principle for addressing electronic document production:

---

[4] See Thomas Y. Allman, *Defining Culpability: The Search for a Limited Safe Harbor in Electronic Discovery*, 2006 FED. CTS. L. REV. 7 (Sept. 2006), http://www.fclr.org/2006fedctslrev7.htm.

> The obligation to preserve electronic data and documents requires reasonable and good faith efforts to retain information that may be relevant to pending or threatened litigation. However, it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant data.

The Sedona Conference, Best Practices Recommendations & Principles for Addressing Electronic Document Production, 44 (2004 Annotated Version).

In an accompanying comment to this principle, the authors indicate that "[t]he notice does not need to reach all employees, only those reasonably likely to maintain documents relevant to the litigation or investigation." Id., Comment 5.d at 54.[5]

I find this principle reasonable and in accordance with the developing case law in this area. See, e.g., In re Napster, Inc. Copyright Litig., ___ F. Supp. 2d ___, 2006 WL 3050864 * 5 (N.D. Cal. Oct. 25, 2006); Zubulake v. UBS Warburg. Ltd, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

I also find that the government failed to comply with it and that its failure was unreasonable. Lawyers employed by the Department of Justice, and particularly the competent and experienced ones assigned to this case, knew or should have known that a response to a FOIA request by an agency may lead to exactly what happened here, the retention and non-disclosure by the agency of information that may nevertheless be discoverable in a case then being litigated by that Department. I cannot find that imposing on them the obligation to prevent the destruction of the non-disclosed information by a phone call to the concerned agency FOIA

---

[5] I note, in the interests of full disclosure, that I am a member of the Sedona Conference Advisory Council. My position is, of course, not compensated.

office to be an unreasonable and unjust burden.

My determination leads only to the categorization of the loss of the FOIA documents as potentially sanctionable under Shepherd because the government attorneys knew or should have known these documents were relevant to ongoing litigation and that their destruction could prejudice the defendants. I will resolve whether their destruction should warrant dismissal later in this opinion.

### The OIG File

This file is gone. We know that it came into existence sometime after the FBI abandoned the case and the agents for the Office of Inspector General began their investigation and that was probably no later than 1995. Thus, either all or some of its contents had to have come into existence after the filing of relator's complaint in the same year. Surely, given the OIG agents' description of this file, on which I based Finding of Fact Number 4, above,[6] it cannot be seriously argued that it did not contain information relevant to this case and there was no duty to preserve it once relator filed his complaint.

The government once again argues that its loss was insignificant because its entire contents have most probably been disclosed in other documents that were disclosed and in the testimony of the OIG agents who testified concerning its contents. But, once again, without the file itself, it is impossible to say with the certainty that I consider to be required that its loss is insignificant. I therefore conclude that its loss is potentially sanctionable.

### The Holzmann Materials and the Materials from Other Bidders

---

[6] I.e., the file contained notes, analyses, witness interviews, correspondence, evidence logs and summonses prepared by agents working on the case.

The defendants protest that the government's production of required documents is still incomplete because (1) the Antitrust Division obtained documents from the defendant, Phillipp Holzmann AG, but none have ever been produced; (2) that Division obtained voluminous documents from the accounting firm, Coopers & Lybrand, that reviewed the financial records of Harbert International Establishment and "one or more of the Harbert-Jones joint ventures, and other parties to this litigation and again none have been produced." <u>Harbert International Inc.'s Motion to Dismiss for Discovery Abuses by the Government</u> at 18.

### The Holzmann Documents

As to the Holzmann documents, they were obtained from Holzmann, a German company, by letters rogatory and their use was limited by a German court to criminal proceedings. Hence, they were only in the possession of the Antitrust Division. <u>Plaintiff United States' Opposition to Harbert Defendants' Motions to Dismiss</u>, Declaration of Carolyn G. Mark, ¶ 8. According to Mark, however, Holzmann ultimately provided copies of the documents to the Civil Division and the defendants and these were the documents that had been given to the Antitrust Division. <u>Id.</u>, ¶¶ 14-15.

Mark's assertion that the defendants now have the Holzmann documents is unrebutted. Defendants' claim that they never got them is contradicted and cannot serve as a basis for any sanction.

### The Coopers & Lybrand Documents

The converse is true of the Coopers & Lybrand accounting documents. Defendants' claims that the documents existed at one point and were in the possession of the Antitrust Division are unanswered by the government and I must, on this record, consider them in the category of lost information and thus the government's failure to produce them may be

sanctionable.

## The Imposition of Sanctions

The information in the "lost" category I have created, i.e., the OIG file, the FOIA documents, the Coopers & Lybrand documents, and possibly the FBI file, cannot be retrieved and I have concluded that its loss authorizes the imposition of sanctions. It hardly follows, however, that this case should be dismissed. To the precise contrary, as I have explained, it is the law of this Circuit that a case may not be dismissed as a sanction for the loss of evidence until all lesser alternatives have been explored and have been found either futile or ineffective to cure the prejudice caused the defendants and the court's docket. Moreover, I find that, at most, the government's omissions and failings are at worst negligent and certainly do not rise to the level of egregious misconduct that would justify dismissal based solely on the need to deter others from similar conduct.

In my view, in this complicated case, whether alternatives short of dismissal will suffice can only be determined after the court has heard the trial testimony. Only then can a conscientious determination be made as to the significance of the evidence that is gone; only the trial evidence will establish whether that loss is insignificant or so significant that dismissal is warranted, even though there are other alternatives such as precluding the government from introducing certain evidence, advancing a certain argument, or instructing the jury that it may draw an adverse inference. It would be improvident and an obvious violation of the unequivocal commands of Bonds and Webb to invoke the sanction of dismissal without considering the efficacy of alternatives on the best possible record and I cannot recommend that Judge Lamberth even consider dismissing this case until that record is completed.

## CONCLUSION

I recommend that <u>Defendants Bill Harbert International Construction Inc., Harbert Construction Services (U.K.), Ltd.'s and Bilhar International Establishment's Motion for Dismissal as a Sanction due to Discovery Abuses by the Government</u> [# 416] and <u>Harbert International, Inc.'s Motion to Dismiss for Discovery Abuses by the Government</u> [#409] be denied.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).**

 

_____
JOHN M. FACCIOLA
Dated:                             UNITED STATES MAGISTRATE JUDGE