UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RICHARD F. MILLER,**

    **Plaintiff,**

    v.                                              CA No. 95-01231 (RCL/JMF)

**PHILLIP HOLZMANN, et al.,**

    **Defendants.**

## MEMORANDUM OPINION

### Introduction

On June 30, 1995, the same day that he filed this qui tam action, Richard F. Miller submitted a confidential disclosure statement to the government, thereby beginning the fulfillment of the responsibility imposed upon him by 31 U.S.C. § 3730(b)(2),[1] which requires the relator in a qui tam action to serve upon the government "written disclosure of substantially all material evidence and information the person possesses."

In the period between September 7, 1996, and February 19, 1997, relator made a series of supplemental disclosures to the government, consisting of the documents now numbered 34, 35, 40 and 41. I have reviewed the documents and conclude that they are protected by the attorney-client privilege.[2] I credit the representation in the letter of counsel that accompanied them that relator prepared them to give them to his counsel to secure legal advice or legal services. I am also convinced that they were intended to be

---

[1] All references to the United States Code are to the electronic versions in Westlaw or Lexis.

[2] Note that the documents may also be work product. The work product protection is defeasible, the attorney-client privilege is not. Hence, my concluding that the documents are privileged under the attorney-client privilege obviates any need to consider whether defendants have a substantial need for the documents and there is no substantive equivalent for them. McPeek v. Ashcroft, 202 F.R.D. 332, 338 (D.D.C. 2001). See Fed. R. Civ. P. 26(b)(3).

confidential. Hence, the requirements for the application of the attorney-client privilege are met. See Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper, 236 F.R.D. 16, 19-20 (D.D.C. 2006).

Moreover, it does not violate the attorney-client privilege[3] for me to indicate that relator's counsel, in tendering the documents to the government, made it clear in the first page of an accompanying letter that he was continuing to assert that the documents being tendered would continue to be privileged because of what he called "the common interest doctrine,"[4] so that providing them to the government would not alter their privileged status. He insisted that they were provided with the understanding that the government would not undertake any action that might waive the privileges asserted, that it would seek relator's permission before making affirmative use of the documents, and that the tender of the documents was not to be deemed a waiver of any privilege.

## Controlling Law

Surrendering privileged documents to the government can forfeit the privilege unless at the time of the surrender the government and the surrendering party have a common interest in the prosecution of a common defendant. United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America, No. 99-CV-3298, 2004 WL 2009413, at *5 (D.D.C. 2004); United States ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 26-27 (D.D.C. 2002). On the day of the disclosures, relator had already filed the qui tam action and the Antitrust Division had commenced its investigation. Additionally, I have already found that the attorneys from the Civil Division who are prosecuting the case were assigned to the qui tam filing in 1995. Miller v. Holzmann, No. 95-CV-1231, 2007 WL 172327, at *1

---

[3] I will make the first page of this letter available to counsel if they insist.
[4] Counsel referred in this letter to cases that he had previously provided the government pertaining to the common interest doctrine.

2

(D.D.C. Jan. 17, 2007).  Thus, the United States and the relator had a common interest in the prosecution of common defendants in an existing civil or criminal case or both.  The decisions in Pogue and Purcell are therefore a perfect fit and require the denial of the defendants' motion.

Insisting instead that in order for the common interest privilege to apply, the interests of relator and the government must be "inherently aligned,"[5] defendants focus on what they think was the relationship between relator and the Antitrust Division—one which they insist was adversarial.  They portray relator as the classic informant who was a potential defendant himself and was making disclosures to the government to save his own skin and to collect a bounty to boot.  There are several problems with this analysis.

First, in ascertaining the nature of the privilege, the court is to apply "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.  If the common law gives a clear answer, that answer resolves the case, or at least imposes the burden on the party advancing a contrary contention to show why there should be a departure from the common law rule. Swidler v. Berlin, 524 U.S. 399, 405-06 (1998).  In support of their contention that the interests of the parties must be inherently aligned, defendants point to two District Court opinions, one from this Court and one from Utah. Defs. Mem. at 1 n.4.  But, at the same time, commentators bemoan the absence of any uniformity in the case law as to when parties share a common interest and how that interest is to be defined.  Katherine Taylor Schaffzin, An Uncertain Privilege:  Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It, 15 B.U. PUB. INT. L.J. 49, 61-65 (2005)

---

[5] Defendants' Memorandum of Points and Authorities in Response to Court Order of December 12, 2006 ("Defs. Mem.") at 3.

(noting that some courts require identical interests, some do not, and some find common interest when parties otherwise have conflicting interests); George S. Mahaffey Jr., Taking Aim at the Hydra: Why the "Allied-Party Doctrine" Should Not Apply in Qui Tam Cases When the Government Declines to Intervene, 23 REV. LITIG. 629, 670 (2004) ("What are we left with? It seems that courts are confused about the scope and applicability of the allied-party doctrine. This confusion, unfortunately, only worsens when the issues have come to light in the qui tam context.").

As these authors indicate, for every case construing the common interest narrowly, there seems to be a corresponding one reaching the opposite conclusion. Mahaffey, supra at 667 (discussing United States v. Schwimmer, 892 F.2d 237 ((2d Cir. 1989) (holding that all that is necessary for application of common interest principle is that parties share a common interest about a legal matter)).

More to the point, in this Circuit, the court of appeals has indicated that the work product privilege is not lost even if it is shared by entities that are not co-parties in litigation so long as "transferor and transferee anticipate litigation against a common adversary on the same issue or issues." United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980). While the court was speaking of the work-product privilege, the decision at least points away from any greater requirement than a common interest in litigation against a common adversary. Suffice to say, it is impossible to conclude that the common law, as interpreted in this and other jurisdictions, provides a clear explanation of what a common interest is, let alone supports the narrow and restrictive gloss that defendants would put on it.

In the absence of any such clear guidance by the common law, neither reason nor experience commend the interpretation defendants would make of the words "common interest" in the unique context of qui tam actions. First, one must not be naive about qui tam relators by believing that they are all as pure as the driven snow. To the contrary, "the framers of the [False Claims] Act recognized that wrongdoers might be rewarded under the Act, acknowledging the qui tam provisions are based upon the idea of 'setting a rogue to catch a rogue.'"[6] Mortgages, Inc. v. United States District Court for the District of Nevada, 934 F.2d 209, 213 (9th Cir. 1990) (quoting Cong. Globe, 37th Cong. 3d Sess. 955-56 (1863)). A qui tam relator might very well have been complicit in the submission of the false claims and may have several motives in talking to the government, including saving his own skin and getting a financial reward because he has, as they say, won the race to the courthouse as against his potential co-defendants. But, the attorney-client privilege exists to encourage the full disclosure of all the facts from the client to the lawyer,[7] while the statutory provision cited above, 31 U.S.C. § 3730(b)(2), advances the congressional desire that the relator apprise the government of all he or she knows as a condition of bringing a qui tam action. Both policies would be negated if relator's attorney-client privilege were forfeited because there is a theoretical possibility that the government may be interested in the relator as a defendant in any criminal or civil action it may bring.

Second, the defendants' assertion that there was an adversarial relationship between the government and relator in 1995 is based on (1) relator's surmise during his

---

[6] I am quoting a case, not casting aspersions on Mr. Miller.
[7] Fisher v. United States, 425 U.S. 391, 403 (1976).

deposition that he possibly had some exposure in the bid-rigging investigation[8] and (2) the fact that the privilege log indicates that some of the documents given by relator to his counsel were dated in the period from January 31, 1991, to December 21, 1993. From the latter it supposedly follows that there must have been "substantial questions" as to whether, in the period from 1991 to relator's filing suit in 1995, "Miller himself had participated in the alleged false claims scheme." <u>Defendants' Supplemental Reply to United States' Opposition to Producing Relator's Confidential Disclosure Statement</u> at 5.

But, I have been presiding over this case for several years and I have never seen a single indication that the government was even investigating the bid-rigging conspiracy prior to 1995, let alone that, in that period, it focused on relator as a conspirator. Relator's surmise that he might have had some exposure is hardly a basis upon which to predicate the attitude of the government towards him. Defendants' claim of an adversarial relationship between relator and the government is, I am afraid, a house of cards.

## Conclusion

At the time of the disclosures at issue, relator and the government shared a common interest in the prosecution of the qui tam case and the existence of that interest means that the disclosures made to the government were not a forfeiture of the attorney-client privilege that now shields those disclosures from discovery. Defendants' motion to compel them must be denied.

An Order accompanies this Memorandum Opinion.

---

[8] Defendants' Memorandum of Points and Authorities In Response to Court Order fo December 12, 2006 at 4.

                                                                        7

_____

JOHN M. FACCIOLA

Dated:                                    UNITED STATES MAGISTRATE JUDGE