**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                           )
**RICHARD F. MILLER,**         )
                           )
         **Plaintiff,**     )
                           )
       **v.**             )     **Civil Action No. 95-1231 (RCL)**
                           )
**PHILIPP HOLZMANN, _et al._,**   )
                           )
         **Defendants.**   )
_____)

## <u>ORDER</u>

This matter is before the Court upon consideration of the March 9, 2006, Report and Recommendation [231] issued by Magistrate Judge Facciola.   In his Report and Recommendation, Magistrate Judge Facciola addressed eight issues: (1) the application of the statute of limitations under the False Claims Act ("FCA") as it pertains to relation back of the government's claims to the date the relator's original complaint was filed, as allowed under Rule 15(c) of the Federal Rules of Civil Procedure; (2) whether the plaintiffs failed to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure; (3) the preclusive effect of the issues found at the criminal prosecution of certain defendants in the civil case; (4) whether the Foreign Assistance Act ("FAA") preempts the FCA; (5) whether this Court lacked personal jurisdiction over foreign defendants in this case; (6) whether the lack of formal service of the complaints on certain defendants warranted a dismissal of those defendants from this case; (7) whether a party improperly named by the plaintiffs should be dismissed; and (8) the effect of the bankruptcy of defendant J.A. Jones Construction Company on the litigation.  With respect to

1

the first issue, the magistrate judge found that relation back under Rule 15(c) was permissible as to claims brought by the government on contract 20A.  The magistrate judge found that relation back was not available to the government on claims based on contracts 07 and 29.  The magistrate judge therefore recommended that the government submit a memorandum at the close of discovery detailing whether it could take advantage of the alternate three-year limitations period available under 31 U.S.C. § 3731(b)(2) of the FCA.

With respect to the issue of whether plaintiffs pleaded fraud with sufficient particularity, the magistrate judge found that the plaintiffs failed to sufficiently plead fraud relating to defendants Harbert UK, BHIC, J.A. Jones Construction Co., and Bill Harbert.  Therefore, the magistrate judge recommended dismissal of the complaints against these defendants without prejudice to refiling amended complaints to cure the fraud particularity deficiency.  Dealing with the same issue, the magistrate judge found that plaintiffs had sufficiently pleaded fraud against defendant Roy Anderson, and therefore recommended that his motion to dismiss be denied.

The magistrate judge next recommended that defendant Roy Anderson was precluded from relitigating the issue of whether payments sought pursuant to the three contracts at issue in this case were false claims, and that the government was entitled to summary judgment to that effect.  He also found that the guilty plea entered into by defendant Holzmann had a preclusive effect on relitigating what Holzmann admitted to upon its guilty plea.

Next, the magistrate judge found that the FAA did not preempt the FCA.

With respect to the issue of personal jurisdiction over Harbert UK and Holzmann, the magistrate judge found that the Court could properly exercise specific personal jurisdiction over defendant Holzmann.  He found, however, that the plaintiffs complaints as pleaded with

insufficient particularity as to fraud made it unable for him to determine whether the Court could exercise personal jurisdiction over defendant Harbert UK.  Accordingly, the magistrate judge permitted additional jurisdictional discovery so that he would be better able to determine the issue.

With respect to the final three issues, the magistrate judge found as follows.  First, as to the issue of invalid summons, the magistrate judge found that, the requirements of Rule 4 of the Federal Rules of Civil Procedure were met notwithstanding the lack of formal service of summons upon the defendants, and therefore recommended that the motions to dismiss on the basis of invalid summons should be denied.  Second, the magistrate judge recommended that the improperly named defendant–Harbert International Establishment, Inc.–should be dismissed, but granted the plaintiffs leave to file an amendment that included claims against the allegedly intended defendant: Bilhar.  Third, the magistrate judge recommended that the Court should not stay the proceedings of this case pending the outcome of defendant J.A. Jones' reorganization in the bankruptcy court, and that the defendant's Suggestion of Stay should be denied.

Pursuant to Local Rule 72.3(b), the parties properly filed timely objections to the Report and Recommendation.   Objections were raised by the defendants on the following grounds: (1) that the magistrate judge was incorrect in finding that the statute of limitations for False Claims Act ("FCA") conspiracy claims begins to run anew upon the submission of each allegedly fraudulent or false claim to the government; (2) that the defendants were on notice of the government's complaints in March 2001 instead of February 2001; (3) that the government's common law claims for unjust enrichment were untimely; (4) that the unjust enrichment claims were insufficiently pleaded; (5) that the invalid summons of the plaintiffs complaints warranted a

3

dismissal of the defendants; (6) and that the FAA preempted the FCA.[1]  The relator objected to

the magistrate judge's finding that the government could not relate back claims on contracts 07

and 29 to the date the relator's original complaint was filed.

For the forgoing reasons, the Court finds that defendant HII's objection to the magistrate

judge's recommendation that the relator's complaint was timely-filed is OVERRULED;

defendants' objection as to the date defendants were on notice as to the government's claims shall

be DISMISSED AS MOOT; the relator's objection to the magistrate judge's recommendation that

only the claims as to contract 20A may relate back is SUSTAINED; defendants' objection as to

the applicable period of limitations for the government's common law claims is OVERRULED;

defendant HII's objection on the grounds of insufficient pleading of the claim of unjust

enrichment as to contract 29 against HII is OVERRULED AS MOOT by virtue of the Second

Amended Complaint in Intervention, which sufficiently alleges HII's role in the conspiracy to

bid-rig contract 29; the defendants' objection as to improper service of process of the Second

Amended Complaint is OVERRULED; and that the defendants' objection that the FAA preempts

the FCA is OVERRULED.

A.     Timeliness of the Conspiracy Claims

1.     Timeliness of Relator's Complaint

Defendant HII first objects to the magistrate judge's conclusion that the statute of

limitations for False Claims Act ("FCA") conspiracy claims begins to run anew upon the

---

[1] Holzmann, an original defendant in this matter, also raised objections to the magistrate judge's Report and Recommendation.  In light of the fact that Holzmann is no longer a defendant in this matter, there is no need for the Court to consider Holzmann's objections.  Accordingly, Holzmann's objections are DISMISSED AS MOOT.

submission of each allegedly fraudulent or false claim to the government.   Defendant contends

that the six-year statute of limitations under 31 U.S.C. § 3731(b)(1) for FCA conspiracy claims

begins to run upon the formation of the conspiracy.   According to the relator and government's

respective complaints, the latest that the alleged conspiracy could have been formed is April 16,

1989, when the letter of intent to award contract 20A was issued to Joint Venture, the company

who allegedly submitted the low bid on contract 20A as part of the conspiracy.   (*See* Relator's 2d

Am. Compl., ¶ 25; Gov.'s Compl. in Intervention, ¶ 27.)   The relator filed its original complaint

on June 30, 1995, which occurred beyond the six-year period in which the relator had to file its

complaint against the defendants.   Therefore, HII asserts that the relator's conspiracy claims are

untimely.   Consequently, HII argues that the government's Complaint in Intervention–even if it

were able to relate back under Rule 15(c) of the Federal Rules of Civil Procedure–would

nonetheless be untimely because of the alleged untimeliness of the relator's initial complaint.

    In order to determine when the statute of limitations begins to run for a conspiracy claim

under the FCA, the Court must first look to what constitutes the necessary elements of a

conspiracy claim under the FCA.   As this Court has previously held, the plaintiff must prove

three elements in order to assert a valid conspiracy claim under the FCA; those elements are: "(1)

that defendant conspired with one or more persons to have a fraudulent claim paid by the United

States, (2) that one or more of the conspirators performed any act to have such a claim paid by

the United States, and (3) that the United States suffered damages as a result of the claim."

*United States v. Bouchey*, 860 F. Supp. 890, 893 (D.D.C. 1994).   In light of the fact that proof of

an overt act in furtherance of the conspiracy is required, the six-year statute of limitations under

31 U.S.C. § 3731(b)(1) begins on the date six years prior to the date the complaint was filed, and

ends at the filing of the relator's complaint.  *See Fisher*, 180 F. Supp. at 195.[2]  Accordingly, the

relator may use any overt acts that occur within that time frame to prove the underlying

conspiratorial agreement, but may not use overt acts occurring prior to the date the statute of

limitations began to run.  *Id.*  If the relator is successful in proving the existence of the conspiracy

by the use of overt acts from within the designated period, "he may recover damages for all

violations committed as a part of the conspiracy from that date forward." *Id.*

    Applying the six-year period of limitations to the date the original complaint was filed,

the relator may use any overt acts that occurred on or after June 30, 1989.  The relator's claims on

contract 20A run from October 3, 1989 through June 20, 1993.  Accordingly, under this analysis,

the relator will be able to capture all claims on contract 20A, and use those overt acts at trial to

_____

    [2] Notwithstanding the very persuasive opinion from Judge Friedman in *Fisher* regarding the starting date of the statute of limitations for civil conspiracy, Defendants urge the Court to follow a case from a sister circuit, namely *Blusal Meats v. United States*, 638 F. Supp. 824, 829 (S.D.N.Y. 1986).  (*See* HII Memorandum [209] at 12-15.)  *Blusal Meats* stands for the notion that the statute of limitations runs upon the formation of the conspiracy, not the separate overt act as stated in Judge Friedman's opinion.  Though this Court does not question the wisdom of the *Blusal Meats* opinion, it nonetheless is compelled to disregard it due to the fact that its holding was premised upon the understanding that a claim of civil conspiracy does not necessitate a finding that an overt act occurred.  *See Blusal Meats*, 638 F. Supp. at 829.  As this Court has previously found, however, proof of an overt act is an essential element in proving that a civil conspiracy existed when deciding an FCA case.  *Bouchey*, 860 F.Supp. at 893.  This rationale has also been recognized by other federal district courts.  *See, e.g.*, *U.S. ex rel. Reagan v. East Texas Medical Center*, 274 F. Supp. 2d 824, 856-57 (S.D. Tex. 2003) ("the evidence submitted must make some showing that Defendants knowingly agreed to defraud the government, that at least one act was performed in furtherance of that conspiracy, and that the government suffered damages as a result of the acts alleged."; *Mikes v. Strauss*, 889 F.Supp. 746 (S.D.N.Y. 1995) (same).  Moreover, the Southern District of New York's determination in *Mikes v. Strauss* that proof of an overt act is required in FCA conspiracy cases casts doubt as to the strength of the holding in *Blusal Meats* that an overt act is not a required element of a conspiracy claim under the FCA.  Suffice to say, this Court is not persuaded by the holding in *Blusal Meats*, or Defendants' argument that this Court should disregard a persuasive opinion made by a district judge from within this Circuit in favor of a questionable opinion from outside the Circuit.

prove the existence of the conspiracy to bid-rig AID contracts, including contract 20A.[3]

Therefore, the relator's conspiracy claims against the defendants were not untimely under the six-

year period of limitations under § 3731(b)(1) of the FCA.  In light of this fact, this Court finds

that defendant HII's objection to the magistrate judge's recommendation that the relator's

complaint was timely-filed is OVERRULED.

    2.    *Application of Relation Back Doctrine*

    Having resolved the predicate issue of whether the relator's complaint was timely, and

finding that it was timely filed, this Court must now assess the merits of the magistrate judge's

recommendation concerning Rule 15(c) relation back to the relator's original complaint of the

government's Complaint in Intervention, which included claims as to contracts 07 and 29.[4]  In his

Report and Recommendation [231], Magistrate Judge Facciola recommended that the

_____

[3]  It should be noted that the relator also brought claims against the defendants for violations of the FCA.  This Court's resolution of the relator's conspiracy claims does not in any way affect whether the relator may bring non-conspiracy based claims of FCA violation against the defendants.  The relator and the government may seek redress for those claims that fall within the available statute of limitations under the FCA.  *See* 31 U.S.C. § 3731(b)(1), (b)(2); *cf. United States ex rel. Pogue*, Civ. No. 01-50, 2007 WL 404260, at *8, 12 (D.D.C. Feb. 7, 2007) (Lamberth, J.) (holding that the alternate statute of limitations under § 3731(b)(2) applies with equal force to *qui tam* relators and the government, and is measured by the government's knowledge).

[4]  Insofar as the government and relator have brought the same claims against the same defendants, the government's ability to relate its Complaint in Intervention back to the original complaint correlates directly to the relator's ability to relate back the claims on contracts 07 and 29 set forth in the relator's amended complaint against those same defendants.  Put another way, if the government may relate back its Complaint in Intervention, the relator may relate back its additional claims on contracts 07 and 29 against the defendants it shares in common with the government.  The singular issue of whether the relator may use Rule 15(c) relation back for claims against Defendant Bill Harbert, who was not named in the government's Complaint in Intervention, shall be addressed in this Court's *de novo* review of Magistrate Judge Facciola's October 31, 2006, Report and Recommendation [398].

government's should be permitted to relate back its claims on contract 20A to the relator's original complaint.  The government's claims as to contracts 07 and 29 could not have arisen out of the same transaction or occurrence as the claims based on contract 20A, however, because the claims are based on entirely different contracts.  Moreover, the transaction or occurrence alleged in the relator's original complaint was solely a conspiracy to rig a bid on contract 20A, nothing more.  Therefore the government could not relate back its claims as to contracts 07 and 29.  The statute of limitations as to claims on these two contracts would have to run from a date associated with either the unsealing or filing of the government's Complaint in Intervention–either February 12, 2001, or March 13, 2001.[5]  Under this recommendation, the government's claims on contracts 07 and 29 based on invoices submitted prior to either February 12, 1995 or March 13, 1995 would be barred, unless the government could avail itself of the three-year alternate limitations period under 31 U.S.C. § 3731(b)(2).

The relator objected to this recommendation on the grounds that the magistrate judge interpreted too narrowly what constitutes "conduct, transaction, or occurrence" similar enough to allow relation back under Rule 15(c).  In the relator's view, the "conduct" asserted in the initial complaint was the notion of an overarching conspiracy to bid-rig multiple USAID contracts.

---

[5] Defendants HII and Harbert Corporation each objected to the Magistrate Judge's consideration of the possibility that the unsealing of the government's Complaint in Intervention in February 2001 tolled the limitations period under the FCA because it effectively put defendants on notice of the claims against them.  According to the defendants, the earliest possible date the defendants could have had notice of the claims against them was on March 13, 2001, when the government's Complaint in Intervention was filed.  In light of the reasoning in this opinion, however, defendants' objection is rendered moot, and shall be DISMISSED AS MOOT.  *See infra* Part I.B.

Claims initially asserted solely as to contract 20A were but one part of the larger conspiracy, which also included claims on contracts 07 and 29.

Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, an amended pleading may relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading."  Within this Circuit, the court of appeals has found that "amendments that expand upon or clarify facts previously alleged will typically relate back . . . ." *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).  Contrariwise, those claims that "significantly alter the nature of a proceeding by injecting new and unanticipated claims" are far less likely to relate back.  *Id.*  "The general practice under Rule 15(c) is to permit relation back so long as the new claim arose out of the defendant's conduct as set forth in the original complaint and the original complaint gave defendant notice sufficient to avoid prejudice." *Caudle v. Thomason*, 942 F. Supp. 635, 640 (D.D.C. 1996) (quoting *Foretich v. Glamour*, 753 F. Supp. 955, 962 (D.D.C.1990)).  Upon review, this Court finds that the conduct alleged in the government's amended pleadings arose from the same conduct alleged in the relator's original complaint, and may therefore relate back to the date of the relator's original complaint.

Contrary to the magistrate judge's recommendation, it is clear from a review of the relator's original complaint and from the very nature of the alleged conspiracy itself that the "conduct" set forth in the relator's original complaint was a multi-contract conspiracy.  First, the relator's original complaint did more than merely allege a conspiracy to bid-rig contract 20A.  In the first paragraph of his complaint, the relator asserts that the conspiracy went beyond a single contract.  (Relator's Original Compl. ¶ 1 (stating that defendants "conspired to rig bids for

9

construction *contracts* paid for by USAID" (emphasis added).)  The relator also averred the existence of the "Frankfurt club," which allegedly "was organized to control prices in what should have been full and open competition for AID contracts."  (*Id.* ¶ 33.)  Though relator admitted that the particular details of the other fraudulent contract claims were not yet known to the relator, it indicated that discovery would reveal "that other AID contracts in Egypt were subject to similar and related collusive agreements on price that resulted in the submission of other false or fraudulent claims to the U.S. government."  (*Id.*)

Second, the nature of the alleged conspiracy, as pleaded, lends itself to the finding that multiple contracts would be involved.  The alleged existence of the Frankfurt club–where the conspiracy was allegedly hatched–consisted of multiple contractors who were qualified to perform AID contracts in Egypt.  Under this scheme, the parties agreed that some contractors who ordinarily would have bid on an AID project would refrain from bidding.  Then, one party would submit a fraudulent bid that was much higher than it would have been had multiple contractors bid on the project.[6]  Next, another party would submit a fraudulent bid that was still higher than normal, but was lower than the first fraudulent bid.  Having no reference in price but the other high bid, and having no other bids to turn to, the project managers would have little choice but to choose the not-as-high fraudulent bid.  Those parties who helped the scheme by refraining from bidding were compensated from the profits, but the party who won the bid made the most money.  Though the parties who refrained from bidding on one contract certainly made some money, it would make little financial sense for these entities–whose business was

---

[6] Under the basic economic doctrine of supply and demand, a myriad of bidders with no knowledge of each other's bid creates competition, in which each bidder would conceivably attempt to out-do the other bidder by offering the customer the lowest possible bid.

contracting on service projects–to pin their income on refraining from bidding while other companies get work.  In order for all parties to fully benefit, the proverbial wealth would have to be spread around; those who won a bid would turn around and either over-bid or refrain from bidding altogether.  Such a symbiotic relationship could only happen if the conspiracy encompassed more than a single contract.  As the government's Complaint in Intervention shows, this is exactly what happened.  (*See* Gov.'s Compl. in Intervention ¶¶ 35-58 (stating that the winning bidder on contract 07 became the losing bidder on contract 29, while the losing bidder on contract 07 became the winning bidder on contract 29).)

In total, the evidence indicates that the relator attempted to allege a conspiracy that spread beyond bid-rigging on contract 20A. It is clear that the "conduct" alleged in the original complaint constitutes bid-rigging of more than one contract submitted by defendants in Egypt. Relator had information and belief that such other fraudulent contracts existed, otherwise it presumably would not have made such a statement in its pleading.  *See id.* ¶ 32; *cf.* Fed. R. Civ. P. 11. Therefore, the addition of claims as to contracts 07 and 29 in the government and relator's subsequent complaints were merely the clarification of the averment that an overarching conspiracy existed to bid-rig multiple AID contracts in Egypt.  Such a clarification ably falls within the *Hicks* standard.  *See Hicks*, 283 F.3d at 388.  Moreover, this Court finds that the claims averred in the relator's original complaint put defendants on notice that any other AID contract submitted by the defendants for a project in Egypt were being reviewed by the relator for indications of fraud.  This is a sufficiently limited pool of contracts such that the defendants could not have been unaware that any further claims of fraud associated with the alleged

conspiracy would have come from any of these contracts.  Therefore, defendants will not be

prejudiced by the addition of claims arising from these contracts, of which they were aware.

In conclusion, this Court finds that the conduct alleged in the relator's original complaint

was an alleged overarching conspiracy among the defendants to bid-rig multiple AID contracts in

Egypt.  As such, the claims on contracts 07 and 29 constitute the same "conduct, transaction, or

occurrence" as the conduct alleged in the relator's original complaint.  Therefore, the claims on

each contract alleged in the government's Complaint in Intervention may relate back to the

relator's original complaint.[7]  Accordingly, the relator's objection to the magistrate judge's

recommendation that only the claims as to contract 20A may relate back is SUSTAINED.

B.      *Objection on the Limitations Period Applicable to Government's Claims*

In light of the fact that this Court has determined that the claims on each contract may

relate back under Rule 15(c) as part of a single overarching conspiracy, the Court does not have

to assess the application of the FCA statute of limitations as to the government's claims on

contracts 07 and 29.  Therefore, the defendants' objection as to the limitations period applicable

to the government's claims on these two contracts is moot.  Accordingly, this Court finds that the

defendants' objection is DISMISSED AS MOOT.

C.      *Common Law Claims Are Not Barred*

Defendants HII and Harbert Corporation next object that the government is time-barred

from bringing common law claims of Unjust Enrichment and Money Paid under Mistake of Fact

against the defendants.  They contend that both of these claims are claims that arise out of the

---

[7] Accordingly, for the same reasons, so too may the claims on contracts 07 and 29 in the
relator's amended complaints relate back to the relator's original complaint.

common law tort of fraud due to the fact that the government and relator have alleged that a fraud-based bid-rigging conspiracy existed as to the three contracts at issue.  Accordingly, defendants argue that 28 U.S.C. § 2415(b) governs the common law claims brought by the government against the defendants.  Under 28 U.S.C. § 2415(b), the federal government is prohibited from bringing a common law claim for damages founded upon a tort beyond a period of three years from the date the right of action accrues.  Defendants cite *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824 (S.D.N.Y. 1986), which endorses their contentions.

The approach espoused in *Blusal Meats* has already been rejected, however, in a recent opinion from this district.  *See United States v. Intrados/Intern. Management Group*, 265 F.Supp.2d 1, 12-13 (D.D.C. 2002) (Urbina, J.).  In *Intrados*, Judge Urbina found and endorsed a considerable number of court of appeals' decisions that held that an unjust enrichment claim under 28 U.S.C. § 2415 is subject to the six-year limitations period under 28 U.S.C. § 2415(a) due to the fact that it is a claim arising out of a contract.  *Id.* at 12-13.  Judge Urbina disregarded the *Blusal Meats* opinion because it showed "no awareness or consideration" of the great weight of authority applying a six-year period to unjust enrichment claims brought by the government. *Id.* at 13.  Moreover, Judge Urbina went on to find that, even if the *Blusal Meats* rationale was applied, the six-year limitations period would still apply because the government's unjust enrichment claim would still qualify as a quasi-contract claim due to the fact that it is based on fraud but arises out of a contract.  *Id.*

Applying the well-reasoned rationale from *Intrados* to the claims brought in this case, this Court finds that the common law claims of unjust enrichment and money paid under mistake of fact are both subject to the six-year limitations period under 28 U.S.C. § 2415(a).  Both claims

are quintessential contract-based claims, which fall under the six-year limitations period

prescribed by § 2415(a).  As *Intrados* notes, the addition of alleged fraud–to the extent that it

does anything–merely alters these claims to quasi-contract claims, which also are given a six-year

limitations period under § 2415(a).  Accordingly, defendants' objection as to the applicable

period of limitations for the government's common law claims is OVERRULED.

       D.      *Unjust Enrichment Claim Properly Pleaded*

      Defendant HII next objects that the government's second cause of action for unjust

enrichment should be dismissed, insofar as it relates to contract 29, because the government's

First Amended Complaint in Intervention "fail[s] to plead *any* of the requisite elements of a

claim for unjust enrichment" against HII.  (Def. HII's Obj. [240] to March 9, 2006 R&R, at 5.)

HII contends that, though the government initially asserted allegations for unjust enrichment

against HII as to contract 29 in its initial Complaint in Intervention, it failed to mention HII at all

in the First Amended Complaint in Intervention.  HII's objection, however, is ultimately moot in

light of the government's filing of its Second Amended Complaint in Intervention, in which it

alleges that Defendant Anderson, acting on behalf of Defendant HII, engaged in the conspiracy as

it related to contract 29, that a benefit was conferred by the government and received by members

of the conspiracy for their benefit.

      Assuming, *arguendo*, that the objection stood ripe, it is nonetheless unlikely that HII

would succeed.  In this Circuit, the typical elements of a claim for unjust enrichment are that:

"(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained

the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the

benefit." *Rapaport v. United States Dept. of Treasury, Office of Thrift Supervision*, 59 F.3d 212,

217 (D.C. Cir. 1995).  As the D.C. Circuit noted in *Rapaport*, "the fundamental characteristic of

unjust enrichment is 'that the defendant has been unjustly enriched by receiving something . . .

that properly belongs to the plaintiff[, thereby] forcing restoration to the plaintiff.'" *Id.* (quoting

DOBBS, LAW OF REMEDIES § 4.1(2)).  The Court presumes that the entire purpose of bringing an

FCA claim against defendants does, by itself, establish the third element of unjustness, at the

very least for pleading purposes.  Accordingly, the only two elements at issue are whether

plaintiff conferred a benefit upon the defendant HII, and whether defendant HII accepted and

retained the benefit conferred.

Looking to the First Amended Complaint in Intervention, this Court finds that both

elements at issue are established in the First Amended Complaint in Intervention.  First, there is

little doubt as to the fact that plaintiff the government conferred a benefit by submitting payments

on allegedly inflated contract bids as to contract 29. (Gov.'s First Am. Compl. [237], at ¶ 84.)

Moreover, there is sufficient information in the allegations that HII received this conferred

benefit.  Though the First Amended Complaint in Intervention does not specifically state HII

received the benefit, it does state that defendant Anderson and others agreed to submit artificially

inflated bids on contract 29 "*in exchange for the payment of money*."  (*Id.* at ¶ 75.)  The First

Amended Complaint in Intervention also states clearly in its introduction that defendant

Anderson "acted as vice president of defendant HII with overall responsibility and authority for

HII's performance and administration of contracts, including those with agencies of the United

States." (*Id.* at ¶ 19.)  Construing the First Amended Complaint in Intervention in order to do

substantial justice as mandated under Federal Rule of Civil Procedure 8(f), the Court finds that

these allegations, taken together, are sufficient to establish the alleged link that defendant

Anderson acted on behalf of HII when allegedly engaging in talks to conspire to fraudulently submit bids as to contract 29.  Therefore, the Court finds that the first element of unjust enrichment was sufficiently pleaded in the First Amended Complaint in Intervention.

The First Amended Complaint in Intervention also sufficiently pleads the second element for an unjust enrichment claim.  As the complaint shows, Holzmann[8] paid two large sums of money to co-conspirators as part of the bid-rigging agreement on contract 29.  *Id.* at ¶ 80, 81.  This undoubtedly points to payments being made to HII via Anderson, and Harbert, as Anderson and Harbert were the two other alleged conspirators–albeit acting for themselves and on behalf of their respective corporate entities–mentioned in the First Amended Complaint who took part in the bid rigging of contract 29.  (*See id.* at ¶ 74, 75.)[9]  Therefore, the Court finds that the second element of unjust enrichment was sufficiently pleaded in the First Amended Complaint in Intervention.

Accordingly, the Court finds that defendant HII's objection on the grounds of insufficient pleading of the claim of unjust enrichment as to contract 29 against HII is OVERRULED AS MOOT by virtue of the Second Amended Complaint in Intervention, which sufficiently alleges HII's role in the conspiracy to bid-rig contract 29.  Moreover, the Court finds that, on its face, the First Amended Complaint in Intervention sufficiently pleaded the elements for unjust enrichment as to contract 29 against defendant HII.

---

[8] Philipp Holzmann AG, once a defendant in this case is now no longer a defendant.

[9] Though HII might object to this finding as insufficient due to a lack of particularity under Rule 9(b) of the Federal Rules of Civil Procedure, it had the opportunity to do so in objecting to the Report and Recommendation, but failed to do so.  Therefore, the Court will not take on the merits of such a contention at this point.

E.        *Objection re: Proper Service of Relator's Second Amended Complaint*

Defendants BHIC and Harbert UK also objected to Magistrate Judge Facciola's finding

that the relator's Second Amended Complaint should not be dismissed notwithstanding the fact

that the relator never formally served or had summons issued as to either defendant in connection

with the relator's Second Amended Complaint.  In his Report and Recommendation, Magistrate

Judge Facciola found that BHIC and Harbert UK's receipt of the government's 2001 Complaint in

Intervention put both defendants on notice of the claims made by the relator, such that formal

service of process of the relator's Second Amended Complaint did not prejudice either defendant.

(Mar. 9, 2006 R&R [231], at 49 n.28.)

As Magistrate Judge Facciola noted, the law within this Circuit regarding the

requirements of formal service under Rule 4 of the Federal Rules of Civil Procedure is "to

provide the mechanisms for bringing notice of the commencement of an action to defendant's

attention and to provide a ritual that marks the court's assertion of jurisdiction over the law."

(Mar. 9, 2006, R&R [231], at 47 (quoting *F.T.C. v. Campagnie De Saint-Gobain-Pont-a-*

*Mousson*, 636 F.2d 1300, 1313 n.61 (D.C. Cir. 1980))).  Additionally, courts within this Circuit

have declined to dismiss a case for improper service if there is no prejudice to the opposing party.

*See Hobson v. Wilson*, 556 F. Supp. 1157, 1185-86 (D.D.C. 1982).[10]  Moreover, as Magistrate

Judge Facciola points out, the great weight of authority in other circuits appears to follow this

Circuit's liberal treatment of service requirements under Rule 4 by disregarding any errors in

---

[10] Though *Hobson* ultimately dealt with the notion prejudice to the opposing party within
the context of untimely service, the Court finds the rationale espoused in *Hobson* to be equally
applicable in a case such as this one where, though formal service of process was not technically
effected, the defendants clearly had notice of the

service upon the defendant's appearance and participation in the case.  (*See* Mar. 9, 2006, R&R [231], at 47 nn.26, 27.)

In light of the applicable law within this Circuit, defendants' argument must fail.  First, it is clear from the record that defendants had "notice of the commencement of an action" against them.  They received the government's Complaint in Intervention, which put them on notice of the relator's claims against the defendant.  (*See* Gov.'s Compl. in Intervention [4].)  In addition, once the government intervened, the Court issued a non-sealed Order [3] on February 12, 2001, which noted that both the government and relator's complaints were to be unsealed and provided to the defendants along with the government's Notice [2] of Election to Intervene in Part and to Decline to Intervene in Part.  Furthermore, within this Notice, the government made express mention of the relator's Second Amended Complaint requesting that it be unsealed and served upon the defendants.  Finally, in the defendants' motion [161] to dismiss the Second Amended Complaint, defendants argued the substantive merits–or alleged lack thereof–of the Second Amended Complaint.  Accordingly, in light of the totality of this evidence, it is clear that the defendants were not left without notice of the commencement of the action.  To the contrary, they

Moreover, it would be a significant overstatement to say that Harbert UK or BHIC suffered any prejudice due to the lack of formal service of the relator's Second Amended Complaint because it is obvious from their actions that the defendants had access to it.  As mentioned previously, their very attacks on the merits of the complaint's allegations as to particularity and failure to state a claim make this point clear.  Moreover, the extraordinary similarities between the two pleadings as to the claims brought and evidence proffered ensure

that the defendants did were not caught off guard as to a method by which to respond.  The defendants concede this fact, and even rely upon it in supporting its motion to dismiss the relator's complaint.  This is underscored by the defendants' decision to use the same arguments attempting to dismiss the relator's complaint as it did to respond to the government's complaint.

Finally, upon a thorough look at the record, it is clear that the defendants have appeared and have continued to actively participate in this action.  Since the unsealing of the Second Amended Complaint in early 2001, BHIC and Harbert UK have filed countless motions and responses to pleadings from the government and the relator on procedural and substantive grounds.  Moreover, there can be no doubt as to Harbert UK's willingness to participate in this matter.  In both the government's initial Complaint in Intervention and the relator's Second Amended Complaint, Harbert UK was incorrectly captioned as "Harbert U.K. Services, Ltd." Notwithstanding this oversight, Harbert UK actively joined the litigation and made efforts to note to the Court that it had been improperly designated in both complaints.[11]

Accordingly, this Court finds that defendants BHIC and Harbert UK had ample notice of the commencement of the action by the relator against them.  In addition, this Court finds that these defendants suffered no prejudice due to the lack of formal service of process of the relator's Second Amended Complaint.  In light of these facts, and in line with the law of this Circuit, the Court finds that the primary function of formal service under the strictures of Rule 4 of the

---

[11]  Though this oversight would undoubtedly been corrected by a Rule 15 amendment to the pleadings, had the error been caught by either the relator or the government, what is of note in this instance is Harbert UK's active attempt to join the suit and proactively note the mistake so as to correct it.

Federal Rules of Civil Procedure are satisfied.  Therefore, the defendants' objection as to

improper service of process of the Second Amended Complaint is OVERRULED.

  F.  *Issue of Preemption of FAA over FCA*

  Defendants Bill Harbert, BHIC, and Harbert UK also object to the magistrate judge's

finding that the Foreign Assistance Act ("FAA") does not preempt the False Claims Act ("FCA").

According to the defendants, the FAA "the FAA creates a complete and exclusive scheme for

regulating funds appropriated under the FAA, including relief for false claims related to such

funds."  (Defs.' Obj. to Mar. 9, 2006, R&R, at 5.)  The power to bring claims for violations of

USAID moneys rests solely in the President.  (*Id.*)  Therefore, they argue, the claims brought by

the relator and the government are preempted and must therefore be dismissed.

  As the United States Supreme Court has stated, "[j]udges 'are not at liberty to pick and

choose among congressional enactments, and when two [or more] statutes are capable of

co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the

contrary, to regard each as effective.'"  *County of Yakima v. Confederated Tribes and Bands of

the Yakima Indian Nation*, 502 U.S. 251, 265-66 (1992) (quoting Morton v. Mancari, 417 U.S.

535, 551 (1974)).  Following this notion, courts have refused to preempt the False Claims Act,

even where other laws provide closely related regulation and remedies. *See, e.g.*, *United States v.

General Dynamics Corp.*, 19 F.3d 770, 773 (2d Cir. 1994) (stating that "well established

jurisprudence . . . strongly disfavors preemption of federal statutory law by another federal statute

absent express manifestations of preemptive intent" in refusing to hold that the Anti-Kickback

Act pre-empted claims under the False Claims Act); *United States ex rel. Fallen v. Accudyne

Corp.*, 880 F. Supp. 636 (W.D. Wis. 1995) (finding that federal environmental law did not

preempt False Claims Act claim that government contractor knowingly failed to comply with environmental regulations expressly required by its contract with the United States).  By way of limited exception, the Supreme Court has noted that there are "two well-settled categories of repeals by implication-(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest . . . ." *Radzanower v. Touche Ross & Co.*, 426 U.S. at 154, 96 S.Ct. at 1993 (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)) (emphasis added).

Notwithstanding the defendants' argument to the contrary, there is no indication–within the text of the statute, or otherwise–that the FAA was intended to be the exclusive remedy.  The FAA's language unambiguously states that the President "may" pursue a claim to obtain remedy for violations of the FAA.  22 U.S.C. § 2399(b) (1968).  This language is entirely permissive.  Moreover, there is no indication at any point of a clear and manifest intention by Congress that the FAA has repealed the FCA.  Both statutes remain in effect to this day.  The contorted and highly unlikely scheme of a potential "international crisis" posited by defendants does nothing to alter this view.  In light of these facts the Court finds that the FAA does not preempt the FCA, and that the relator and the government were free to choose the cause of action they saw fit under either statute.   Therefore, this Court finds that the defendants' objection is OVERRULED.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 7, 2007.

21