**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RICHARD F. MILLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 95-1231 (RCL)** |
| ) | |
| **PHILIPP HOLZMANN,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM & ORDER**

I.      Court's Review of October 31, 2006, Report and Recommendation [398]

This matter is before the Court on Magistrate Judge John M. Facciola's October 31, 2006,

Report and Recommendation [398].  In his Report and Recommendation, Magistrate Judge

Facciola addressed a number of issues.  First, Magistrate Judge Facciola found that the fact that

the government's Complaint in Intervention is deemed an amendment of the relator's complaint

does not render ineffective the claims brought by the relator.[1]  Second, Magistrate Judge Facciola

more specifically dealt with his previous recommendation within Report and Recommendation

[231] to deny BHIC and Harbert UK's motion to dismiss the relator's Second Amended

Complaint for failure to formally serve defendants with a certified copy of the complaint.  He

reaffirmed his recommendation that, pursuant to the law within this Circuit, this Court should

_____

[1] In making such a finding, Magistrate Judge Facciola also found that a relator may bring
different claims and sue different defendants than the government.  (Oct. 31, 2006, R&R [398],
at 4 & n.1.)  In light of these cases, in particular *Juliano v. Fed. Asset Disposition Ass'n*, 736 F.
Supp. 348, 353 (D.D.C. 1990), this Court is persuaded that Magistrate Judge Facciola's reasoning
is sound, and finds no reason to disturb it.  This is particularly so in light of the fact that none of
the defendants objected to this finding.

deny the defendants' motions in light of the fact that both had ample notice of the action.[2]
Interestingly, the parties did not object to either of the aforementioned findings and
recommendations made by the magistrate judge.

The parties did, however, make three separate objections on the basis that the magistrate
judge failed to address certain issues within the Report and Recommendation [398]. First,
defendants Bill Harbert, BHIC, and Harbert UK objected to Report and Recommendation [398]
on the grounds that it failed to address the issue of whether the relator and the government had
amended their respective complaints so as to comply with the requirement under Rule 9(b) of the
Federal Rules of Civil Procedure that fraud must be pleaded with particularity. Next, defendant
Bilhar objected that the magistrate judge did not substantively consider its motion to dismiss both
complaints on statute of limitations grounds. Finally, defendant Bill Harbert objected that the
Report and Recommendation [398] failed to address his argument that the relator's complaint
was barred by the statute of limitations.

Local Civil Rule 72.3(b), consistent with 28 U.S.C. § 636(b)(1)(C), states that "[a] court
shall make a *de novo* determination of those portions of a magistrate judge's findings and
recommendations to which objection is made . . . ." As the United States Supreme Court has
held, there is no indication that the federal rules governing review of a magistrate judge's
recommendation set forth in § 636(b)(1)(C) were created to a require a district judge to review
those portions of a magistrate judge's report to which no objections are filed. *See Thomas v. Arn*,

---

[2] As the grounds for this finding were already fully addressed in this Court's *de novo*
review of the same issue raised in defendants' objection to Report and Recommendation [231],
this Court will not resubmit Magistrate Judge Facciola's reaffirmation of his recommendation to
further review, particularly in light of the fact that defendants did not object to it a second time.

474 U.S. 140, 150-51 (1985).  In light of the similarities in statutory language between Local

Civil Rule 72.3 and 28 U.S.C. § 636(b)(1)(C),[3] this Court finds that it is also not required under

the local rules to review those portions of the magistrate judge's report and recommendation to

which no objection was filed.[4]

Accordingly, those portions of the magistrate judge's October 31, 2006, Report and

Recommendation [398] that were not objected to are entitled to be adopted.  Therefore, this

Court will adopt those findings, and will limit the scope of its *de novo* review to those portions of

the report and recommendation to which objections were made.  For the following reasons, this

Court finds that the defendants' first two objections are DISMISSED AS MOOT, and that the

third objection from Defendant Bill Harbert is OVERRULED, pending resolution at trial of the

issue of material fact of the level of the government's knowledge about claims concerning Bill

Harbert relating to contract 20A.

A.      Defendants' 9(b) Objection

Since defendants' objection concerning whether the relator and the government each

pleaded fraud with sufficient particularity so as to satisfy 9(b), a number of events have occurred

---

[3] *Compare* 28 U.S.C. § 636(b)(1)(C) (2005) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."), *with* L.Cv.R. 72.3(c) (2006) ("A judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . . .").

[4] This Court's finding that no requirement exists to review those portions of the magistrate judge's recommendations that were not objected to does not operate as a finding that the district court is not allowed to review those sections.  To the contrary, as both the federal and local rules indicate, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (2005); L.Cv.R. 72.3(c) (2006).

that render this objection moot.  First, on November 28, 2006, Magistrate Judge Facciola issued

an Order [424] in which he found, after reviewing the government's amended complaint in

intervention, that the government had sufficiently pleaded fraud as to defendants BHIC, Harbert

UK, and Bilhar.[5]  No objections were raised to the finding made within this Order.  Reviewing

the government's Amended Complaint in Intervention, in addition to Magistrate Judge Facciola's

extensive assessment of the parties' involvement in the alleged scheme, there appears to be no

reason not to adopt the finding made within that Order that the government pleaded fraud within

the requirements set forth in Rule 9(b).  Accordingly, in light of the fact that the defendants' 9(b)

objection was ultimately addressed and denied after the October 31, 2006, Report and

Recommendation, this Court finds that Defendants' 9(b) objection as to the government's

complaint in intervention is DISMISSED AS MOOT.

Next, on the same date as his Order [424], Magistrate Judge Facciola issued a Report and

Recommendation [422], in which he stated that the relator's Fourth Amended Complaint

sufficiently pleaded fraud as to defendant Bill Harbert.  Though this Report and

Recommendation was objected to, it was not objected to on the magistrate judge's finding as to

the sufficiency of fraud in the relator's Fourth Amended Complaint.  Therefore, the Court will

adopt the magistrate judge's finding that the relator pleaded fraud as to Bill Harbert with

---

[5] In this Order, however, Magistrate Judge Facciola noted that the fact that the
government pleaded sufficient facts to satisfy the pleading requirements for fraud under Rule
9(b) did not necessarily mean that the government pleaded sufficient facts so as to exercise
personal jurisdiction over a foreign defendant such as Harbert UK.  Accordingly, Magistrate
Judge Facciola ordered that a hearing be held in order to ascertain whether there was enough
evidence to show that Harbert UK had sufficient minimum contacts with the forum so as not to
violate due process.  The magistrate judge's recommended outcome from this hearing can be
found in the January 8, 2007, Report & Recommendation [506].  This Court's review of that
Report and Recommendation will be addressed in a separate opinion.

sufficient particularity in accordance with Rule 9(b).[6]  Accordingly, in light of the fact that the

defendant's 9(b) objection was ultimately addressed and denied after the October 31, 2006,

Report and Recommendation, this Court finds that Bill Harbert's 9(b) objection as to the relator's

complaint is DISMISSED AS MOOT.

      B.       Defendants' Statute of Limitations Objections

           1.       Bilhar's Statute of Limitations Objection

On December 28, 2006, Magistrate Judge Facciola issued a Report and Recommendation

[498] in which he addressed the statute of limitations argument posed by defendant Bilhar.  In

that Report and Recommendation, Magistrate Judge Facciola recommended that this Court grant

Bilhar's motion to dismiss both the government and relator's claims against Bilhar because those

claims did not relate back to the prior versions of the parties' respective complaints, and were

therefore untimely.  This Court will address in a subsequent opinion the substantive merits of this

finding in this Court's *de novo* review of the aforementioned Report and Recommendation [498].

Accordingly, this Court finds that Bilhar's objection to the magistrate judge's failure to consider

its statute of limitations objection is DISMISSED AS MOOT.

           2.       Bill Harbert's Statute of Limitations Objection

In assessing the merits of the parties' objections to the magistrate judge's October 31,

2006, Report and Recommendation [231], this Court addressed the statute of limitations issue of

both the relator and the government's respective complaints.  In that opinion, this Court found

that the government's claims as to contracts 07 and 29 were a part of an overarching conspiracy

---

[6] To the extent that there were objections from the parties as to other findings made by the magistrate judge in his January 8, 2006, Report and Recommendation [506], those objected-to recommendations will be considered *de novo* in a subsequent opinion.  *See also supra* note 3.

to rig bids on USAID contracts in Egypt.  As such, the claims and evidence averred in the government's complaint in intervention concerning contracts 07 and 29 arose from "the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading," and therefore related back to the relator's initial complaint under Rule 15(c)(2) of the Federal Rules of Civil Procedure.  Therefore, this Court found that the government's claims as to all three contracts were not time-barred under the six-year statute of limitations prescribed by the FCA. Accordingly, the government's complaint in intervention could include claims filed from June 30, 1989 to the present against all defendants for all contracts.[7]   For similar reasons, those additional claims brought by relator concerning contract 07 and 29 against the same defendants also relate back to the date of the relator's original complaint, and are therefore timely.

Defendant Bill Harbert, however, asserts that he stands in a different situation than those defendants who were named in both complaints because he was named as a defendant solely in the relator's Second Amended Complaint.  Therefore, he contends, the relator's Second Amended Complaint, insofar as the claims and facts it avers relate to Bill Harbert, cannot relate back under Rule 15(c) of the Federal Rules of Civil Procedure because Bill Harbert was an additional party, not a proper, but misnamed party.  As a result, Bill Harbert maintains that the limitations period governing the relator's Second Amended Complaint must be calculated from the date the Second Amended Complaint was filed with the Court.  The available period for a relator, he argues, is the six-year limitations period under 31 U.S.C. § 3731(b)(1).[8]  Applying this six-year limitations

---

[7] Again, the defendants referenced include all defendants except for Bilhar, the merits of whose statute of limitations objection the Court will address in a subsequent opinion.

[8] This assumption is premised on Bill Harbert's argument that the relator may not rely on the "savings provision" prescribed in 31 U.S.C. § 3731(b)(2) of the False Claims Act (FCA),

period, Bill Harbert concludes that the claims against him set forth in the relator's Second

Amended Complaint must be found to be untimely.  As a result of the untimeliness of the Second

Amended Complaint, the relator's subsequent incarnations of its complaint against Bill Harbert

must also be untimely.

Defendant Bill Harbert's objection on statute of limitations grounds raises three distinct

issues.  First, the Court must determine whether the relator's Second Amended Complaint may

relate back under Rule 15(c) of the Federal Rules of Civil Procedure.  Second, assuming relation

back does not apply, the Court must decide which period of limitations under the FCA governs

the Second Amended Complaint.  Finally, the Court must address whether the relator's

subsequent amended versions of its complaint against Bill Harbert are timely.

a.      Rule 15(c) Relation Back

Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of an

amended pleading to the date of the original pleading.  Under the relation back doctrine, if the

amended pleading satisfies the requirements under Rule 15(c), the amended pleading is treated as

if it were filed on the date of the original pleading.  In order for an amended pleading to relate

back,

> (2) the claim or defense asserted in the amended pleading arose out of the conduct,
> transaction, or occurrence set forth or attempted to be set forth in the original
> pleading, or
> (3) the amendment changes the party or the naming of the party against whom a
> claim is asserted if the foregoing provision (2) is satisfied and, within the period
> provided by Rule 4(m) for service of the summons and complaint, the party to be
> brought in by amendment (A) has received such notice of the institution of the action
> that the party will not be prejudiced in maintaining a defense on the merits, and (b)
> knew or should have known that, but for a mistake concerning the identity of the

---

which allows for an three-year alternative limitations period.

7

proper party, the action would have been brought against the party.[9]

In other words, when a party files an amended pleading that adds an additional party in the hopes of securing relation back to the original pleading, the party must show that: (1) the claims in the amended pleading arose from the same conduct as the claims in the original pleading; (2) that the intended party received sufficient notice of the suit so as not to prejudice the party in defending itself; and (3) that the intended party knew or should have known that, but for the mistake in incorrectly naming the party, the action would have been brought against the proper party.  The D.C. Circuit held that these requirements necessitate a finding that Rule 15(c) only allows the addition of a party in an amended pleading order to correct a misnomer in the prior pleading. *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir. 1997).  As the court of appeals held, "a potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose–unless it is or should be apparent to that person that he is a beneficiary of a mere slip of the pen . . . ."  *Id.*  Accordingly, Rule 15(c) allows changes in parties between original and amended pleadings only to the extent that the amendment corrects the name of an obviously-intended defendant.  *See id.*

In the present case, the relator argues that the addition of Bill Harbert should relate back because he is a part of the alleged overarching conspiracy, and that, "as long as 'relator has alleged a conspiracy with over acts in support of it that occurred within the six-year period, the conspiracy claim should not be dismissed." (Rel.'s Resp. to Defs.' Obj. to Oct. 31, 2006 R&R [398], at 8 (quoting *United States ex rel. Fisher v. Network Software Associates, Inc.*, 180 F. Supp. 2d 192, 194 (D.D.C. 2002).)  Relator's argument misunderstands the clear language of

---

[9] Fed. R. Civ. P. 15(c).

Rule 15(c), as well as the law of this Circuit regarding the addition of parties to amended pleadings.  Though additional facts of the alleged overarching conspiracy within the Second Amended Complaint may relate back as to those defendants who were previously named in the original pleading, the addition of Bill Harbert as a party to the Second Amended Complaint cannot relate back because the relator did not add Bill Harbert for the purposes of correcting a mistake in identifying an otherwise obviously-intended defendant.  Rather, the relator was attempting purely to add a defendant whose role in the conspiracy ultimately revealed itself during discovery.  The addition of a party in such a manner does not satisfy the requirements of Rule 15(c).  Therefore, the claims against Bill Harbert alleged in the relator's Second Amended Complaint may not relate back to the date of the relator's original complaint.

> b.    Applicable Limitations Period Under the FCA

Though the relator may not avail itself of the relation back doctrine under Rule 15(c), it may nonetheless bring claims against defendant Bill Harbert if its Second Amended Complaint was timely filed under the limitations periods set forth under the FCA.  Under the FCA, two limitations periods exist.  A civil action for a False Claims Act violation may not be brought

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
> whichever occurs last.[10]

Following Judge Friedman's opinion in *Fisher*, defendant Bill Harbert argues that the relator is entitled only to the six-year limitations period prescribed by 31 U.S.C. § 3731(b)(1).  *See United*

---

[10] 31 U.S.C. § 3731(b) (2006).

*States ex rel. Fisher*, 180 F. Supp. 2d at 193 (finding that 31 U.S.C. § 3731(b)(2) "applies only to the government and not to a *qui tam* relator").  Under this six-year limitations period, Defendant argues that the relator's claims against him are untimely.[11]  As this Court recently decided, however, in *qui tam* actions where the United States does not intervene, the relator may take advantage of either statute of limitations, whichever occurs last.  *See United States ex rel. Pogue v. Diabetes Treatment Centers of America*, No. 01-cv-50 (RCL), 2007 WL 404260, at *12 (D.D.C. Feb. 7, 2007) (Lamberth, J.).  Accordingly, this Court must determine how each limitations period applies to the relator's claims against Bill Harbert, and then determine which claims fall within the broader of the two periods.

In order to determine when the statute of limitations begins to run for a conspiracy claim under the FCA, the Court must first look to what constitutes the necessary elements of a conspiracy claim under the FCA.  As this Court has previously held, the plaintiff must prove three elements in order to assert a valid conspiracy claim under the FCA; those elements are: "(1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim."  *United States v. Bouchey*, 860 F. Supp. 890, 893 (D.D.C. 1994).  In light of the fact that proof of an overt act in furtherance of the conspiracy is required, the six-year statute of limitations under

---

[11] According to the defendant's calculations, the six-year period began to run on June 20, 1993, the date on which the last claim for payment on contract 20A was made.  Therefore, he argues that the claims against Bill Harbert based on contract 20A set forth in the Second Amended Complaint had to be filed no later than June 20, 1999.  In light of the fact that the Second Amended Complaint was filed on December 28, 2000, Bill Harbert argues that its claims against him are, therefore, untimely.

31 U.S.C. § 3731(b)(1) begins on the date six years prior to the date the complaint was filed, and ends at the filing of the relator's complaint. *See Fisher*, 180 F. Supp. at 195.[12]  Accordingly, the relator may use any overt acts that occur within that time frame to prove the underlying conspiratorial agreement, but may not use overt acts occurring prior to the date the statute of limitations began to run. *Id.*  If the relator is successful in proving the existence of the conspiracy by the use of overt acts from within the designated period, "he may recover damages for all violations committed as a part of the conspiracy from that date forward." *Id.*

The relator's Second Amended Complaint, in which claims were averred for the first time against Bill Harbert as to contract 20A, was filed on December 28, 2000.  Were the six-year period to apply to the relator's claims against Bill Harbert arising in the Second Amended Complaint, the relator would only be able to avail itself of any overt acts related to contract 20A that occurred between December 28, 1994 and December 28, 2000.  As the record reflects, however, the last claim for payment on contract 20A was made on June 20, 1993, over a year and a half prior to the date made available to the relator under the FCA's six-year limitations period.  Therefore, relator's claims against Bill Harbert arising out of contract 20A would be untimely under the six-year limitations period set forth in 31 U.S.C. § 3731(b)(1) of the FCA, and

---

[12] In *Pogue*, this Court considered in depth the various methodologies surrounding whether the "savings provision" applies with equal force to the relator and the government, including the school of thought adopted by Judge Friedman in *Fisher*.  *See Pogue*, 2007 WL 404260, at *7.  Though the *Pogue* opinion ultimately did not follow Judge Friedman's non-binding opinion as to the application of the savings provision to the relator, this Court is persuaded that Judge Friedman's logic as to the calculation of the existence of a conspiracy for statute of limitations purposes under the FCA is sound.  Therefore this Court shall apply the reasoning in *Fisher* to its own calculation of the statute of limitations in this case.

therefore the claims against defendant Bill Harbert would have to be dismissed.[13]

Defendant Bill Harbert has not altogether won the day, however, in light of the fact this Court's recent decision in *Pogue* which stated that the relator may be entitled to the three-year alternate limitations period set forth in 31 U.S.C. § 3731(b)(2) of the False Claims Act (FCA). This provision applies in situations where, because of the defendant's fraud or purposeful concealment of the fraudulent conduct, the relator or the government only learns of the violation in a manner that places the defendant beyond the reach of the initial six-year limitations period under the FCA. In these types of cases, the three-year period begins to run from the point in time the government knew or reasonably should have known of facts material to the right of action. *Cf. Pogue*, 2007 WL 404260, at *8 ("[31 U.S.C. § 3731](b)(2)'s three-year statute of limitations applies across the board, measured *by the government's knowledge*.") (emphasis added). Under the FCA, the government knows or reasonably should know of the material facts associated with the violation of the FCA at the point that the government "discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir.1977).

Therefore, the relator would be entitled to bring a claim against Bill Harbert relating to contract 20A within three years of the date that the government could have discovered with

---

[13] Consequently, the relator's claims averred against Bill Harbert in its subsequent amended complaints would also be untimely under this six-year limitations period due to the fact that an amended complaint may not relate back to an untimely original complaint. *See Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) ("An amended complaint does not relate back to the filing of the original complaint if the original complaint, itself, was filed after the expiration of the statute of limitations."); *cf. Papenthein v. Papenthein*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998) (finding that an amended complaint cannot be born from, and may not relate back to an untimely original complaint).

12

reasonable diligence the basis of the claims against Bill Harbert relating to contract 20A.

Assuming that there is no evidence that an official of the United States government with

responsibility for bringing a suit in this matter had knowledge of the right of action more than

three years prior to December 28, 2000, when the relator's Second Amended Complaint was

filed, the relator's Second Amended Complaint against Bill Harbert shall be deemed timely.

Accordingly, the relator's claims against Bill Harbert concerning contract 20A set forth in the

Second Amended Complaint would be able to include claims for FCA violations on that contract

that occurred on or after December 28, 1990.  Moreover, the relator's subsequent claims against

Bill Harbert concerning contracts 07 and 29 may relate back to the Second Amended Complaint

because those claims arise from the same "conduct, transaction or occurrence" set forth in the

Second Amended Complaint, namely the overarching conspiracy to rig bids on AID contracts in

Egypt.  Accordingly, the relator's would also be able to include claims for FCA violations on

contracts 07 and 29 that occurred on or after December 28, 1990.

Heretofore, the evidence relating to whether the government knew or should have

discovered with reasonable diligence has been limited to the parties averments in their respective

pleadings.  In light of this Circuit's reluctance to dismiss a complaint on the basis of statute of

limitations solely on the facts in the initial pleadings,[14] this Court is hesitant to dismiss the

relator's claims against Bill Harbert at this stage.  Rather, at the very least, there is an issue of

material fact as to the level of knowledge the government had or should have had concerning the

pertinent facts surrounding Bill Harbert's involvement in FCA violations relating to contract

---

[14] *Cf. Firestone v. Firestone*, 76 F.3d 1205, 1208-09 (D.C. Cir. 1996) (holding that
"courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on
the facts of the complaint").

20A.  Such an issue will be best adjudicated at trial by the jury, and accordingly, this Court will defer to their findings of fact elicited at trial.[15]

In presenting this issue at trial, it should be noted that the statute of limitations is an affirmative defense.  Accordingly, the burden is on the defendant to present evidence that the government "discover[ed], or by reasonable diligence could have discovered, the basis of the lawsuit" against Bill Harbert as to contract 20A within such a period of time so as to render the relator's claims against Bill Harbert in its Second Amended Complaint untimely.  To the extent that the jury finds as a matter of fact that the government knew or should have known of Bill Harbert's involvement in the alleged bid-rigging of contract 20A prior to December 28, 1997, the relator's claims against Bill Harbert as to all contracts must be dismissed.[16]  If the jury does not find the government knew or should have known, then the relator may continue to bring claims against Bill Harbert for all contracts arising from violations occurring on or after December 28, 1990.  Until the jury ultimately resolves this issue, however, this Court must OVERRULE defendant Bill Harbert's objection, pending the jury's finding at trial.

II.     CONCLUSION

For the foregoing reasons, the defendants' 9(b) motion concerning sufficiency of pleading of fraud in the relator and government's respective complaints is DISMISSED AS MOOT.

---

[15] In light of the interlocking nature between the subsequent two contracts and contract 20A via the relation back doctrine under Rule 15(c), the issue of the government's knowledge as to material facts involving Bill Harbert's alleged FCA violation should be the dispositive inquiry undertaken by the trier of fact.

[16] Recall that, if the defendant can present evidence of the government's knowledge such that the three-year limitations period under § 3731(b)(2) does not apply, then the relator must resort to the six-year period of limitations under 31 U.S.C. § 3731(b)(1), under which his claims against Bill Harbert have already been found to be untimely.

14

Likewise, defendant Bilhar's motion to dismiss on statute of limitations grounds is DISMISSED

AS MOOT.  Finally, defendant Bill Harbert's statute of limitations objection is OVERRULED,

pending the jury's resolution of the issue of whether the government discovered or should have

discovered with reasonable diligence the material facts concerning Bill Harbert's involvement in

FCA violations surrounding contract 20A.


SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 7, 2007.