## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **RICHARD F. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 95-1231 (RCL)** |
| | ) | |
| **PHILIPP HOLZMANN, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

### MEMORANDUM & ORDER

This matter is before the Court upon consideration of the December 28, 2006, Report and

Recommendation [498] on defendant Bilhar International Establishment's (Bilhar) Motion [332]

for Judgment on the Pleadings against the government and the relator.  At issue in the Report and

Recommendation [498] was whether plaintiffs demonstrated by a preponderance of the evidence

that defendant Bilhar, formerly Harbert International Establishment, knew or should have known

that it was an intended, but misnamed defendant in the plaintiffs' respective complaints.  If the

plaintiffs were to meet this burden, then the plaintiffs' subsequent complaints in which Bilhar

was correctly named would be deemed to relate back to the date the original complaint was filed

as a proper amended pleading under Rule 15(c).  Magistrate Judge Facciola found that the

plaintiffs ultimately failed to meet this burden, and therefore could not relate back claims against

Bilhar averred in their subsequent complaints to the date of the relator's original complaint under

Rule 15(c).  As a result of not being able to relate these claims back, plaintiffs' claims against

Bilhar would be untimely.  Accordingly, Magistrate Judge Facciola recommended that this Court

grant Bilhar's motion to dismiss claims against it.

Pursuant to Local Rule 72.3(b), plaintiffs jointly filed objections to the Report and Recommendation.  In their objections, plaintiffs claimed that their amended complaints should have been allowed to relate back for two reasons.  First, plaintiffs argue that the predicate requirements to relate back under Rule 15(c)(3) were satisfied because defendant Bilhar knew or should have known that it was the intended defendant in plaintiffs' previous complaints.  Second, plaintiffs assert that denying relation back would allow defendant to benefit from the confusion it created.  In light of these objections, this Court will review *de novo* the magistrate judge's recommendation that relation back under Rule 15(c) should not apply.

A.      *Rule 15(c) Relation Back*

Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of an amended pleading to the date of the original pleading.  Under the relation back doctrine, if the amended pleading satisfies the requirements under Rule 15(c), the amended pleading is treated as if it were filed on the date of the original pleading.  In order for an amended pleading to relate back,

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[1]

---

[1] Fed. R. Civ. P. 15(c).

2

In other words, when a party files an amended pleading that adds an additional party in the hopes of securing relation back to the original pleading, the party must show that: (1) the claims in the amended pleading arose from the same conduct as the claims in the original pleading; (2) that the intended party received sufficient notice of the suit so as not to prejudice the party in defending itself; and (3) that the intended party knew or should have known that, but for the mistake in incorrectly naming the party, the action would have been brought against the proper party.  The D.C. Circuit held that these requirements necessitate a finding that Rule 15(c) only allows the addition of a party in an amended pleading order to correct a misnomer in the prior pleading.  *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir. 1997).  As the Court of Appeals held, "a potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose–unless it is or should be apparent to that person that he is a beneficiary of a mere slip of the pen . . . ." *Id.*  It stands to reason, then, that Rule 15(c) allows changes in parties between original and amended pleadings only to the extent that the amendment corrects the name of an obviously-intended defendant.  *See id.*

As there is no dispute as to the first two requirements under Rule 15(c), the Court must review whether the alleged intended defendant knew or should have known upon receiving the relator's complaint that it was the intended defendant, and that but for the plaintiffs' mistake in naming the wrong party, the action would have been brought against the correct defendant.  Put another way, this Court must determine whether plaintiffs have proven by a preponderance of the evidence that Bilhar knew or should have known that it was the intended defendant when the plaintiffs named Harbert International Establishment, Inc., as one of the defendants in their complaints.  Upon examination of the record, pleadings, and the conclusions set forth in the

3

magistrate judge's Report and Recommendation, this Court finds that plaintiffs have met this burden.

  *B.  Background: A Brief Description of Corporate Entities Involved*

  The Court's inquiry concerns the interplay between three companies owned or controlled by defendant Bill Harbert and his son, Bill Harbert, Jr.  The first company, Bilhar International Establishment ("Bilhar"), is a Liechtenstein-registered entity that came into existence in 1975.  At its inception, however, Bilhar was initially known as Harbert International Establishment ("Old HIE").  Though it was previously owned by other Bill Harbert-owned or operated entities, on December 9, 1991 Old HIE came under the control of BHIC, a wholly-owned company of Bill Harbert.  As of December 9, 1991, BHIC owned 79% of Old HIE; Bill Harbert owned the remaining 21% share of Old HIE in his own name.  Later, on September 21, 1993, Old HIE changed its name to Bilhar International Establishment ("Bilhar").

  Not one month later, in October 1993, the second company relating to this issue came into existence.  This new company, also named Harbert International Establishment ("New HIE"), was registered in Liechtenstein.  New HIE was owned personally by defendant Bill Harbert, who owned 51% of New HIE in his own name, and Bill Harbert, Jr., who owned the remaining 49%.

  Finally, the third corporation relevant to this dispute, came into existence in 1999.  This entity, named Harbert International Establishment, Inc. ("HIE, Inc."), was incorporated in Alabama, United States.  HIE, Inc. was wholly-owned by Bill Harbert, Jr., and was intended as a "shelf corporation," not created for conducting present business, but for some unnamed future purpose.

Counsel for all three of the aforementioned entities (Bilhar, New HIE, and HIE, Inc.) admitted that it was immediately known that the mention of "HIE, Inc." in plaintiffs' respective complaints was in error, and that HIE, Inc. was not the intended defendant.  Accordingly, the only outstanding issue is whether counsel for New HIE–who, coincidentally represents Bilhar as well–knew or should have known that plaintiffs intended Bilhar rather than New HIE as the proper defendant.

      C.    *Review of the Magistrate Judge's Findings*

In reaching the conclusion that Bilhar's Motion [332] to Dismiss should be granted, Magistrate Judge Facciola made two findings.  Relying upon testimony from defendant Bill Harbert and the attorneys for Bilhar, Magistrate Judge Facciola found that there was no evidence that either Bill Harbert or the attorneys for Bilhar[2] actually knew that the plaintiffs intended to sue Bilhar when they named HIE, Inc. as the defendant.  Next, Magistrate Judge Facciola found that the evidence was insufficient to establish that it was more likely than not that either Bill Harbert or the attorneys for Bilhar should have known that Bilhar was the intended defendant in plaintiffs' respective complaints.  This first conclusion is not at issue before this Court as plaintiffs–though they find it "implausible" that Bilhar did not actually know it was the intended defendant–challenge only the second conclusion that there is insufficient evidence that Bilhar should have known it was the intended defendant.

To reach this conclusion, the magistrate judge considered the following factors.  First, the magistrate judge recognized that there were descriptions in the plaintiffs' complaints that only

---

[2] Bill Harbert was served with a copy of the relator's complaint, while attorneys for Bilhar were served with a copy of the government's complaint.

applied to Bilhar.  The complaints describe the intended defendant as a Liechtenstein company to which Harbert International Inc.'s interest in contract 20A was assigned; this description fits only Bilhar.  The magistrate judge found that this factor was outweighed by the fact that there were other portions of the plaintiffs' complaints that either did not accurately describe Bilhar at all, or that imperfectly described Bilhar.  For example, both plaintiffs' complaints state that the intended defendant owned 49% in Harbert Construction Services (U.K.) Limited ("Harbert UK"), however the only company that matches that description is New HIE, not Bilhar.  In addition, both complaints state that Roy Anderson was the president of the intended defendant, yet Mr. Anderson was the president of both Bilhar and New HIE at different times.  Next, the magistrate judge weighed the notion that Bilhar was the only company of the three at issue that was in existence at the time the bid-rigging on contract 20A occurred.  The magistrate judge found that this was tempered, however, by the fact that another defendant, BHIC, was also named as a defendant, even though it was not in existence until after the time the alleged bid-rigging had occurred.  The fact that the government's Complaint in Intervention included specific allegations concerning contracts 07 and 29 made plausible the notion of adding a defendant that came into existence after the alleged bid-rigging on contract 20A occurred.  Accordingly, the magistrate judge posited, if New HIE had been involved in submitting claims as to contract 07, a reasonable person could infer that New HIE was the intended defendant.  Finally, the magistrate judge found that the plaintiffs had not pleaded its allegations of the overarching conspiracy with sufficient specificity to meet the requirements of Rule 9 of the Federal Rules of Civil Procedure. Considering all of this evidence, the magistrate judge found that "the evidence supporting the thesis that counsel had to know that the relator and the government were really suing Bilhar and

not Harbert International Establishment, Inc. is, at best, equivocal." (Dec. 28, 2006, R&R [498] at 23.)

According to the plaintiffs, the totality of the evidence ultimately supports the finding that Bilhar and its attorneys should have known that Bilhar was the intended defendant set forth in the relator's pleadings. The Court agrees.

       1.    *Magistrate Judge Facciola Gave Unnecessary Weight to Certain Evidence*

Upon an inspection of the complaints, the averments point more likely than not to Bilhar because a majority of the characteristics attributed to the intended defendant could only be attributed to Bilhar, and not New HIE. In the relator's Second Amended Complaint, he describes the intended defendant as a Liechtenstein company, that had been assigned the Harbert-side interest in contract 20A.[3] As the record shows, however, though New HIE and Bilhar were both Liechtenstein companies, Bilhar was the recipient of the assigned interest in contract 20A. The complaint also alleged that the intended defendant was "owned and controlled" by BHIC. As noted previously, BHIC owned a 79% interest in Bilhar, but had no ownership interest at all in New HIE. Though the relator's Second Amended Complaint mentions the notion of an overarching conspiracy, it describes in detail claims only on contract 20A. As counsel for both Bilhar and New HIE conceded, only Bilhar could have done work on contract 20A because only Bilhar was in existence at the time that the allegedly fraudulent bids on contract 20A were prepared.

In discarding this evidence pointing to Bilhar, the magistrate gave unnecessary weight to particular pieces of evidence. For example, Magistrate Judge Facciola relied on the fact that the

---

[3] The government's Complaint in Intervention identifies the intended defendant similarly.

plaintiffs' complaints included an imperfect description of Roy Anderson as the president of the intended defendant in support of a finding that Bilhar was not intended.  As the government has conceded, Mr. Anderson was both the president of Bilhar and New HIE at different times.  Still, the fact that Mr. Anderson was president of both entities does not rule out Bilhar as a possible defendant.  Rather, at its worst, the evidence creates an ambiguity that points equally to the possibility that either Bilhar or New HIE was the intended defendant.  By its very nature, such an ambiguity that equally maintains both entities as possible intended defendants certainly cannot support a finding that one entity is summarily ruled out.[4]  In fact, such an ambiguity, taken in light of the other evidence that could only have described Bilhar, points more heavily in favor of finding that counsel should have known that Bilhar was the intended defendant.

Another piece of evidence that the magistrate judge gave undue weight to was the fact that BHIC, a company that came into existence after the bid-rigging on contract 20A occurred, was named as a defendant.  The magistrate judge held that this fact was enough to counter the plaintiffs' argument that Bilhar was the intended defendant because Bilhar was the only entity in existence at the time the bid-rigging on contract 20A had occurred.  Therefore, he found, "if [New HIE] had been involved in submitting claims as to contract 07, a reasonable person could infer that the government was suing that entity that came into existence [after contract 20A]."  A number of factors undercut this rationale, however.

First, this theory is not supported by the evidence.  In his original complaint, the relator brought claims arising solely from contract 20A against the intended defendant.  Of the two

---

[4] Such a finding would be akin to saying that, though heads and tails are equal possibilities for a coin toss outcome, heads was the only possible outcome because it was not more than likely that tails would result.

entities at issue, the only one in existence at the time the bid-rigging on contract 20A occurred

was the entity that became known as Bilhar.  In his Second Amended Complaint, the relator

again only brought claims arising out of contract 20A against the same intended defendant,

which could again only be Bilhar.  The addition of claims on contracts 07 and 29 to the

government's Complaint in Intervention do little to change this fact.  Due to the fact that the

intended defendant in both plaintiffs' respective complaints was the same intended defendant in

the relator's original complaint, the addition of claims as to contracts 07 and 29 in the

government's Complaint in Intervention would have been brought against the same originally-

intended defendant in the relator's complaint.  As previously noted, the only defendant that these

original claims could have been brought against was the only entity that was in existence at the

time the bid-rigging on contract 20A occurred: Bilhar.  Moreover, the addition of claims cannot

point to New HIE for the simple fact that its counsel was aware that New HIE was not involved

in submitting claims on contract 07 at all.  When the threat of criminal prosecution was brought

against both Bilhar and New HIE, counsel for both entities convinced the antitrust prosecutors

not to indict New HIE based upon the distinctions between Bilhar and New HIE that were

averred in the relator's civil complaint.  Noting these distinctions, prosecutors ultimately did not

indict New HIE.  Counsel's knowledge that New HIE was not a target of the criminal

investigation, and that Bilhar was the target, diffuses any credibility to the notion that New HIE

could have been the intended defendant even though it was not in existence at the time contract

20A came about.[5]

---

[5] Moreover, to the extent that New HIE could have thought it might still have been the target of a civil litigation notwithstanding its non-involvement in the criminal prosecution, this fact is tempered by the fact that the very evidence New HIE used to distinguish itself from Bilhar

Second, the magistrate judge's theory also places too high a burden on the plaintiffs to prove that the defendant should have known it was the intended defendant.  The mere fact that a reasonable person *could* infer that the plaintiffs were suing New HIE does not support the finding that it was not more than likely that a reasonable person in Bilhar's position *should* have known that it was the intended defendant.  The fact that New HIE could infer its involvement amounts to nothing more than the existence of a plausible possibility based upon the evidence, which merely amounts to a reasonable doubt.  Because this is a civil matter, however, plaintiffs are not required to eliminate all reasonable doubts, but are merely required to establish that it is more likely than not that the defendant should have been aware that it was intended.  As the evidence shows, there is a good question as to how "reasonable" this doubt could actually be.  Though a single reasonable doubt would be sufficient to thwart a criminal prosecution, it will not suffice to defeat a civil action such as this in which there is an array of evidence contrary to that single doubt.

      2.    *Magistrate Judge Facciola Gave Insufficient Consideration to Evidence Surrounding the Criminal Action*

The magistrate judge also failed to give sufficient consideration to evidence surrounding the criminal action against Bilhar for its involvement in the bid-rigging conspiracy on contracts 20A and 07.  Bilhar was indicted in Alabama federal court in 2001 along with BHIC and Roy Anderson, and ultimately pleaded guilty in 2002 to participating in the same conspiracy being alleged in this Court.  New HIE, by contrast, was not indicted, nor did it admit any wrongdoing

---

to avoid criminal prosecution is the same evidence that was used to describe the intended defendant in the plaintiffs' complaints.  It would defy logic that the evidence that was sufficient to point to Bilhar when New HIE wanted to avoid criminal prosecution could now be somehow insufficient to notify counsel for both Bilhar and New HIE that Bilhar was the intended defendant in a civil action.

or association with the conduct alleged in the indictment.  This evidence clearly demonstrates that counsel for Bilhar was aware that Bilhar was an admitted participant in the bid-rigging conspiracy, and at the very least *should* have been aware that Bilhar was going to be an intended defendant in any further civil action arising out of the same conduct charged in the criminal case. This evidence also supports a finding that, to the extent that any ambiguities existed in describing the intended defendant in this civil matter, those ambiguities should be resolved in favor of describing the entity that was found complicitous in the criminal prosecution: Bilhar.

       3.    *The Court's Consideration of the Rationale in* Gipson v. Well Fargo Corp.

This Court is also swayed by the sound doctrine set forth in *Gipson v. Wills Fargo Corp.*, 382 F. Supp. 2d 116 (D.D.C. 2005) (Facciola, M.J.), which notes that, where a Rule 15(c) amendment is at issue, a defendant's creation of confusion by choosing similar names of its entities is a factor that weighs significantly on a court's decision to not dismiss a party.  In *Gipson*, Magistrate Judge Facciola did not dismiss the defendant as a party, in no small part because three of the possible defendants had "Wells Fargo" in their names, thereby creating an understandable degree of confusion.[6]  In this case, there is a clear degree of confusion in the names of the parties.  The original Liechtenstein entity known as Harbert International Establishment (HIE) became Bilhar.  Within two months of this name change, a new Liechtenstein entity came into existence known as Harbert International Establishment (New

---

[6] Among the other factors considered by Magistrate Judge Facciola in *Gipson* are that: (1) the plaintiff's intention to sue the same intended defendant throughout the course of the litigation; and (2) the plaintiff came close to naming the intended defendant in her original complaint. *Gipson*, 382 F. Supp. 2d at 120.  As has already been noted in this opinion, the plaintiffs in the present matter have similarly satisfied these two factors.  There is no indication that the intended defendant changed over the course of the case.  Additionally, the relator came within an "Inc." of accurately describing Old HIE/Bilhar.

HIE), taking Bilhar's old name.  Then, another entity named HIE, Inc. came into existence shortly thereafter.[7]

This Court does not presently sit in judgment of Bill Harbert's decision to create a web of entities with similar names.  To the extent that the parties act legally in creating such an intricate web of corporate entities, they are free to do so as the law allows.  This does not mean, however, that, in the context of preventing a Rule 15(c) amendment, these entities can somehow benefit from the confusion that they create by their creative moniker-making.  At the very least, to the extent that the defendant has deliberately created a confusing interconnection of corporate entities, the strength of any ambiguities directly connected to the confusion must be discounted.

Applying this standard to the facts of this case, the Court must therefore discount the strength of the ambiguity created by the equally applicable averment concerning Roy Anderson's presidency of the intended defendant.  Therefore, to the extent that this evidence was equivocal in pointing to both Bilhar and New HIE, the Court will not consider it as strongly in supporting an inference that New HIE was intended.

D.      Conclusion

Taken altogether, the Court finds that, when considered in light of the additional evidence considered by this Court and the standard set forth in *Gipson*, the evidence Magistrate Judge Facciola found to be "equivocal" is more than enough to meet the minimum "should have known" standard set forth under Rule 15(c)(3).  Accordingly, this Court finds that Defendant Bilhar's motion to dismiss is DENIED.

---

[7] Though this is not the limit to the confusion that the names of the entities created and/or owned and/or controlled by Bill Harbert and his associates, this Court will limit the discussion to the confusion caused by the naming of the entities relevant to this immediate dispute.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 7, 2007.