**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                              |   |                                    |
|------------------------------|---|------------------------------------|
| **RICHARD F. MILLER,**       | ) |                                    |
|                              | ) |                                    |
| **Plaintiff,**               | ) |                                    |
|                              | ) |                                    |
| **v.**                       | ) | **Civil Action No. 95-1231 (RCL)** |
|                              | ) |                                    |
| **PHILIPP HOLZMANN, _et al._,** | ) |                                 |
|                              | ) |                                    |
| **Defendants.**              | ) |                                    |

_____

## MEMORANDUM & ORDER

This matter is before the Court upon consideration of the January 23, 2007, Report and Recommendation [506] on defendants Harbert Construction Services (U.K.) Ltd. ("Harbert UK") and Bill Harbert International Construction Inc.'s Motion to Dismiss the Government's Complaint in Intervention [162] due to lack of personal jurisdiction. In his Report and Recommendation, Magistrate Judge Facciola recommended that the defendants' motion be granted as to the claim for relief based on contracts 07 and 29, and denied as to the claim for relief based on contract 20A.

Pursuant to Local Rule 72.3(b), both parties properly filed timely objections to the Report and Recommendation. Harbert UK agreed with the finding that the Court cannot exercise personal jurisdiction over it for claims on contracts 07 and 29. Defendant objected to the Report and Recommendation, however, on the ground that the Court cannot exercise personal jurisdiction over Harbert UK for claims on any contract. Specifically, defendant argued: (1) that its contacts with the forum were inadequate as to justify specific jurisdiction; and (2) that any

1

assertion of personal jurisdiction over it would offend "traditional notions of fair play and substantial justice." (*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).)  Unsurprisingly, both plaintiffs agreed with the finding that the Court could exercise personal jurisdiction over Harbert UK for claims on contract 20A, but objected to the finding that it could not exercise personal jurisdiction over defendant for claims on contracts 07 and 29.  In plaintiffs' view, the notion of conspiracy jurisdiction establishes a basis for an exercise of personal jurisdiction over Harbert UK for the remaining two contracts.

In accordance with 28 U.S.C. 636(b) and Local Rule 72.3, upon the filing of objections to a report and recommendation, this Court shall review the magistrate judge's findings, objections, and evidence *de novo*.  For the reasons stated below, this Court shall ADOPT the recommended findings of fact and law set forth by Magistrate Judge Facciola.  Accordingly, the defendants' Motion [162] shall be GRANTED as to claims for relief based on contracts 07 and 29, and DENIED as to the claim for relief based on contract 20A.

I.     Review of January 8, 2007, Report and Recommendation [506]

In order to resolve the parties' objections to the Report and Recommendation [506], this Court must determine two distinct issues.  First, the Court must determine whether this Court may exercise specific personal jurisdiction over defendant Harbert UK for claims arising out of contract 20A.  Second, this Court must assess whether the scope of the Court's ability to exercise personal jurisdiction over the defendant may extend to claims on contracts 07 and 29.

A.     EXERCISE OF SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT HARBERT UK WAS PROPER AS TO CONTRACT 20A

2

Before a court may hear a case against a defendant who does not consent to the court's jurisdiction, the court must be able to exercise personal jurisdiction over that defendant.  The propriety of a court's exertion of personal jurisdiction over a defendant is determined by making a two-prong inquiry.  First, the court must determine whether sufficient minimum contacts exist between the defendant and the forum.  *Int'l Shoe*, 326 U.S. at 316.  Second, the court must also ensure exercising personal jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice."  *Id.*  The plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

As Magistrate Judge Facciola accurately pointed out in his Report and Recommendation, there are two means of exerting personal jurisdiction over a defendant who has not consented to suit in the forum: (1) general personal jurisdiction; and (2) specific personal jurisdiction.  Under general personal jurisdiction "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984).  By contrast, a court may exercise specific personal jurisdiction over a foreign defendant if the defendant "purposefully directs" its activities toward the forum, and the litigation relates to injuries that "arise out of or relate to" the defendant's activities.  *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros*, 466 U.S. at 414).  A court's ability to exercise either type of personal jurisdiction correlates to the nature and sufficiency of the contacts between the defendant and the forum.[1]

---

[1] As the Supreme Court has shown, the plaintiff must meet the heavy burden of showing that the defendant's contacts with the forum are sufficiently continuous and systematic to warrant an

1.     Defendant's Contacts with the Forum Were Sufficient to Exercise Specific

Personal Jurisdiction

In assessing the sufficiency of a defendant's minimum contacts with the forum to exercise

specific personal jurisdiction over a defendant, the U.S. Supreme Court has held that a level of

foreseeability must exist in the connection between the defendant's conduct and the forum state

"such that [the defendant] should reasonably anticipate being haled into court there." *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  In order to satisfy this

foreseeability test, the Court held that "it is essential in each case that there be some act by which

the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws." *Hanson v. Deckla*, 357 U.S. 235,

253 (1958).  Applying this test, the Court has found that a number of situations satisfy the

"purposeful availment" requirement so as to allow a court to exercise specific personal

jurisdiction over a foreign defendant.  In *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957),

the Court held that specific personal jurisdiction is proper in a case where "the suit was based on

a contract which had substantial connection with [the forum]."  Additionally, the Court held that

a court may exercise specific personal jurisdiction over a foreign defendant where the defendant

has engaged in "continuing relationships and obligations" with citizens of the forum.  *Travelers*

---

exercise of general personal jurisdiction over a foreign defendant.  *See Perkins Benguet Consol.*
*Min. Co.,* 342 U.S. 437 (1952).  Though plaintiffs mentioned in a reply to defendant's objections
to this Report and Recommendation that the Court might be able to exercise general personal
jurisdiction over the defendant, they did not make this argument as a substantive objection to this
Report and Recommendation.  Instead, plaintiffs' objections were limited to the notion of
conspiracy jurisdiction as a means of asserting specific personal jurisdiction.  Accordingly, this
Court will limit the scope of its inquiry to whether specific personal jurisdiction may be
exercised over the defendant.

*Health Ass'n v. Com. Of Va. ex rel. State Corp. Com'n*, 339 U.S. 643, 647 (1950).

Upon a review of the record, there is sufficient evidence to support the finding that Defendant had sufficient minimum contacts with the United States to justify an exercise of specific personal jurisdiction over defendant under the standard set forth in *McGee*.  In *McGee*, the Supreme Court was faced with a situation where the defendant, a Texas-based insurance company, solicited via contract a policyholder in California.  The plaintiff sued defendant in California courts for the policyholder's benefits, but the courts found that they could not exercise personal jurisdiction over the Texas-based defendant.  The U.S. Supreme Court reversed, finding that the defendant's act of soliciting the policyholder in California created a substantial connection between the contract and the forum, such that specific personal jurisdiction could be exercised over the defendant for claims arising out of or relating to the contract causing the connection with the forum.

Similarly in this case, defendant affirmatively acted to create a contact with the United States by submitting a bid to receive USAID money on the contract.  Defendant knowingly engaged in work on the submission of a bid for contract 20A, which was funded entirely by money from the United States.  The fact that defendant knew that the United States' money entirely funded this contract should have alerted defendant to the possibility that the United States would be an interested party in resolving any causes of action arising out of an improper submission on a bid for that contract.  Additionally, the defendant's efforts in actively submitting a bid on this contract constitute a deliberate attempt to solicit money *from* the United States, much like the defendant in *McGee* proactively solicited the California policyholder's business.  *See McGee*, 355 U.S. at 223.  The connection between the defendant and the forum is

strengthened further by the fact that 50% of Harbert UK's business was related to its work on

contract 20A, and that the United States reimbursed Harbert UK for all of its expenses in

preparing the bid on contract 20A.  In light of these facts, this Court finds that the defendant's

contacts with the forum relating to contract 20A were sufficient enough "such that [the

defendant] should reasonably anticipate being haled into court there."  *World-Wide Volkswagen*

*Corp.*, 444 U.S. at 297.

Still, defendant argues that, under the purposeful directing of activities test found in

*Burger King*, personal jurisdiction over a defendant in a cause of action alleging conspiracy to rig

bids can only occur upon a finding that the defendants "*knew about*, and thus *culpably*

*participated in*" an alleged bid-rigging conspiracy.  (D.'s Obj. [517] at 3 (emphasis in original).)

Defendant's argument is misplaced, however, as it attempts to resolve the issue of personal

jurisdiction by resorting to the substantive merits of its involvement in the alleged conspiracy.  A

does not involve a corresponding resolution of the substantive merits of a case against the

defendant.  Resolution of the merits of a case is a function of the jury, not the function of a court

conducting a simple sufficient minimum contacts inquiry.  Rather, a minimum contacts inquiry is

limited to an assessment of whether the defendant, by its actions, should have expected that it

would be sued in this forum.  Based upon the record, this Court finds that Defendant had

sufficient minimum contacts to expect to be haled into court here for a claim arising out of

contract 20A.

2.      The Exercise of Specific Personal Jurisdiction Does Not Violate Due

Process

Once the defendant's minimum contacts with the forum have been established to be

sufficient to warrant an exercise of personal jurisdiction over the defendant, a court must

determine whether or not the exercise of personal jurisdiction comports with due process so as

not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

According to the U.S. Supreme Court, "the determination of the reasonableness of the exercise of

jurisdiction in each case will depend on an evaluation of several factors[, including, *inter alia*,] . .

. . the burden on the defendant, the interests of the forum State, and the plaintiff's interest in

obtaining relief." *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102,

113 (1987).

A consideration of these factors in the present case shows that the assertion of jurisdiction

over Harbert UK is reasonable.  First, the burden on the defendant in this case is not at all severe.

Defendant has been represented in this matter by counsel from the United States, who have

proved from their prodigious filings that they more than ably understand the inner-workings of

the American justice system.  As the magistrate judge pointed out in his Report and

Recommendation, there are only three British citizens/former Harbert UK employees who could

testify in this case.  (Jan. 23, 2007, R&R [506] at 16.)  Of those three, only one—Colin Edward

Towsey—has been found.  There is no indication that Mr. Towsey would be unable to make the

six-hour flight from the U.K. over to appear as a witness in the United States.  Additionally, to

the extent that he is unable to come as a live witness, he has already given a deposition, which

may be admitted as evidence in such an occasion.

Second, as a forum, the United States has a continuing interest in having this dispute

resolved in its court system.[2]  The cause of action arises under United States federal law.  Both

---

[2] These same reasons also underscore notion the plaintiffs' interest in obtaining relief is best
served by resolving the case in United States courts.

aggrieved parties hale from the United States.  Additionally, the amount in controversy stems from payments on fraudulent contracts made with money originally belonging to and funded by the United States government.  Moreover, the United States—and, indeed, this Court—have a particular interest in having this dispute resolved here for the simple reason that this case has lingered in this district for nearly twelve years.

Because the facts of this case establish minimum contacts between the defendant and the forum such that the exercise of personal jurisdiction is consistent with fair play and substantial justice, this Court adopts the magistrate judge's recommendation as to contract 20A, and finds that the defendant's motion to dismiss [162] is DENIED as to the claim for relief based on contract 20A.

B.     THE COURT MAY NOT EXERCISE PERSONAL JURISDICTION OVER DEFENDANT FOR CLAIMS ON CONTRACTS 07 & 29

The next issue is whether this Court may exercise specific personal jurisdiction over the defendant for claims attached to contracts 07 and 29.  The resolution of this issue is governed by the same legal standard used in the previous section to assess whether personal jurisdiction could be exercised over the defendant for claims arising out of contract 20A.  Plaintiffs must establish that the defendant had sufficient minimum contacts with the forum, and that the exercise of personal jurisdiction based upon those contacts does not offend due process.  *See supra* Part I.A.

Based on a review of the record, there is little evidence that Harbert UK had sufficient minimum contacts with the forum as to contracts 07 and 29 to justify an exercise of personal jurisdiction over the defendant.  As Magistrate Judge Facciola stated in his Report and Recommendation, though there was sufficient evidence of defendant's involvement in knowingly

engaging in the bidding process as to contract 20A, there was "no evidence . . . of similar weight as to UK's participation in the bidding process as to contracts 07 and 29." (Jan. 23, 2007, R&R [506] at 17.)   Rather, the only evidence showing a link between defendant and either contract 07 and 29 is that defendant and Harbert International Establishment entered into a service agreement as to contract 07, and that some payments were made pursuant to it. *Id.* There was, however, no evidence of Harbert UK's participation *in any way* as to the preparation or submission of the bid on contract 07.  Additionally, as the magistrate judge pointed out, "there is no information [in the record] as to any UK role as to contract 29." *Id.*  This pittance of evidence linking Harbert UK to the forum does not rise to the level of sufficient minimum contacts such that Harbert UK could have reasonably anticipated being haled into court on the basis of its activities relating to contracts 07 and 29.  Accordingly, the Court finds that the magistrate judge did not err in finding there was insufficient evidence to establish specific personal jurisdiction over defendant as to contracts 07 and 29 on the basis of minimum contacts.[3]

Plaintiffs argue, however, that personal jurisdiction exists over defendant on the basis of a conspiracy theory of jurisdiction, irrespective of a traditional minimum contacts analysis.  Under this approach, plaintiffs argue that Harbert UK's participation in a bid-rigging conspiracy as to contract 20A establishes a sufficient basis of personal jurisdiction over Harbert UK for the remaining two contracts.  In their view, "the fact that at present there is only evidence of Harbert UK's direct involvement in the conspiracy related to the Contract 20A does not shield it from liability for Contracts 29 and 07." (P's Obj. [519] at 10.)  Citing two earlier opinions within this District, plaintiffs argue that personal jurisdiction must be granted as to all members of the

---

[3] Accordingly, this Court will not need to undergo an analysis of whether due process is offended by an exercise of personal jurisdiction over the defendant.

conspiracy on the basis of the conspiracy's link to the forum.  *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992); *Mandelkorn v. Patrick*, 359 F. Supp. 692 (D.D.C. 1973).

As the court in *Dooley* noted, however, courts in this Circuit have been wary to apply the conspiracy theory of jurisdiction.  *Dooley*, 786 F. Supp. at 78.  Rather, courts have sought "to prevent a broad extension of long-arm jurisdiction by the mere allegation of conspiracy . . . [by requiring] particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy."  *Id.* (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983); *First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988)).  Moreover—and perhaps most importantly—the D.C. Circuit has held that a jurisdictional argument "based solely on conclusory statements and allegations that the nonresident defendants were co-conspirators" is, without more, plainly insufficient to show that personal jurisdiction exists over a defendant.  *Hasenfus v. Corporate Air Services*, 700 F.Supp. 58, 62 (D.D.C. 1988).  Indeed, as Magistrate Judge Facciola pointed out, plaintiffs must present "concrete evidence" that supports its allegations of defendant's participation in the alleged conspiracy.  (R&R [506] at 12 (citing *In re Baan*, 245 F. Supp. 2d at 124-26).)  The plaintiff must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations.  *Atlantigas Corp.*, 290 F.Supp.2d at 42.

Examining Magistrate Judge Facciola's Report and Recommendation, the Court is unable to find any evidence beyond plaintiffs' own conclusory statements of Harbert UK's involvement in a conspiracy as to the remaining two contracts.  As Magistrate Judge Facciola pointed out, the only piece of evidence known showing *any* connection between Harbert UK and either contract 07 or contract 29 is "that there was a service agreement between UK and Harbert International

Establishment as to contract 07 and that some payments were made pursuant to it; there is no information as to any UK role as to contract 29." (R&R [506] at 17.) Plaintiffs' objections to the Report and Recommendation do little to supplement the record.

At best, plaintiffs' theory seeks to establish personal jurisdiction over defendant by having this Court focus on the contacts between defendant's co-conspirators and the forum, instead of its own contacts. It is the personal jurisdiction version of "guilt by association." As this Court has previously stated, however, "plaintiff cannot aggregate allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." Robinson v. Ashcroft, 357 F. Supp. 2d 142, 144 (D.D.C. 2004) (Leon, J.) (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34, 42 (D.D.C.2003)). This finding is consistent with the basic tenet of personal jurisdiction that courts must focus on the purpose of the *defendant's* conduct in availing itself to the forum. *See Burger King*, 471 U.S. at 472; *World-wide Volkswagen Corp.*, 444 U.S. at 297; *Hanson*, 357 U.S. at 253.

Without more substantive evidence detailing Harbert UK's involvement in the conspiracy as to the remaining two contracts, this Court cannot properly exercise personal jurisdiction over the defendant for claims arising out of contracts 07 and 29. Accordingly, this Court adopts the magistrate judge's recommendation as to contracts 07 and 29, and finds that the defendant's motion to dismiss [162] is GRANTED as to claims for relief based on contracts 07 and 29.

II.     CONCLUSION

In conclusion, Defendant Harbert UK's Motion [162] shall be GRANTED as to claims for relief based on contracts 07 and 29, and DENIED as to the claim for relief based on contract 20A.

11

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 7, 2007.