UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


**RICHARD F. MILLER,**

    **Plaintiff,**

    **v.**                                                                                    CA No. 95-01231 (RCL/JMF)

**PHILLIP HOLZMANN, et al.,**

    **Defendants.**


**MEMORANDUM OPINION**

Before me is <u>Defendant Roy Anderson's Expedited Motion to Enforce His Settlement Agreement with the United States and Memorandum of Law in Support</u> ("Motion"). For the reasons stated below, the motion will be denied.

There is no genuine issue as to the following material facts.

1.    On November 16, 2004, Carolyn G. Mark, Esq., Senior Trial Counsel with Civil Division of the U.S. Attorney's Office ("Mark"), transmitted to counsel for the defendant E. Roy Anderson ("Anderson") a draft settlement agreement. An accompanying letter indicated that "the agreement is subject to the authorization and approval of the officials of the U.S. Department of Justice and the U.S. Attorney's Office for the District of Columbia." Motion, Exhibit 2.

2.    The draft agreement had signature blocks for counsel for Anderson Charles C. Murphy, Jr. ("Murphy"), Mark, Assistant United States, Attorney Keith V. Morgan ("Morgan") and counsel for relator, Robert Bell ("Bell"). <u>Id.</u>

3. On December 28, 2004, Murphy sent an e-mail to Mark and Morgan indicating that he was authorized to sign that agreement and asked them how they would like to proceed. Id., Exhibit 3.

4. On February 7, 2006, Mark wrote Murphy that the offer to settle the case for $25,000 was acceptable to the Department of Justice. She stated: "Accordingly, we may proceed with finalizing the settlement agreement." Id., Exhibit 4.

5. On February 15, 2006, Murphy wrote Mark to tell her that in light of Anderson's advancing Alzheimer's disease, Murphy was unsure "about his [Anderson's] ability to enter into a settlement of this nature without a court's oversight through the formal appointment of a guardian or whatever." Id., Exhibit 5. He also asked that the government reconsider its insistence that Anderson pay $25,000 as a term of the settlement. Id.

6. On September 22, 2006, Murphy wrote Mark confirming the telephone conversation of September 13, 2006 during "which [Mark] expressed agreement on behalf of the United States to [Murphy's] renewed offer to settle the referenced case for the payment of $25,000." Id., Exhibit 6. Murphy also indicated that he "looked forward to receiving a draft settlement agreement from [her] at [her] convenience." Id.

7. On October 13, 2006, Mark e-mailed Murphy that the relator had declined to enter into the settlement agreement. Id., Exhibit 7.

8. On February 16, 2007, Ellen Schlossberg, Esq., Anderson's counsel, e-mailed Morgan and Bell, indicating her desire to have a conference to "discuss finalizing [the] settlement." She also stated that: "On the other hand, if we are all in agreement, Chuck ["Murphy"] and I can sign the settlement document." Id., Exhibit 10.

9. On February 21, 2007, Murphy wrote Bell: "I do need to get this settlement agreement finalized and executed as soon as possible." <u>Id.</u>, Exhibit 11.

## Analysis

Since the contemplated settlement agreement was never signed, Anderson must establish that an oral contract came into existence on February 7, 2006 when Mark indicated that the $25,000 offer was acceptable to the Department of Justice. But, in that very letter, Mark indicated that the parties could proceed with finalizing their written agreement. Subsequent to that letter, the parties discussed finalizing their agreement in writing. Furthermore, it is clear that after February 7, 2006, the parties were still grappling with how to deal with Anderson's mental state, his inability to sign the agreement, and the nature and scope of the cooperation he would provide. <u>See</u>, <u>e.g.</u>, Motion, Exhibits 9, 10, 11.

In my view, the parties' minds never met on the terms of the settlement because, while an amount of money was agreed to, the parties never agreed on the nature and scope of Anderson's cooperation.

Furthermore, the evidence is indisputable that the parties contemplated that their ultimate agreement would be in writing and signed by at least by Morgan, Mark, and Murphy. Consequently, it is impossible to conclude that they intended to be bound by their oral representations. As the court of appeals has stated:

> To create an enforceable oral contract, both parties must intend to be bound by their oral representations alone. *See New Econ. Capital,* 881 A.2d at 1094; *Jack Baker, Inc.,* 664 A.2d at 1238. An otherwise valid oral agreement does not constitute a contract if "either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist ... until the whole has been reduced to ... written form."

3

> Restatement (Second) Of Contracts § 27 cmt. b (1981); *cf. Osborne v. Howard Univ. Physicians, Inc.,* 904 A.2d 335, 339 (D.C.2006) (relying on Restatement Of Contracts); *Stansel v. Am. Sec. Bank,* 547 A.2d 990, 993 (D.C.1988) (same). The fact that parties contemplate a writing is evidence, therefore, that they do not intend to bind themselves by an oral agreement. *See Jack Baker, Inc.,* 664 A.2d at 1240; *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 547 (D.C.1981). Another factor in determining intent to be bound is the parties' conduct *after* they reach an alleged oral agreement.

Perles v. Kagy, 473 F.3d 1244, 1249 (D.C. Cir. 2007).

Here, the parties unquestionably contemplated a written agreement. Moreover, their behavior after the oral contract supposedly came into existence contradicts any claim that they considered themselves bound before that agreement was executed. To the contrary, Anderson's lawyers tried to get the government to stop insisting on the $25,000 and spoke of finalizing their agreement in writing as some point in the future. They would not have continued to negotiate or spoken of finalizing their agreement in the future if they truly believed that they already had a contract. The motion will therefore be denied.

An Order accompanies this Memorandum Opinion.

        _____/S/_____
        JOHN M. FACCIOLA
March 8, 2007        UNITED STATES MAGISTRATE JUDGE