UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RICHARD F. MILLER, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 95-1231 (RCL) ) |
| PHILIPP HOLZMANN, A.G., *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION & ORDER**

A.   INTRODUCTION

This matter is before the Court upon consideration of the January 17, 2007, Report and Recommendation [508].  At issue in the Report and Recommendation [508] were the motions to dismiss [409, 416] by defendants Harbert International Inc. ("HII"), Bill Harbert International Construction, Inc. ("BHIC"), Harbert Construction Services (U.K.), Ltd. ("Harbert UK"), and Bilhar International Establishment ("Bilhar").  Defendants argued that the Court should dismiss the case against them in light of the government's alleged mishandling of certain documents pertaining to this case.  Magistrate Judge Facciola found that the government's conduct was sanctionable.  He also found, however, that pretrial dismissal was too harsh a sanction in light of the evidence put forth by the defendants.  Accordingly, he recommended that this Court deny the defendants' motions to dismiss, and craft an appropriate sanction for the government's conduct at trial.

1

Both plaintiffs and defendants filed timely objections to the Report and Recommendation. At issue is whether the magistrate judge was correct in recommending that the most ideal point to fashion a sanction for the government's conduct would be after trial testimony occurred. For the forgoing reasons, the Court agrees with the magistrate judge, and therefore finds that the defendants' respective motions [409, 416] to dismiss are DENIED.

B.      THE COURT'S CONSIDERATION OF THE PARTIES' OBJECTIONS

1.      Sanctions are Appropriate

At the time he issued his Report and Recommendation, the magistrate judge noted that there were four sets of documents that were deemed lost and unretrievable, thereby giving rise to the imposition of sanctions. These documents were: the OIG file, the FOIA documents, the Coopers & Lybrand documents, and the FBI file. Of these four sets of "lost" documents, three sets–the OIG file, the FOIA documents, and the Coopers & Lybrand documents–still remain lost. The FBI file was presented to the magistrate judge for an *in camera* inspection recently, after which the magistrate judge issued an Order [632] granting defendants Harbert Corporation and Harbert International Inc.'s Motion [542] to Compel Production of FBI File.[1]

Upon a *de novo* review of the record in this case, the Court finds that the government's mishandling of these documents at issue was certainly sanctionable. As the evidence shows, there is no doubt that the evidence contained within these sets of documents was relevant to the case. Plaintiffs object that sanctions are inappropriate in this case in light of the fact that most, if not all, of the documents that the magistrate judge found to be lost and irretrievable were likely

---

[1] This Order was STAYED, pending the March 9, 2007, pretrial conference. The government still contests the production of the FBI file on the basis of the law enforcement privilege. The FBI file shall be produced to the defendants forthwith.

given to the defendants over the course of discovery. Be that as it may, there is no way of knowing with any degree of certainty as to how many of those documents were provided to the defendants *as a result of the government's mishandling of the documents*. The government's conduct created a situation where we cannot assess exactly what or how much information was lost and what or how much information was important to the defendants' case. It would defy logic at this point to give the government the benefit of the doubt on its word alone that it gave the defendants the functional equivalent of the information contained within those documents in some form or another. The government is in little better position to make such a statement based on information or belief than the defendant is in arguing that every document destroyed was a potential "smoking gun." The documents are lost. The fact is that there is no way of verifying either contention, and this is caused directly by the government's conduct in handling these documents. Accordingly, the Court agrees with the magistrate judge's recommendation, and finds that the government's conduct in handling these documents was sanctionable. There remains the issue of which sanction is most appropriate in this case.

      2.      Propriety of Dismissal as a Sanction in this Matter

Defendants agreed with the magistrate judge's Report and Recommendation insofar as it found that the government's conduct was sanctionable. They part company with the magistrate judge, however, regarding his recommendation that dismissal was not the appropriate sanction for this case, and that an ideal alternative sanction would best be determined after the Court has heard trial testimony. In the defendants' opinion, the most appropriate sanction in this matter would be an outright dismissal.

As the United States Supreme Court has noted, a district court has a great deal of discretion in exercising its inherent powers to fashion an appropriate sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Due to "their very potency, inherent powers must be exercised with restraint." *Id.* Though it is recognized as a sanction that falls within a court's discretion, "outright dismissal of a lawsuit . . . is a particularly severe sanction . . . ." *Id.* at 44-45. Moreover, the Court of Appeals has stated that "dismissal is a 'drastic step, normally to be taken only after unfruitful resort to lesser sanctions.'" *Ripalda v. American Operations Corp.*, 977 F.2d 1464, 1466 (D.C. Cir.1992) (quoting *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir.1977)). It stands to reason that such a draconian sanction as dismissal should be imposed only in the most severe of circumstances, and in general only after a resort to lesser sanctions have proved ineffective.

Even if the Court was inclined to consider dismissal as a sanction in this case, it must be satisfied by clear and convincing evidence that the accused party acted in bad faith. *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). A court generally allows dismissal as a sanction for destruction of documents in two situations: (1) "where the destroyed document is dispositive of the case"; or (2) "where the guilty party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion an effective issue-related sanction." *Id.* at 1479. Upon an examination of the government's conduct, outright dismissal of the case against the defendants as a result of the alleged misconduct by the government is not an appropriate sanction in this case.

Upon an examination of the record, there is insufficient evidence to prove by a clear and convincing standard that the government–either the USAID FOIA office or the Department of

Justice–acted in bad faith in handling the FOIA documents. To the contrary, it is irrefutable that the FOIA documents were destroyed as a matter of authorized record destruction under the National Archives and Administration Act schedule. Additionally, the AID FOIA officer who destroyed the documents indicated that she would not have destroyed the documents had she been aware of the pending litigation. Accordingly, there is no evidence that the FOIA officer was lying, or acted with any malicious or reckless intent in destroying these documents. Moreover, there is no evidence that the Department of Justice acted maliciously or with bad faith.[2]

In addition, on March 6, 2007, the government filed a *Vaughn* Index [619] of FOIA documents that were withheld by the USAID FOIA office in order to support its claim that little was withheld and that there was a minimal negative effect on the defendants caused by the destruction of the FOIA documents. In this filing, the government indicated that thirty (30) documents were previously withheld. Of those thirty documents, three were withheld in their entirety, none of which dealt with the three contracts in question in this case. (*See* [619] at 2-3.) Of the remaining twenty-seven documents, fourteen related to contracts 20A and 07.[3] All documents were produced in their entirety. Accordingly, the Court finds that the magistrate judge's concern that the destruction of the FOIA documents eliminated a potential "smoking gun"

---

[2] It should be noted that the magistrate judge found that the government was unreasonable in failing to prevent the destruction of these documents by issuing a litigation hold on the documents. The Court agrees. It is not unreasonable to presume that lawyers employed by the government, handling documents that are subject to FOIA regulations, at the very least should have been aware that the destruction of documents could occur if no action were taken. The government's failure to act, however, only constitutes negligence, and does not amount to recklessness or deliberate bad faith. Such negligent conduct certainly should be deemed sanctionable, but does not rise to the level of recklessness to warrant an outright dismissal.

[3] There are no documents relating to contract 29 mentioned in the government's *Vaughn* index. (*See* [619].)

is significantly diminished in light of the fact that it appears from the record that no documents relating to the contracts at issue in this case were withheld by the FOIA office.

Also at issue is the Office of Inspector General's ("OIG") investigation file into this matter, and the set of Coopers & Lybrand documents. The OIG file contained notes, analyses, witness interviews, correspondence, evidence logs, and summonses prepared by agents working on the case. Much or all of the contents of this file came into existence after the relator filed his original complaint in 1995. The Coopers & Lybrand documents contained financial records for some of the defendants in this action, and included a review of at least one Harbert-Jones joint venture. As the magistrate judge found, the OIG file was lost inexplicably, though it was supposedly locked in an OIG cabinet. The Coopers & Lybrand documents, though supposedly given to the Antitrust Division of the Department of Justice, have never been produced by the government. The government, in this case the Civil Division of the Department of Justice, has given no explanation for the government's failure to produce these Coopers & Lybrand documents.

Though the actual contents and information contained within these files will never fully be known, it is obvious that the files contained information relevant to the case. Therefore, the Court finds that the loss of these sets of documents is certainly sanctionable. The extent of the information lost in the files or the impact of the loss on the defendants' case, however, cannot be assessed to any degree of certainty simply because we will never know what is in those files. Moreover, though the files have not been produced, there is insufficient evidence to meet a clear and convincing standard that the government acted with bad faith in handling these documents.

In light of the uncertainty of the evidence, and the understandably apprehensive stance within this Circuit toward allowing dismissal as a sanction, the Court is reluctant to use its inherent powers to dismiss defendants from the present case as a sanction against the government for its handling of the documents at issue. The evidence on record relating to the three sets of lost and irretrievable documents does not rise to the Court of Appeals' standard under *Shepherd*. Though there is evidence that the government acted negligently with regard to its handling of these documents, there is no evidence that the government acted with bad faith. Additionally, there is no definitive way of knowing whether the destroyed documents were dispositive of the case because the actual contents of the files cannot be known. Therefore, the Court finds that Magistrate Judge Facciola was correct when he recommended that dismissal was not the appropriate sanction. The Court must now consider the efficacy of less severe sanctions.[4]

    3.    Discussion of Alternative Sanctions

---

[4] Still, defendants would have the Court impose a sanction as severe as dismissal on the basis of a possibility that a potential "smoking gun" was lost in the destruction of those documents. The standard under *Shepherd*, however, does not support the defendants' request because a mere possibility that a possible "smoking gun" was lost does not amount to clear and convincing evidence that such a "smoking gun" even existed, much less was destroyed. Still, even if the government's handling of the documents *did* amount to clear and convincing evidence of bad faith and misconduct, defendants have not satisfied *Shepherd*'s requirement that the party moving for sanctions must also "articulate a reasoned rejection of lesser sanctions" in favor of dismissal. *Shepherd*, 62 F.3d at 1480. As the evidence demonstrates to the contrary, defendants BHIC, Harbert UK, and Bilhar concede in their objections to the magistrate judge's Report and Recommendation, Magistrate Judge Facciola was correct in asserting that other less severe alternatives to dismissal exist. (Defs.' Obj. [523] at 3.) Though defendant HII offers no such concession, it contends that all lesser alternatives are futile or ineffective to cure the prejudice due to the fact that the magistrate judge did not hold a pretrial hearing to consider the feasibility of alternative sanctions to dismissal. As noted below, however, this Court remains unconvinced that a less severe sanction than pretrial dismissal would be unworkable. Therefore, the Court finds that defendants have not established that pretrial dismissal is the most appropriate sanction for this Court to impose on the government.

In fashioning an appropriate remedy, the magistrate judge recommended that the efficacy of a particular remedy short of dismissal could only be determined after the Court has heard trial testimony. In the magistrate judge's view, the "best possible record" for determining the extent of the impact the government's handling of the documents had on the defendants is the record at trial. (Jan. 17, 2007, Rep. and Reco. [508] at 14.) Defendants objected to this recommendation, arguing that a post-testimony assessment of an appropriate sanction: (1) is unsupported by legal precedent; and (2) would be unworkable and prejudicial. To the extent that the Court finds that dismissal is not appropriate, the defendants argue that, at the very least, the Court should fashion the pretrial sanction of either the claims on contracts 07 and 29.[5]

At the outset, defendant HII's objection that a post-testimony assessment of an appropriate sanction is unsupported by legal precedent is erroneous. As the Court previously noted, a district court is allowed a great deal of discretion in exercising its inherent powers to fashion an appropriate sanction. *See Chambers*, 501 U.S. at 44. Moreover, as the Court of Appeals has pointed out, the decision of when a sanction is best imposed is best left within the discretion of the trial judge. *See McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C. Cir. 1986).[6] Therefore, HII's objection that the Court may not fashion an appropriate post-testimony sanction is OVERRRULED.

---

[5] HII proposes that the Court dismiss these claims outright as a sanction, while defendants BHIC, Harbert UK, and Bilhar propose that the Court preclude the government from asserting the three-year "savings provision" under 31 U.S.C. § 3731(b)(2), which would essentially amount to the same result.

[6] Though this case concerned the trial judge's explicit sanction powers under Rule 11 of the Federal Rules of Civil Procedure, the Court finds that, in light of the discretion given to the Court in fashioning sanctions under its inherent powers, the same standard of discretion for explicit powers should apply to the Court's inherent powers.

Next, defendant HII objects that waiting until after testimony has been heard would be unworkable and prejudicial to it. They argue that such a position would improperly shift the burden to the defendants to show that they were harmed by the loss of documents. This, they argue, would in turn amount to a waste of trial resources, time, and would unduly burden and confuse the jury with issues of discovery abuse. Rather, in HII's view, a pretrial discovery hearing is the ideal manner in which to determine the extent of the harm done to the defendants.

The Court is not convinced. Defendant's contention that a potential "smoking gun" was lost in the destruction of those documents is simply that: a possibility. A pretrial hearing would not uncover any new evidence due to the fact that the evidence at issue is lost. Moreover, a pretrial hearing would only delay trial further, and would accomplish very little, as neither party can demonstrate with any certainty exactly what documents–smoking guns or not–was lost. This case has languished in the Court system for far too long–twelve years–to justify the imposition of an ineffective last-minute hearing. For that same reason, additional discovery would be equally ineffective and would only serve to cause additional unnecessary delays in proceeding with the trial of this case.

Rather, the Court is inclined to agree with Magistrate Judge Facciola's assessment that trial is the ideal point in time to assess just what evidence the government has and does not have against the defendant. It is only after the completion of testimony that the Court will be able to determine the degree to which the defendants were prejudiced, and can fashion the most pointed sanction to offset this prejudice.[7] Accordingly, the Court finds that it will wait until trial to

---

[7] At the completion of the plaintiffs' case, the Court will conduct an initial assessment of the extent of the impact the destruction of documents had on the defendants. If the Court is still unable at that point to determine the level of impact on the defendants, the Court will re-assess

assess the appropriate sanction that is commensurate with the extent of prejudice to the defendants.[8]  To the extent that the defendants have been prejudiced, the Court may then instruct the jury at the completion of the trial.  Therefore, the Court finds that defendants' objections are OVERRULED.

    C.     CONCLUSION

In conclusion, the Court finds that the government's conduct was sanctionable.  The Court has a wide range of discretion to fashion sanctions pursuant to its inherent powers.  In fashioning a sanction, the law governing this Circuit states that dismissal of claims against a defendant is a sanction that must only be used sparingly, and even then, only after alternative, less drastic sanctions prove ineffective.  In light of the proximity of the trial date, the fact that the materials at issue are lost and their contents will never fully be ascertained,  and the fact that, as a result of the lack of definitive information surrounding these documents, a pretrial hearing would be ineffective and would only serve to unnecessarily delay, the Court finds that the most ideal course of action is to adopt the magistrate judge's recommendation that the Court wait until after

---

whether the defendants were prejudiced at the termination of trial testimony.

[8] Defendants' proposal that this Court consider the dismissal of claims on contracts 07 and 29 before the trial is OVERRULED for the same reasons that dismissing all of the claims against the defendants is OVERRULED.  Quite simply, there is insufficient evidence to satisfy a clear and convincing standard that the government either acted in bad faith in handling the documents, or that the missing documents were dispositive of the case.  Moreover, the Court is not inclined to preclude the government from taking advantage of the three-year savings provision under the False Claims Act because it is rendered moot in light of this Court's finding in its Memorandum Opinion & Order [613].  In this opinion, the Court stated that the government's claims relate back to the relator's original complaint.  (*See* Mem. Op. [613] at 11-12.)  The six-year period of limitations is applicable to the government's claims on all three contracts because the Court found they relate back to the relator's claims in his original complaint.  Therefore, the defendants' proposed sanction of precluding the use of the alternate limitations period would not apply.

the trial testimony has been completed before fashioning an appropriate sanction for the government's conduct. Only at this point, after the trial record has been fully developed, will the Court be able to best ascertain the effect the loss of the documents at issue had on the defendants. Accordingly, defendants' motions [409, 416] to dismiss are DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 9, 2007.