## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *ex rel.* **RICHARD F. MILLER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 95-1231 (RCL)** |
| | ) | |
| **BILL HARBERT INTERNATIONAL** | ) | |
| **CONSTRUCTION, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### MEMORANDUM OPINION & ORDER

I.      INTRODUCTION

This matter is before the Court on defendants Harbert International, Inc. ("HII") and

Harbert Corporation's ("Harbert") March 1, 2007, Motion in Limine [559] to preclude the relator

from participating in all phases of trial concerning contracts 07 and 29.  In their Motion,

defendants argue that, pursuant to 31 U.S.C. §§ 3730(c)(2)(D) and (e)(4)(A) of the False Claims

Act ("FCA"), as well as Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court lacks

subject matter jurisdiction over the relator's claims against the defendants arising from contracts

07 and 29.  The relator filed an opposition [675] to the defendants' motion, arguing that subject

matter was proper.

II.     MERITS OF RELATOR'S QUALIFICATION UNDER THE FALSE CLAIMS ACT

The central issue in this case is whether the *qui tam* relator is qualified under 31 U.S.C. §

3730(e)(4)(A) of the FCA to bring a claim under the FCA before this Court.  A relator's

1

qualification to proceed under § 3730(e)(4) is an issue of subject matter jurisdiction.  *United States ex rel. Ervin & Assoc. v. Hamilton Sec. Group*, 332 F. Supp. 2d 1, 4 (D.D.C. 2003) (Oberdorfer, J.) (citing *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1003 (10th Cir. 1996).  Section 3730(e)(4)(A) sets forth a public disclosure restriction to a *qui tam* relator's ability to bring a case.  Under that Section:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.[1]

If the relator cannot satisfy the elements of this provision, he may not proceed with the action as to the claims at issue.

The D.C. Circuit has adopted a three-part test to determine whether the *qui tam* relator is qualified to bring an FCA claim.  First, the Court must determine whether the "allegations or transactions" upon which the suit was based were "publicly disclosed."  *Springfield Terminal Ry. Co.*, 14 F.3d 645, 651 (D.C. Cir. 1994).  Next, the Court must assess whether the relator's claims are "based upon the public disclosure of allegations or transactions."  *Id.* at 653 (citing 31 U.S.C. § 3730(e)(4)(A)).  Finally, if and only if the answers to the first two inquiries are affirmative, the Court must inquire into whether the relator was an "original source" of the information on which the allegations are based.  *Springfield Terminal Ry. Co.*, 14 F.3d at 657 (citing 31 U.S.C. § 3730(e)(4)(B)).  If, after conducting the entire inquiry, the relator is found to be an original

---

[1] 31 U.S.C. § 3730(e)(4)(A).  The provision defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

source, then the relator is deemed qualified to bring the cause of action under the FCA, and may

proceed with the action.

In the present case, the relator disputes only the defendant's contention that the relator is

not an original source for the claims in his complaint.[2]  Therefore, the Court will limit its inquiry

to resolving this issue.[3]

In this Circuit, in order for a *qui tam* relator to be deemed an original source under the

FCA, the relator must "possess direct and independent knowledge of the 'information' underlying

the allegation, rather than direct and independent knowledge of the 'transaction' itself."

*Springfield Terminal Railway Co.*, 14 F.3d at 656.  A relator possesses the requisite knowledge

under the statute if the relator has "direct and independent knowledge of *any* essential element of

---

[2] *See* Relator's Mot. in Opp. [675], at 4 ("Relator is entitled to pursue [claims concerning contracts 07 and 29] as well because, to the extent they were publicly disclosed in the Government's Complaint in Intervention, Relator is an original source for the claims . . . ."). Such a statement amounts to a concession that the allegations were publicly disclosed, thereby obviating the need for this Court to make the first two inquiries under *Springfield Terminal Ry. Co.*

[3] Though the relator also argues that he is entitled to bring claims relating to contracts 07 and 29 against defendant Bill L. Harbert in light of the fact that the government did not intervene against Mr. Harbert, nothing in 31 U.S.C. § 3730(b) obviates the relator's requirement to properly establish subject matter jurisdiction before this Court.  *See* 31 U.S.C. § 3730(e)(4)(A) ("*No court shall have jurisdiction over an action under this section* based upon the public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of the information.").  The Court cannot resolve whether the relator may bring claims on contracts 07 and 29 against Bill L. Harbert until the Court first determines whether the relator may bring claims on contracts 07 and 29 at all.  In light of the fact that nothing precludes the relator from bringing a claim against a defendant that the government does not intervene against, *See* 31 U.S.C. § 3730(c)(1), if the Court finds that the relator is not barred from bringing claims on contracts 07 and 29 at all, then the relator may bring those claims against Bill L. Harbert.

the underlying fraud transaction." *Id.* at 657.[4]  That is, the information known by the relator must be first-hand knowledge that does not depend or rely on public disclosures.  *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690-91 (D.C. Cir. 1997).  A relator demonstrates such independent and direct knowledge if relator can establish that he "played a role in exposing a fraud of which the public was previously unaware." *Id.* at 678.

In the present case, the relator filed an initial complaint under seal in which he alleged the defendants engaged in a conspiracy to rig multiple AID contracts, but sought action on claims arising from one contract (contract 20A).  The government, after further investigating the relator's allegations of a multi-contract fraudulent conspiracy, uncovered alleged fraud as to the remaining two contracts at issue (contracts 07 & 29), and brought those additional claims in its Complaint in Intervention.  After the government filed its complaint with the additional contract claims, the relator amended its complaint to include those claims.  Accordingly, the Court must determine whether the relator sufficiently played a role exposing previously unknown fraud if the information provided in his original complaint leads to the discovery of additional claims that form the basis of later amendments to the complaint.

Defendants argue that the Court should strictly interpret what constitutes an original source.  In their view, the relator is only an original source insofar as he directly provides publicly unknown information for each claim, including claims averred in later amendments to the original complaint.  The defendants cite *Findley* in support of this view.  According to *Findley*, "[i]n order to be 'independent,' the information known by the relator cannot depend or

---

[4] A relator is not required to possess direct and independent knowledge of all vital elements to a fraudulent transaction.  *Id.* at 656-57.

rely on the public disclosures.  Therefore, a person who learns of fraud from a public disclosure can never be an 'original source.'"  *Findley*, 105 F.3d at 690.  Defendants point out that, in light of the fact that the relator only learned of the claims as to contracts 07 and 29 from their public disclosure in the government's Complaint in Intervention, the relator does not have direct and independent knowledge of the information, and can never be an original source as to these claims.  Therefore, though the relator may well be an original source as to claims for contract 20A, the defendants argue that relator cannot be considered an original source as to claims on contracts 07 and 29 because he lacks direct and independent knowledge of information serving as the basis for his allegations and claims as to contracts 07 and 29.[5]

The relator would have this Court interpret "original source" more leniently to include a relator who provides the government with non-public information that is the fundamental basis for the later amendments.  This rationale was adopted by Judge Oberdorfer in *Ervin*, a case involving a *qui tam* relator's amendment after public disclosure.  *See Ervin*, 332 F. Supp. 2d at 9-

---

[5] The defendants rely on the fact that both the relator and the government denied in their answers to HII's interrogatories that the relator was the original source of information regarding the alleged conspiracy to rig bids on contracts 07 and 29.  The defendants also point to the fact that the government's Complaint in Intervention was the first of the plaintiffs' respective complaints to mention the alleged fraud on contracts 07 and 29, and that the relator only averred claims on contracts 07 and 29 after the government's complaint was filed.  This evidence, the defendant contends, demonstrates that the relator did not have firsthand knowledge of the fraud as to contracts 07 and 29, and that the relator obtained that information solely from the publication of the government's Complaint in Intervention.  It should be noted, however, that the government objected to the use of the term "original source" in the interrogatories as calling for a legal conclusion it did not agree with.  Therefore, its denial that the relator was an original source on contracts 07 and 29 does not amount to an admission that the government agreed that "original source" should be interpreted as the defendants would argue it should.  For similar reasons, the relator's interrogatory answers do not amount to a legal conclusion that the relator is not an original source because the relator responded with its own interpretation of original source, notwithstanding the defendants' interpretation of "original source."

10.[6]  In *Ervin*, the relator filed an original complaint alleging fraud in a bid-rigging case, but amended his complaint with new allegations of bid-rigging after a newspaper article detailed more specific instances of bid-rigging by the defendant.  Judge Oberdorfer found that the relator was an "original source" notwithstanding the newspaper article because "[the relator's] original complaint contained essential elements of the allegedly fraudulent transaction–it identified the alleged perpetrator, and the scheme in general terms."  *Id.*  The later addition of new allegations that are related to those allegations set forth in the original complaint, insofar as they are based on publicly disclosed information, is of no moment because the relator provided the "core allegations of fraud that were previously unknown to the public."  *Id.* at 10.  Under this interpretation, though the relator may have relied on a public disclosure in the government's Complaint in Intervention for claims arising out of contracts 07 and 29, he still qualifies as an original source for claims on all three contracts because he set forth in his original complaint the core allegations of a previously unknown fraud, upon which the additional claims were based.

The Court is convinced that the relator's approach espoused in *Ervin* is the correct one. Where a *qui tam* relator adds new claims based on a public disclosure to his amended complaint, that relator is nonetheless an original source under the FCA so long as the relator has averred in his original complaint the essential elements of the previously unknown scheme upon which the new allegations were based, and the alleged participants of that scheme.

---

[6] This rationale was utilized previously by the Ninth Circuit in *United States ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407 (9th Cir. 1993), a case with facts very similar to this.  In *Barajas*, the Ninth Circuit found that the relator was an original source notwithstanding the public disclosure of the new claims in the government's complaint.  In their view, so long as the relator's initial disclosure of non-public information "triggered the . . . investigation that led to" additional allegations in a later complaint, a relator is an original source under the statute.  *Id.* at 411.

As the facts indicate, the relator has met this standard.  When the relator filed his original complaint, he was the first to allege that a conspiracy to rig multiple contracts existed among the defendants.  Though he only set forth claims in his original complaint arising out of contract 20A, the relator indicated that further discovery would uncover evidence that other contracts were similarly fraudulent, thereby giving rise to additional claims on those contracts.  In addition, the relator named in his original complaint all of the defendants still present before this Court.[7] Moreover, this Court recently found that the claims arising out of contracts 07 and 29 were sufficiently related to warrant relation back under Rule 15(c) of the Federal Rules of Civil Procedure.  In total, these facts demonstrate that the relator set forth in his original complaint the essential elements of the fraudulent scheme that was previously unknown to the public.  This necessitates a finding that the relator is an original source, and is not barred by the provisions of 31 U.S.C. § 3730(e)(4)(A).

The Court does not this consider this finding to be at odds with the statutory language set forth in the FCA.  As the Ninth Circuit noted in *Barajas*, the language in the FCA merely requires that the relator be "*an* original source," not *the* original source of the information. *Barajas*, 5 F.3d at 410 (citing 31 U.S.C. § 3730(e)(4)(A)).  In this case, the relator was *the* original source for claims arising out of contract 20A, and *an* original source for claims arising out of the other two contracts because, but for the relator's efforts in uncovering and reporting the fraudulent scheme, the claims arising out of contracts 07 and 29 would not have been available.

Moreover, this Court does not find that this holding today contradicts with the holdings in

---

[7] The relator also named defendants who were previously dismissed from this action for various reasons.

either *Springfield Terminal Ry. Co.* or *Findley*.   At the outset, a key distinction between these cases and the present case can be found in the fact that *Springfield* and *Findley* both involved allegations in the *original* complaint that were allegedly based on a public disclosure.   By contrast, the present case involves challenged allegations in an *amended* complaint after the relator has already set forth previously in his original complaint a foundation of previously unknown and non-public information.   This distinction is important, as the Court of Appeals stated that a relator may only bring an action in cases in which the relator "played a role in exposing a fraud of which the public was previously unaware."   *Findley*, 105 F.3d at 678.   In a case such as this, however, the relator has played exactly such a role in uncovering the later allegations of fraud by detailing the overarching fraudulent scheme–of which the public was not previously aware–in his original complaint.   Notwithstanding the distinction between these cases and the present case, this Court's holding is consistent with and more than ably satisfies the D.C. Circuit's requirement that a *qui tam* relator may proceed only if he has "direct and independent knowledge of *any* essential element of the *underlying* fraud transaction."   *Springfield Terminal Ry. Co.*, 14 F.3d at 656.[8]   Therefore, the Court finds that the cases cited by the defendant do not conflict with the finding of this Court.

This finding also comports with the D.C. Circuit's finding that the False Claims Act reflects Congress' attempt to find "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of

---

[8] Clearly, a relator who establishes that he has direct and independent knowledge of all the essential elements of a fraudulent scheme (i.e., the "underlying fraud transaction") in his original complaint satisfies the D.C. Circuit's minimum requirement that the relator merely needs to have such knowledge of *any* one element of the underlying scheme.

opportunistic plaintiffs who have no significant information to contribute of their own."

*Springfield Terminal Ry. Co.*, 14 F.3d at 649; *Ervin & Associates, Inc.*, 332 F. Supp. 2d at 10.

As the facts indicate, the relator is anything but an opportunistic plaintiff with no information to

contribute.  To the contrary, the relator provided to the government the substance of an allegedly

intricate and far-reaching scheme to defraud the United States on AID contracts in Egypt.  It

would make little sense to penalize the relator by restricting his ability to recover on additional

claims of fraud arising out of the fraudulent scheme uncovered as a result of the relator's own

diligent efforts.

III.    CONCLUSION

Therefore, for the previously stated reasons, the Court finds that the relator is an original

source, and is not barred by the jurisdiction bar under 31 U.S.C. § 3730(e)(4)(A).  As a result,

this Court finds that it has subject matter jurisdiction to hear all of the relator's claims on all three

contracts against each of the defendants, including Bill L. Harbert.[9]   Accordingly, the defendants'

motion [559] is DENIED.


SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 14, 2007.

---

[9] *See supra* note 3.