**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *ex rel.* **RICHARD F. MILLER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 95-1231 (RCL)** |
| | ) | |
| **BILL HARBERT INTERNATIONAL** | ) | |
| **CONSTRUCTION, INC.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the plaintiff's Motion [584] to Stay.  Upon
consideration of the plaintiff's motion [584], the defendant's opposition [659], the applicable
law, and the entire record herein, the Court concludes that the plaintiff's motion will be
GRANTED and the defendant's motion will be DENIED.  The Court's reasoning is set forth
below.

## BACKGROUND

Relator is a whistleblower who uncovered the allegedly fraudulent activity perpetrated by
Harbert International, Inc.' ("HII") and the other defendants in this case.  (Pl. Mot. 1.)  Sometime
after uncovering the allegedly fraudulent activity, the relator filed this action under the *qui tam*
provision of the False Claims Act ("FCA").  (*Id.*)  In response to the relator's *qui tam* action, HII
filed counterclaims for Breach of Fiduciary Duty, Contribution, and Indemnity.  (*Id.* at 2.)  The
relator comes before this Court advocating that counterclaims of HII should be stayed, or in the

alternative, be tried separately from the trial of the *qui tam* action.  (*Id.* at 5.)  HII comes before this Court advocating the opposite position, arguing that the counterclaims are compulsory and considering that "much or all" of the evidence that HII will use to prove its counterclaims will be elicited during the cross-examination portion of the relator's case-in-chief, the counterclaims should be submitted together to the trier of fact.  (Def. Opp'n 12.)

## DISCUSSION

The issue before this Court is whether HII's counterclaims against the Relator should be submitted together to the trier of fact with the Relators FCA claims.[1]  Under Federal Rule of Civil Procedure 42(b), a court may order a separate trial of any type of claim including a counterclaim "in furtherance of convenience," "to avoid prejudice," or "when separate trials will be conducive to expedition and economy."  Beyond the enumerated reasons set forth in Rule 42(b), a court may bifurcate claims or issues for a separate trial "to avoid the possibilities of confusion, to further convenience, to avoid delay and prejudice, and to serve the ends of justice." *Am. Nat'l. Red Cross v. Travelers Indem. Co. of Rhode Island*, 924 F.Supp. 304, 306 (D.D.C. 1996) (citing *Webb v. Hyman*, 861 F.Supp. 1094, 1119 (D.D.C. 1994) (internal citation omitted)). District courts have "broad discretion" to choose whether to bifurcate claims for the purposes of trying them separately, even in scenarios where only one criterion from Rule 42(b) is satisfied. *Red Cross*, 924 F.Supp. at 306 (citing *See Ricciuti v. New York Transit Authority*, 796 F.Supp. 84, 86 (S.D.N.Y. 1992) (citing *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989)).  In a

---

[1] In their Memorandum in Opposition, HII attempts to argue the merits of their counterclaims against the Relator.  (Def. Opp'n Part A.)  Since the relator did not attack the merits of the counterclaims in their motion, the Court will not make any rulings on the merits of HII's counterclaims.

number of FCA cases, courts have utilized bifurcation in an attempt to balance the interest in encouraging potential relators to uncover and expose fraud against the government, while at the same time protecting the defendant's constitutional right to assert compulsory counterclaims. (Def. Opp'n 10-11) (citing *United States ex rel. Mikes v. Straus,* 931 F.Supp. 248 (S.D.N.Y. 1996); *United States ex rel. Stephens v. Prabhu,* 1994 WL 761237 (D.Nev. 1994); *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993)).  Given the complexity of this case, this Court believes the Rule 42(b) standard allowing the Court to bifurcate the trial is satisfied.

### A.    The Court Will Grant The Stay and Bifurcate The Trial Because Failing To Do So May Confuse The Jury.

Allowing HII to present their counterclaims to the jury may confuse the jury in what is already a complex trial.  Of the many reasons the Court may bifurcate a trial, case law interpreting Rule 42(b) has allowed for bifurcation when failing to do so may increase the possibility of confusion.  *See Red Cross,* 924 F.Supp. at 306 (citing *Webb*, 861 F.Supp. at 1119 (citing *O'Dell*, 904 F.2d at 1201)).  Since the first of the five amended complaints was filed with this Court in 1995, twelve years have passed, and the parties have filed over 700 court documents.  Two plaintiffs, the Relator and the Government, have brought varying causes of action against the nine defendants, with each defendant having raised a multitude of defenses.[2] Given the logistics of this *qui tam* action, this Court believes that presenting additional claims to the jury will increase the likelihood of confusion for a jury already acting as a finder of fact in

---

[2]  In many ways, this case is not unlike the matter of Jarndyce v. Jarndyce from Charles Dickens' classic novel, *Bleak House*; a case that, as Dickens describes it "has, in the course of time, become so complicated that no man alive knows what it means."  Charles Dickens, Bleak House 16 (Nicola Bradbury ed., Penguin Books 1996) (1853).

such a complex case.  *See Red Cross,*, 924 F.Supp. at 306 (citing *Webb*, 861 F.Supp. at 1119 (citing *O'Dell*, 904 F.2d at 1201)).

B.     **The Court Will Grant The Stay and Bifurcate The Trial Because Doing So Will Create Judicial Economy.**

Contrary to HII's arguments, granting the stay and bifurcating the trial will increase judicial efficiency.  As Judge Richey found in *Webb*, "[i]f a single issue could be dispositive of the case, and resolution of it might make it unnecessary to try the other issues, separate trial of that issue may be desirable to save to the time of the court and reduce the expenses of the parties."  *Webb*, 861 F.Supp. at 1120 (citing 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (1971)).  In addition, other courts have found that, when it is possible to resolve an issue of a *qui tam* defendant's liability before reaching the *qui tam* defendant's counterclaims, this Court believes it is a prudent course of action to do so.  *See Madden*, 4 F.3d at 831 (citing *United States ex rel. Burch v. Piqua Engineering, Inc.*, 145 F.R.D. 452, 457-458 (S.D.Ohio 1992)).  This Court agrees.

In the present case, two of HII's counterclaims are for indemnification and contribution. (Def. Opp'n 8.)  HII admits that the damages sought under those counterclaims may only be operative in the event the government is unable to recover under its FCA causes of action and is able to receive, as an alternative, under its common law claims.  (*Id.* at 8-9); *see also United States ex rel. Purcell v. MWI Corp.*, 254 F.Supp. 2d 69, 78-79 (D.D.C. 2003) (stating that the United States may not recover equitable damages when there exists a complete and adequate remedy at law.)  Furthermore, HII acknowledges the existence of "the substantial body of case law prohibiting FCA defendants from recovering contribution or indemnity (as against an FCA

relator) for purposes of offsetting their substantive FCA liability."[3]   (Def. Opp'n. 8.)   In light of these facts, the Court believes that a stay and bifurcation of the defendant's counterclaims against the relator would be in the best interests of judicial economy.

### C.   The Court Will Grant The Stay and Bifurcate The Trial Because Failing To Do So May Prejudice Both the Relator And The Government.

Still, HII argues that it would be more efficient to allow HII to present their counterclaims in the same trial.   Any judicial efficiency that might be gained by allowing HII to present their counterclaims with the relator's FCA claims, however, is outweighed by the potential prejudicial effects of HII presenting their claims of contribution and indemnity.   Rule 42(b) expressly allows courts to order separate trials "to avoid prejudice."   There exists a potential for prejudice against the both the relator and the government if these claims are allowed to be heard.   The relator and the government are both plaintiffs in this case, yet the counterclaims of HII are directly solely towards the Relator. (*See* Def. Opp'n 1.)   To force the government to have to put on a case in light of such claims against its co-plaintiff could and likely would have a prejudicial effect.   The Government may be forced to characterize their co-plaintiff in a negative light in its pursuit of its claim against the defendants or fear having its case bask in the tint of the charges against the Relator.[4]   In light of this potential for prejudice against both plaintiffs that would result by combining the defendant's counterclaims with the plaintiffs' claims, this Court sees that a stay

---

[3] In *Madden*, the court stated that if a qui tam defendant was found liable, the counterclaims could be dismissed on the grounds that they would have the effect of providing for indemnification and contribution.  *Id.*

[4] Needless to say, any action taken on the part of the Government to reduce the prejudicial effect the counterclaim against the Relator may have on the Government's case may also increase the potential for confusion of the jury.

and bifurcation of the counterclaims is the best course of action.

      **D.     Granting The Stay and Bifurcating The Trial Will Not Prejudice HII.**

      Finally, HII argues that it would be "unfair" and "indeed a violation of HII's procedural due process rights" to deny HII to the opportunity to recover on this "independent claim for damage." (*Id.* at 8.) Defendant's argument is misplaced. In staying the defendant's counterclaims, this Court is not saying that HII cannot bring their counterclaims against the relator. This Court agrees that there should be some mechanism in place to insure that relators do not engage in wrongful conduct in order to create *qui tam* suits and to discourage relators from concocting frivolous accusations and actions. *See Madden*, 4 F.3d at 831. Rather, this Court believes that the appropriate time and place for such an action, in the present case, is after HII's liability has been determined. As HII concedes in their Motion in Opposition, "a district court *may*, but need not, stay or sever an FCA defendant's compulsory counterclaims pending resolution of plaintiffs' substantive FCA claims." (Def. Opp'n 11.) In light of the aforementioned reasoning, this Court will stay the defendant's counterclaims and will bifurcate the trial so that if found liable, HII may still bring their claims against the Relator.

## CONCLUSION

      In light of the potential confusion of the jury, prejudice to the plaintiffs, and in the interests of judicial economy, the Court finds that defendant HII's counterclaims should be stayed and bifurcated to be addressed upon resolution of the present trial. This Court believes that it would be imprudent to allow HII to muddy the already complex issues of this case with allegations of the Relator's allegedly unclean hands. Defendant has not lost its opportunity to argue its counterclaims against the relator. Rather, it simply may not do so within the context of

the initial trial.  Accordingly, the relator's Motion [584] to Stay and Bifurcate defendant HII's

counterclaims is GRANTED, defendant HII's Motion in Opposition is DENIED and the claims

shall be stayed and bifurcated, to be resolved separately.


SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, on March 14, 2007.



SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 14, 2007.