**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| *ex rel.* **RICHARD F. MILLER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 95-1231 (RCL)** |
| ) | |
| **BILL HARBERT INTERNATIONAL** ) | |
| **CONSTRUCTION, INC.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

Before the Court are a number of evidentiary motions, most of which spawn from the

criminal proceedings that presaged this case.[1]  Upon consideration of the motions, the

memoranda in support and opposition thereto, the applicable law, and the entire record herein,

the Court disposes of the motions as follows:

**EVIDENCE OF OR REFERENCE TO CRIMINAL PROCEEDINGS**

Defendants HII and HC have lodged a Motion [566] to exclude any evidence of or

reference to the prior criminal proceeding related to this matter – a Northern District of Alabama

case in which Roy Anderson was convicted, Bilhar pleaded guilty, and BHIC was indicted but

later dismissed.  With limited exceptions discussed more fully below, this Motion [566] is

GRANTED.  Under the Federal Rules of Evidence, evidence should only be admitted if it is

relevant, meaning it has "any tendency to make the existence of any fact that is of consequence to

---

[1]As to most motions, the non-moving defendants filed notices indicating that they wished
to join in the motion.

the determination of the action more probable or less probable than it would be without the

evidence." Fed. R. Evid. 402, 401.  But, "[a]lthough relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence."  Fed. R. Evid. 403.

Certain components of the criminal trial are of distinct relevance.  First, Roy Anderson's

conviction is of a certain relevance.  Plaintiffs point out that there is an exception to the hearsay

rule for "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty . . .

adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year,

to prove any fact essential to sustain the judgment."  Fed. R. Evid. 803(22).  As the Court has

determined elsewhere, the "fact[s] essential to sustain the judgment" against Anderson, which are

far fewer than what plaintiffs contend, are to be given preclusive effect here, foreclosing

Anderson from contesting his liability as to participation in the conspiracy – though the

conviction does not foreclose him from contesting the extent of his participation in the

conspiracy, his liability for any substantive violations of the FCA, and the issues of causation and

damages on all counts.  *See* Memorandum Opinion & Order [713].

Because the conviction against Anderson will be given preclusive effect, either by jury

instruction or the granting of an appropriate motion, the probative value has been extracted from

his criminal conviction.  All that is left is the purely prejudicial effect of tarring him as a

criminal.  This alone may not counsel exclusion, were it not for the fact that Anderson's jury did

not have to make a finding as to who his co-conspirators were.  Introducing evidence of

Anderson's trial invites the jury to speculate that his co-conspirators must have been the same

parties who are defendants in this case.  In addition, introducing the fact that there was a criminal

trial invites confusing, time-consuming, and ultimately unproductive side litigation explaining

who was and was not a party to that case, what the disposition was, and on and on.

Much the same is true as applies to Bilhar, the company that executed a guilty plea

agreement with the United States.  That agreement has been given broad preclusive effect by the

Court.  *See* Memorandum Opinion & Order [713].  Since the essential facts embraced in Bilhar's

plea have been given applied to this case, there is little of probative value that remains from its

criminal case – with the exception of the plea agreement and the Joint Rule 11 Memorandum that

accompanied it, wherein Bilhar admits to a certain recitation of facts.  Evidence of a guilty plea is

admissible under Rule 803(22) as evidence, but is not conclusive as to the statements made

therein.  *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1992) (Posner, J.); *RSBI Aerospace, Inc.*

*v. Affiliated FM Ins. Co.*, 49 F.3d 399, 403 (8th Cir. 1995).

The guilty plea is probative and helpful to the jury here.  Both documents pose certain

problems insofar as they refer to other parties who are defendants here, such as suggesting that

those other parties must be criminals, having been found guilty or plead guilty themselves.  For

that reasons, the case caption and any other references in these documents to parties to this case,

other than Bilhar, should be redacted.  This is because the plea agreement and Rule 11

Memorandum, which are probative in admitting that Bilhar and "others" engaged in a conspiracy,

do not identify which parties are the "others."  Without guidance, the jury could become

confused and assume that unrelated references in those documents to defendants in this case must

mean that they were the others with whom Bilhar conspired.  But beyond that one potential

pitfall, which can be cured by way of redaction, the recitation of facts admitted to by Bilhar is

highly probative, and, under these conditions, poses relatively little risk of undue prejudice.

A few other specific remnants of the criminal matter are dealt with below. Unless

specifically addressed below, there is to be no evidence of or reference to the criminal matter.

**ANDERSON TRIAL TESTIMONY**

Plaintiffs' Motion [600] to admit testimony from the Anderson trial that was given by

now-unavailable witnesses stands in opposition to defendant's Motion [574] to exclude *all*

testimony from that trial. As stated below, defendants' Motion [574] is GRANTED in part and

DENIED in part, as is plaintiffs' Motion [600].

Plaintiffs seek to admit former testimony from unavailable witnesses, particularly Rainer

Hermann and Giovanni Greselin. Their motion indicates that other former testimony might be

proffered, but does not indicate whose. As to Hermann and Greselin, unavailability is not

contested. But Rule 804(b)(1), under which this evidence is offered as an exception to the

hearsay rule, only allows hearsay in "if the party against whom the testimony is now offered, or,

in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to

develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1).

Anderson himself is, of course, a party to this case. As the Court has noted elsewhere,

there are certain similarities between the criminal case and this one. There is every reason to

believe that Anderson himself had the same motive – and note, the rule requires a "similar"

motive, not identity of motives – to develop testimony in that trial as he would in this. In short,

his motive was to argue his way out of the conspiracy. That said, the evidence is admissible

under 804(b)(1) insofar as it is used against Anderson.

But it is precisely the nature of Anderson's motive in the criminal trial that makes the

evidence inadmissible if offered against other defendants.  Anderson was not a "predecessor in

interest" to any of the other defendants at the time of his trial.  Plaintiffs feebly point to

Anderson's officer positions at certain corporate defendants; but they do not argue he held these

positions when tried, or that he represented the interests of the corporate defendants in any way at

his trial.  While plaintiffs argue that courts have read the "predecessor in interest" requirement

loosely to include anyone with "similar motives," that does not help them here, even if the Court

were willing to stretch this Rule beyond its plain meaning.[2]

Plaintiffs fail to establish that Anderson's motive in developing testimony was even

remotely similar to the motives of the defendants in this case.  Courts have recognized that

different defendants in successive criminal and civil trials based on similar facts often have

different motives in developing testimony; and sometimes those motives are directly at odds.  *See*

*In re Screws Antitrust Litig.*, 526 F.Supp. 1316, 1318-19 (D.Mass. 1981); *In re IBM Peripheral*

*EDP Devices Antitrust Litig.*, 444 F.Supp. 110, 113 (N.D. Cal. 1978).

Anderson's motive at trial was to protect himself, not the corporations who were not

parties to that trial – let alone the companies, like HC and HII, at which he apparently never held

positions.  There may have been points in his trial where his interests aligned with the

companies; for instance, opportunities to argue there was no conspiracy at all.  But for the most

part, Anderson had every motive to not tilt against windmills, and simply to argue that whether or

not there was a conspiracy, *he* was not in it.  It may have been the case that Anderson's best

---

[2]In addition, the cases plaintiffs cite for the expansive reading of "predecessor in interest"
all involved two factors not present here: an almost total identity of interests between the party
present during the testimony and the party against whom it is offered, and a degree of ownership
or control by one party over the other that trends toward the alter ego line.

strategy was to not contest any of the evidence of conspiracy, but simply to exculpate himself by

pointing fingers at other individuals, which would leave the corporate defendants in the lurch.

Finally, plaintiffs completely neglect the presence in this case of another individual, Bill Harbert.

It is quite possible that Anderson's defense was to get himself out of the jackpot by putting

Harbert in, and plaintiffs do not address this point.  This is a classic case of conflicting defenses,

and does not satisfy Rule 804(b)(1).

Plaintiffs argue that this evidence is such a near-miss that it should fall under Rule 807.

But this testimony fails on almost every prong of that Rule.  First, Rule 807 can only apply to a

"statement not specifically covered by Rule 803 or 804."  This Circuit has made clear that this

provision is more residual than catchall, meaning that it is meant to pick up the residue of reliable

and probative hearsay evidence not otherwise admissible, and is not meant to catch all of the

arguably admissible evidence that rightly does not fit within the existing categories.[3]  This

evidence is clearly meant to be channeled through Rule 804(b)(1), and clearly fails.  This is a

strong indication that it is not meant to be admitted via Rule 807.

The residual exception next requires that a statement "hav[e] equivalent circumstantial

guarantees of trustworthiness."  The testimony here does not have equivalent guarantees of

trustworthiness.  Granted, the testimony was taken under oath, is captured in verbatim transcripts,

and was presided over by a federal judge – these are all trappings which suggest trustworthiness.

But for all of the hearsay exceptions, there is always some factor or factors that make up, at least

in part, for the fact that the party against whom the evidence is offered cannot cross-examine the

---

[3]The residual exception "is 'extremely narrow and require[s] testimony to be very important and very reliable.'" *United States v. Washington*, 106 F.3d 983, 1001 (D.C. Cir. 1997) (quoting *United States v. Kim*, 595 F.2d 755, 765 (D.C. Cir. 1979)).

declarant.  Former testimony usually must satisfy the requirements of Rule 804(b)(1) so that the

loss of the ability to cross-examine is made up for by the fact that when the former testimony was

given, the party against whom it is now offered, or someone with very similar interests, had a

chance to develop that testimony.  The defendants against whom this testimony is offered in this

case did not have that opportunity, and no one who did have that opportunity also had the

interests of these defendants at heart.  Nothing in this testimony makes up for the inability to

cross-examine here, and so it cannot be offered against anyone but Anderson.[4]

Since the former testimony can be offered against Anderson but not against anyone else,

this means that it might have to be pruned considerably.  The Court is aware that in a conspiracy

case, cleansing testimony of evidence adverse to other conspirators who are before the Court may

be a difficult task, but it is a necessary product of the collision between the Rules of Evidence

and the litigation plaintiffs have chosen to undertake.  Any use of the former testimony will be

carefully monitored, and need not include any reference to the fact that the testimony was given

in a criminal matter.  It is sufficient to say that the testimony was given in another matter, under

oath, in conditions similar to those at this trial, and that Mr. Anderson's counsel had a chance to

cross-examine the witnesses.

**ROY ANDERSON'S GRAND JURY TESTIMONY**

The logic outlined above dictates the result of HII and HC's Motion [556] to exclude the

---

[4]This is not to say that the former testimony would satisfy the remaining prongs of Rule
807.  *See United States v. Hsia*, 87 F.Supp. 2d 10 (D.D.C. 2000) (Friedman, J.) (summarizing
requirements for admission under Rule 807).  For instance, plaintiffs have not established that the
evidence is more probative than other, admissible evidence or that defendants had sufficient
notice that it was to be used.  The Court is also puzzled as to the failure to even attempt to secure
admissible testimony by way of letters rogatory.

grand jury testimony of Roy Anderson, which is GRANTED in part and DENIED in part.  The

testimony may be used against Anderson as it constitutes his own party admissions.  Plaintiffs

argue that it can be used against other defendants as the admissions of an agent or co-conspirator.

Plaintiffs again misapprehend how those concepts work under Rule 801(d)(2).  Anderson was not

the agent of any of the corporate defendants at the time he testified to the grand jury – or at least,

plaintiffs make no such showing.  Anderson certainly was not a co-conspirator of anyone at the

time.  Rule 801(d)(2)(E) classifies as non-hearsay "a statement by a coconspirator of a party

during the course of and in furtherance of the conspiracy."  Anderson's testimony fails on both

the pendency and furtherance prongs; the conspiracy was over at the time and thus Anderson's

testimony could not further it.

As explained above, the testimony does not qualify as former testimony that could be

used against other parties under 804(b)(1).  At the time Anderson testified, he was not a

predecessor in interest to any other defendant now on trial.  Nor did any of the other defendants

have an opportunity and similar motive to develop his testimony – only Anderson, acting without

counsel, had an opportunity to shape his testimony.  Even more egregiously than the former

testimony offered above, here the only party that had a chance to develop the testimony is the

very party that offers it, the government.  This makes the testimony even less reliable than the

former testimony offered above, which the Court held cannot satisfy the residual Rule 807

exception, because it lacks any indicia of trustworthiness significant enough to make up for the

defendants' inability to cross-examine the declarant.[5]  As with the testimony above, Anderson's

---

[5]As another Judge of this District has observed, "[s]ince grand jury testimony is
specifically covered by another rule, it is questionable whether grand jury testimony is ever
admissible under Rule 807."  *United States v. Hsia*, 87 F.Supp. 2d 10, 18 (D.D.C. 2000)

grand jury testimony can only be used against him and must be cleansed of any other evidence.[6]

## EVIDENCE OF INDICTMENTS *VEL NON*

Plaintiffs' Motion [580] to Exclude Reference to or Evidence of the Absence of a Criminal Indictment Against Any Party is GRANTED.  Plaintiffs argue, correctly, that the absence of a criminal indictment has very little probative value because, *inter alia*, there are many reasons why a prosecutor might forego indicting a party, and the burden of proof in a criminal case, which informs the indictment decision, is much different than the burden of proof in a civil case.  On top of that, any such evidence is likely to be given undue weight by the jury, to lead to confusion, and to lead to time-consuming and distracting litigation of side issues.  For those reasons, evidence of the absence of an indictment would be excluded under Rule 403, if the Court had not already decided to exclude all references to the criminal matter.

Comes now the plaintiff, having argued that evidence of the *absence* of an indictment is irrelevant and far too dangerous to be brought before a jury, and argues that evidence of the *existence* of an indictment is highly probative and harmless in the hands of a jury.  They are wrong, and the Motion in Limine [576] to Exclude Reference to Indictment of Bill Harbert International Construction Inc. ("BHIC") is GRANTED.  As a result of the plea agreement executed by Bilhar International Establishment, a defendant in the same criminal matter, the indictment against BHIC was dismissed.  A criminal "indictment is not evidence of the charges

---

(Friedman, J.)

[6]Defendants also argued that the testimony might be confusing because Anderson's Alzheimer's disease – or some other health condition – made it difficult for him to recollect and recount facts. If the testimony is offered against Anderson, this point can be explored, as it goes to the weight the testimony should be given.

contained in it, any more than a complaint is." *Scholes v. Lehman*, 56 F.3d 750, 762 (7th Cir.

1995) (Posner, J.); *see also In re Worldcom, Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 2214, *26

(S.D.N.Y. Feb. 18, 2005).

Plaintiffs claim that they do not want to admit the indictment, nor prove its contents, but

merely present evidence that there was an indictment.  The historical fact of an indictment is of

no moment to this case; its worth to plaintiffs is that it suggests to the jury in this case that a

grand jury saw evidence indicative of criminal guilt.  It is especially likely to mislead the jury

because it may leave them with the impression that the grand jury was privy to evidence not

available here.  Further, allowing only evidence *of* an indictment is worse than letting in the

indictment itself, since the jury would be left with uncertainty as to the precise charges raised

against defendant.  Allowing the introduction of evidence regarding the indictment, or the

indictment itself, adds no probative value but invites great prejudice, adds to jury confusion, and

embarks the parties on confusing side litigation to establish the outcome of the criminal matter.

SO ORDERED.

Signed by United States District Judge Royce C. Lamberth, March 16, 2007.