UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* RICHARD F. MILLER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 95-1231 (RCL) |
| BILL HARBERT INTERNATIONAL CONSTRUCTION, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION & ORDER**

The parties are advised to pull out their scorecards, as this Order resolves a slew of evidentiary motions. Upon consideration of each motion, the papers in support and opposition thereto, the applicable law, and the entire record herein, the Court rules as follows:

The Motion [578] to Prevent Adverse Influence from Absence of Bill L. Harbert, the Motion [567] to Prevent Adverse Influence from Absence of Roy Anderson, and plaintiffs' Motion [568] to Preclude Reference to Roy Anderson's Alzheimer's Disease and Bill L. Harbert's Dementia are all GRANTED. In a civil trial a jury normally is free to draw inferences from a party's failure to testify. In this case, however, defendants Roy Anderson and Bill Harbert are unable to attend trial, let alone testify, because of serious and unavoidable health problems. The Court agrees that it is unfair to allow a jury to draw adverse inferences when defendants, through no fault of their own, are unable to attend or testify at trial. Therefore, the Court will instruct the jury that it is not to draw inferences, one way or another, from the absence of these defendants, and will explain that "because of serious health problems, Roy Anderson and Bill L.

Harbert are not able to attend this trial at all, and cannot testify."

There is no need to go further in describing the specific ailments of the defendants; this would not add anything helpful to the Court's instruction, and would only run a risk of undue prejudice to plaintiffs and unnecessary delay and confusion of issues. The prejudice comes because these are health ailments likely to invoke a certain understandable degree of sympathy. Plaintiffs might then feel it necessary to delve deeper into medical histories, so that they could emphasize to the jury that the acts at issue here took place well in the past, when both men were healthier; and then comes the delay and confusion. Plaintiffs' discovery has already been impaired by the unavailability of these men for deposition, and there is no need to heap on that a dose of sympathy unrelated to the issues at hand.

It should be noted, however, that the specific health conditions of these defendants may become relevant as the trial unfolds. To wit, if plaintiffs try to offer Roy Anderson's grand jury testimony against him, and his counsel counters that the testimony is unreliable because Anderson was not well at the time, then Anderson's health – at that time, not now – becomes fair game. The same is true for Bill L. Harbert's deposition before the Armed Services Board of Contract Appeals. If plaintiffs move in limine to offer the testimony and the Court grants the motion, Harbert's counsel might attack the weight to be given the evidence for the same reasons. Those issues, however, must be addressed with competent evidence, not by merely implying that a defendant is sick now and may have been then.

The Motion [571] to prohibit the use of such vague, general groupings as "Harbert Defendants" or "Harbert" is GRANTED. Inexact references to those defendants who have some variation on the "Harbert" name is destined to confuse the Court, the jury, and the parties, and

will lead to a confusing and misleading record. Plaintiffs shall call defendants by their actual names, or adopt a consistent convention of shorter names.

The Motion [564] by HII and HC to exclude evidence of the bid and estimate of George A. Fuller Co. on Contract 20A is DENIED. Defendants' attack on this evidence goes to the weight it should receive, and to issues of conditional relevance, all of which are to be determined at trial.

The same is true of the Motion [589] by HII and HC to exclude any argument that Contract 7 was rigged. Defendants can address what they perceive to be shortcomings in plaintiffs' case at trial, and have not established that Contract 7 should be taken off the table as a matter of law. Their Motion [589] is DENIED.

Also DENIED is the Motion [569] by HII and HC to exclude any evidence of the financial condition or wealth of defendants. The Court is hard pressed to imagine how such evidence could be relevant, or how any relevance could help but be substantially outweighed by the undue prejudice and confusion likely to ensue from a discussion of defendants' wealth. For instance, it would be inappropriate for plaintiffs to open their case with such a discussion, apropos of nothing. But the Court cannot issue a blanket exclusion of evidence that could prove relevant as this trial, projected to last six weeks, unfurls itself. The Motion is DENIED.

Also DENIED is the joint HII-HC Motion [575] to exclude use of the term "bid rigger" as somehow constituting a pejorative, "erroneous and inflammatory label." This is a case about bid rigging. In a case of theft, the Court would not ban the word "thief," a title generally not held in high regard. These defendants do not identify any real way in which "bid rigger" or "bid rigging" are unduly prejudicial phrases. They assert that "'Bid-rigging' is the common term used for

certain violations of Section 1 of the Sherman Act." The Court would be astounded if any juror in this trial were to hear the phrase "bid rigger," emit a shudder of horror, and whisper to her neighbor "they're talking about *the* Sherman Act." "Bid rigging" is simply a common term used to describe the exact kind of conduct described in this case. This is not an instance where one party seeks to incite by replacing a term necessary to the case – such as "thief" in a theft case or "drug dealer" in a narcotics trafficking case – with a word that goes beyond the descriptive into the purely pejorative and insulting – such as "hoodlum" or "thug."

Moreover, the plaintiffs have to call the conduct at issue *something*. Defendants do not identify what the parties and the Court are supposed to call the kind of scheme alleged other than what it is: bid rigging. Webster's defines "rig," in the verb form used here, as meaning "swindle," "to manipulate or control usually by deceptive or dishonest means," or "to fix in advance for a desired result." Webster's Ninth New Collegiate Dictionary (1990). Roget's lists its synonyms as "arrange outcome," "doctor," "engineer," "fake," "falsify," "fiddle with," "fix," "manipulate," "tamper with," and "trump up." Roget's New Millenium Thesaurus (2006). "Rig" seems much more innocuous than any of those alternatives. If the parties cannot use plain terms to describe what is at issue here, it will add considerable confusion and delay to the course of the trial.

Finally, the Motion [573] to exclude evidence of defendants' costs and profits on the three contracts at issue is DENIED. The relevance of this evidence is largely conditional, and the Court cannot exclude evidence on a blanket basis without knowing the context in which it will be offered. For instance, it is likely the evidence may probative in establishing the conspiracy and how alleged payments to co-conspirators were accounted for in billing. This is only one of many

potential, permissible uses for which this evidence could offered.

SO ORDERED.

Signed by United States District Judge Royce C. Lamberth, March 16, 2007.