UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* RICHARD F. MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>BILL HARBERT INTERNATIONAL<br>CONSTRUCTION, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 95-1231 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION & ORDER**

I.  INTRODUCTION

This matter is before the Court on defendants Harbert Construction Services (U.K.), Ltd. ("Harbert UK"), and Bill Harbert International Construction, Inc.'s ("BHIC") March 1, 2007, Motion in Limine [582] to preclude plaintiffs from arguing or suggesting to the jury that defendant Roy Anderson's knowledge of alleged bid-rigging may be imputed to BHIC or Harbert UK.  Also before the Court is defendants Bilhar, Harbert Construction Services (U.K.), Ltd. ("Harbert UK"), and Bill Harbert International Construction, Inc.'s ("BHIC") March 1, 2007 motion [591] to exclude evidence relating to invoices from Holzmann Technischer Service GmbH ("HSG") to Harbert UK.

II.  DISCUSSION

    1.  Motion [582]

Defendants argue that the knowledge of defendant Roy Anderson as to any alleged bid-

rigging should not be imputed to BHIC or Harbert UK. As this Court previously noted, under general principles of agency law, knowledge by a corporation's officers or agents is generally attributable to the corporation itself. *BCCI Holdings (Luxembourg), S.A. v. Clifford*, 964 F. Supp. 468, 478 (D.D.C. 1997). This knowledge is attributable to the corporation regardless of whether the corporate officer actually discloses the information to the corporation. *Id.* (citing Fletcher Cyc. Corp. § 790, at 15-16). This principle is based upon the fact that a corporate officer owes a fiduciary duty of loyalty to the corporation that requires the corporate officer to communicate the officer's knowledge to the corporation. *Id.* (citing Fletcher Cyc. Corp. § 819, at 116). In order for an agent's acts to bind its principal, the agent must have acted with either actual or apparent authority. Therefore, in the context of an agent's knowledge, an agent's knowledge is imputed to its principal–in this case, the corporation–if the agent was acting with either actual or apparent authority with such knowledge.

In this Circuit, actual authority is found if the plaintiff can establish: "(1) that the principal acknowledged that the agent would act for him or her; (2) that the agent accepted the undertaking; and (3) that the principal exercised control over the agent's actions." *Samra v. Shaheen Bus. & Inv. Group, Inc.*, 355 F. Supp. 2d 483, 503 (D.D.C. 2005). By contrast, apparent authority exists where the agent acts in such a way that a third party reasonably believes that the agent is acting on behalf of the principal, either because the principal has cloaked the agent with an air of authority, or the principal should realize that his conduct is likely to create the belief that the agent has authority. *See Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 266 (D.C. Cir. 1998).

In either case, whether an actual or apparent agency relationship exists is a matter of fact to be determined by the jury. The burden is on the plaintiffs to establish the existence of this

relationship. To the extent that the plaintiffs properly establish by a preponderance of the evidence that either of the agency relationships–either actual or apparent–existed between Roy Anderson and the defendants, then his knowledge is attributable to those defendants under agency law. If not, then defendant Anderson's knowledge cannot be imputed to the defendants. Accordingly, the Court finds that the defendants' motion to preclude imputation of defendant Anderson's knowledge to defendants is DENIED, pending plaintiffs' establishment of the existence of either actual or apparent authority between defendant Anderson and the defendants.

    2.     Motion [591]

In their motion [591], the defendants contend that evidence of the invoices is not relevant to causes of action advanced by plaintiffs. Moreover, defendants argue that, even if the evidence were relevant, the prejudicial effect of the evidence outweighs any probative value under a Rule 403 analysis. *See* Fed. R. Evid. 403. Plaintiffs argue in their opposition [686] brief that the evidence is relevant and not prejudicial to the defendant. For the foregoing reasons, the Court finds that the defendants' motion is DENIED.

The first issue this Court must determine is whether evidence of the invoices between HSG and Harbert UK is relevant. Under Rule 401 of the Federal Rules of Evidence, the burden of establishing relevance is not a heavy one. Rather, relevant evidence is evidence "having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Defendants argue that the evidence is not relevant because these HSG invoices have nothing to do with the three contracts at issue. The evidence demonstrates, the defendants argue, that the invoices were not paid out by the Harbert-Jones Joint Venture, but rather by the Harbert

UK, which was reimbursed by Bilhar pursuant to a services agreement between the entities. Plaintiffs claim, by contrast, that the evidence is relevant because they allege that the invoices at issue were created to cover up the transfer of Bill Harbert's (an alleged co-conspirator) share of bid-rigging payoffs to European co-conspirators.  Therefore, the plaintiffs argue that the invoices tend to make the existence of bid-rigging payoffs by the Harbert entities more probable than it would be without this evidence.

The Court agrees with the plaintiffs.  The evidence is relevant because it goes to establish the existence of an alleged cover-up of payoffs on contract 20A.  This evidence also goes to establish a tenable link between Bill Harbert and the alleged bid-rigging on contract 20A. Moreover, the evidence is relevant as circumstantial evidence of proving that an overarching conspiracy between the defendants more than likely existed.

Still, under Rule 403, relevant evidence may be excluded if the probative value of the evidence is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Defendants contend that introduction of evidence of the invoices would be highly prejudicial and would confuse the issues, mislead the jury, and waste the Court's time. The Court disagrees.

Introduction of this evidence would not unduly prejudice the defendants.  Plaintiffs' prior contentions that the invoices at issue are "phony" or "fraudulent" does not establish forward-looking prejudice at trial.  The propriety of the invoices–to the extent that they are fraudulent–will be assessed by the jury at trial based upon the introduction of additional evidence by the plaintiffs in support of that contention.  Moreover, defendants are free to elicit on cross-examination and in their own case that the invoices themselves were legitimate.  Additionally,

notwithstanding defendants' argument that the complex nature of this case and the addition of invoices on additional construction jobs may create issue confusion or misleading of the jury, there is no justification for excluding this evidence on that basis.  First, excluding evidence merely upon the basis of the complexity of this case would pave the way for exclusion of all evidence in this matter, as it is certainly a complex case.  Second, any tenuousness in the link between the invoices on other construction jobs and the construction jobs at issue can be resolved by the jury upon consideration of the evidence.  Put simply, the strength or weakness of the link between the invoices and the alleged conspiracy goes to the weight of the evidence, not its admissibility.

      Accordingly, the Court finds that the evidence is both relevant under Rule 401, and should not be excluded under Rule 403; the evidence is admissible.  Therefore, the Court DENIES defendants' motion [591].

      SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 20, 2007.