**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA,** ) | |
| *ex rel.* **RICHARD F. MILLER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 95-1231 (RCL)** |
| ) | |
| **BILL HARBERT INTERNATIONAL** ) | |
| **CONSTRUCTION, INC.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM OPINION**

This matter comes before the Court for ruling after a jury trial.  The jury found single damages in the amount of $34,346,029.22 and 111 false claims, arising out of False Claims Act ("FCA") violations on three contracts: 20A, 07 and 29.  Of this single damages amount, the jury apportioned damages for each contract in the following manner: Contract 20A: $29,920,000.00; Contract 29: $3,400,000.00; Contract 07: $1,026,029.22.

Plaintiffs filed a motion [863] with this Court seeking entry of judgment against all of the defendants: Bill Harbert International Construction, Inc. ("BHIC"), Harbert Corporation ("HC"), Harbert International, Inc. ("HII"), Bilhar International Establishment ("Bilhar") f/k/a Harbert International Establishment ("HIE"), Harbert Construction Services (U.K.), Ltd. ("Harbert UK), and E. Roy Anderson ("Anderson").  In this motion, the plaintiffs posit that the compensatory damages amount should be trebled, pursuant to the FCA.  *See* 31 U.S.C. § 3729(a).  Additionally,

plaintiffs requested this Court impose statutory civil penalties of $10,000 per false claim.[1]

In response, defendants raise a number of issues.  First, defendant Harbert UK argues that it is not liable for any damages arising out of contracts 07 and 29 because claims under those contracts against Harbert UK were dismissed by this Court due to lack of personal jurisdiction. Second, each of the defendants contend that plaintiffs failed to properly offset amounts received by the Government from the other settling defendants in this case.  Third, defendants HII and HC argue that the settlement amounts to be offset by the Court should include those amounts from the settlements by defendants Holzmann A.G. ("Holzmann") and J.A. Jones ("Jones").  Fourth, defendant Anderson argues that, once credited, the settlement amounts completely offset the damages owed by defendant Anderson, and that he is therefore relieved of his obligation to pay any damages.[2]  Finally, each of the defendants asserts that a $10,000 civil penalty for each false claim is excessive.  Rather, the defendants assert that the Court need only impose a $5000 penalty for each claim.

Plaintiffs have conceded to the first two arguments raised by defendants, recognizing that

---

[1] The United States also sought judgment as to claims of unjust enrichment and payment by mistake.  These equitable claims were dismissed, however, by the Court in its Memorandum Opinion & Order [878].  Accordingly, the Court need not address those issues in this Memorandum Opinion.

[2] Defendant Anderson also makes what is, in essence, a preliminary motion for remittitur on the grounds that the damage amount against him is excessive.  Defendant Anderson concedes that such an argument may not be formally brought before this Court enters judgment in this case, but suggests that this Court might be able to more expeditiously dispose of this matter by ordering a pre-judgment remittitur based on his arguments.  Rule 59 of the Federal Rules of Civil Procedure states, however, that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days *after entry of the judgment*."  Fed. R. Civ. P. 59(e) (emphasis added).  Accordingly, as the judgment has not yet been entered in this case, defendant Anderson's argument for remittitur is premature.  Therefore, the Court will not consider his contention that the jury verdict against him is excessive.

this Court has personal jurisdiction over Harbert UK solely for claims arising out of contract 20A,[3] and acknowledging that the Court should deduct from the trebled amount of damages any compensatory payments previously received by the Government from settling co-defendants in this case.  Accordingly, the Court need only address the remaining three arguments relating to the offset of settlement payments as they relate to defendant Anderson's damages obligation, and the amount of civil penalties imposed by this Court.  The Court will address each of these arguments in turn.

A.      Analysis of Amount of Compensatory Payments "Previously Received"

All of the defendants and plaintiffs are in agreement that the total amount of money "previously received" by the government from the other settling defendants in this case amounts to a minimum of $13.7 million.  This total consists of a $3.2 million payment from the Bilfinger & Berger settlement, a $500,000 payment from the AICI settlement, and a $10 million payment from the ABB SUSA settlement.  Still, defendants HII and HC argue that the payment amounts arising from the settlements with defendants Holzmann and Jones must be added to this amount.

Though the defendants are correct that any settlement amount received from these two companies must be deducted from the overall amount of compensatory damages levied against the non-settling defendants, the offset is limited to those payments "previously received by the government . . . ."  *United States v. Bornstein*, 423 U.S. 303, 316-17 (1976).  To date, though the United States has entered into settlement agreements with Holzmann and Jones, it has not received any monetary payment from these settlement agreements, due in large part to the fact

---

[3] Accordingly, Harbert UK is jointly and severally liable only for those amounts of compensatory damages and civil penalties arising out of contract 20A.

that the receipt of these payments is contingent upon the resolution of the defendants' respective bankruptcy proceedings outside of this Court.  Accordingly, no amount relating to either of these settlements may yet be deducted from the overall trebled compensatory damage total.

This Court notes, however, that any payment received by the plaintiffs from either the Jones or Holzmann settlement prior to the collection of the full amount of the judgment in this case shall be subtracted from the full trebled amount that plaintiffs may collect under the judgment.  Along those lines, any payment by the plaintiffs from either the Jones or Holzmann settlement received after the plaintiffs have collected the entire judgment must be paid by the plaintiffs to the defendants in proportion to the amount of the full judgment paid by each defendant.

      B.      Defendant Anderson Not Entitled to Complete Offset of Settlement Amounts Already Received

Defendant Anderson argues that he is entitled to a complete credit or offset of the settlement amounts that the plaintiffs have already received from those defendants who have previously settled with plaintiffs.  Citing the Supreme Court's decision in *Bornstein*, defendant Anderson points out that subtractions from the government's doubled damages needed to be made for compensatory payments received previously by the government from other settling defendants.  *See also* 31 U.S.C. 3729(a).  In light of this holding, defendant Anderson argues that a non-settling defendant should be entitled to a full credit of the settlement amount against the amount owed by the non-settling defendant.  Under this rationale, defendant Anderson contends that the amount he would be required to pay would be reduced to zero because the amount already recovered by the government from the settling defendants ($13.7 million) completely

4

offsets the trebled verdict amount against defendant Anderson ($139,615.20).  Defendant

Anderson's argument is misplaced.

Pursuant to the False Claims Act ("FCA"), any party who is found to have committed

violations of the FCA "is liable to the United States Government for a civil penalty of not less

than $5,000 and not more than $10,000, plus 3 times the amount of damages which the

Government sustains because of the act of that person."  31 U.S.C. § 3729(a) (2007).  With

respect to damages under the FCA, the U.S. Supreme Court has found that the actual damages

must first be multiplied pursuant to the statute, and then be reduced by any compensatory

payments previously received by the Government from other co-defendants who have settled.

*Bornstein*, 423 U.S. at 316-17.  ("[I]n computing the double damages authorized by the [False

Claims] Act, the Government's actual damages are to be doubled before any subtractions are

made for compensatory payments previously received by the Government from any source.").[4]

Once this number is calculated, the Court must then add the total amount in statutory penalties.

And yet, as the Supreme Court has pointed out, in cases where there is a settlement

between the plaintiff and one defendant, the liability of the remaining non-settling defendants

must be "calculated with reference to the jury's allocation of the non-settling defendant's

responsibility."  *McDermott v. AmCLYDE*, 511 U.S. 202, 204 (1994).  This approach–based on

the jury's determination of each defendant's proportionate share of liability–makes a non-settling

defendant's liability completely untethered to the amount of settlement negotiated by the plaintiff

---

[4] *Bornstein* was decided prior to the increase of the double damages penalty to treble damages under the FCA.  The damage calculation methodology employed in *Bornstein*, however, applies with equal force to actions brought under the newer treble damages provision in the FCA.

with other defendants.  *Id.* at 220.  To that end, "[a] plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss."  *Id.*  Accordingly, other non-settling defendants "are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement . . . ."  *Id.* at 221.

The D.C. Circuit reached a similar conclusion in another case involving the issue of how much of a non-settling defendant's damages liability was a non-settling defendant entitled to have offset by a co-defendant's settlement amount with the plaintiff.  *See Rose v. Associated Anesthesiologists*, 501 F.2d 806 (D.C. Cir. 1974).  In *Rose*, the D.C. Circuit was presented with a medical malpractice action brought by an infant–upon whom the medical malpractice occurred–and the infant's father against three defendants: the operating surgeon, the partnership of anesthesiologists, and the hospital.  *Id.* at 807.  Both the surgeon and anesthesiologists partnership settled with the plaintiffs in the amounts of $95,000 and $175,000, respectively, for a total settlement amount of $270,000.  *Id.*  The case proceeded against the hospital, with the jury awarding total damages in the amount of $294,777.25 (awarding the infant $265,000 and the father $29,777.25).  *Id.*  The district court ultimately found that, under the D.C. Circuit's holding in *Snowden v. D.C. Transit System*, 454 F.2d 1047 (D.C. Cir. 1971), the court was required to offset the entire settlement amount, which resulted in cancelling out the hospital's liability to the father altogether, and diminishing the hospital's liability to the infant to $25,000.  *Id.* at 807-08 & 808 n.4.  On appeal, however, the D.C. Circuit found that the hospital was not entitled to a credit that exceeded its proportionate share of liability.  *Id.* at 809-10.  Credits and offsets of settlement amounts, the Circuit Court held, are subject to "a limitation of amount so as to assure that the defendant held liable in the litigation *does not pay less than his equitable share*."  *Id.* at 810

6

(emphasis added).  To hold otherwise would create a "needless irony that a rule grounded in avoidance of unjust enrichment[–namely, the one compensation rule–]might be applied to accomplish an unjust enrichment."  *Id.*  The D.C. Circuit remanded the case to the district court with instructions to recompute the credit allowed to the hospital against plaintiff's verdict so as to ensure that the credit does not exceed two-thirds of the amount of the jury's verdict, so as to ensure that the hospital was responsible for at least its one-third share of liability.  *Id.* at 811.

From this precedent, it is clear that an offset of damages received by a plaintiff from a settling defendant does not equate to an offset of overall *liability* for a non-settling defendant. Each non-settling defendant must still be held accountable for their proportionate share of wrongdoing.

In the present case, the jury found that defendant Anderson's share of liability amounted to $46,538.40 in single damages arising out of one claim on contract 29.  When trebled, the amount of compensatory damages owed by defendant Anderson, therefore, is $139,615.20. Accordingly, defendant Anderson has no claim to pay less than this proportionate share of the total loss, regardless of the amount offset by the settling defendants.  *See McDermott*, 511 U.S. at 220.  Therefore, the Court finds that defendant Anderson is liable to the plaintiffs for the total trebled damages amount of $139,615.20 for the single false claim on contract 29, plus a single civil penalty in an amount to be determined by this Court.

C.      Proper Civil Penalty in this Case is $10,000

The FCA establishes a mandatory statutory penalty, which may range between $5000 and $10,000 for each false claim.  *See* 31 U.S.C. § 3729(a) (2007) (a party found to have committed violations of the FCA "is liable to the United States Government for a civil penalty of not less

than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person").  The determination of the amount of the statutory civil penalties rests within the discretion of the district court.  *See Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003).  Though there is no defined set of criteria by which to assess the proper amount of civil penalties against the defendant, the Court finds that an approach considering the totality of the circumstances, including such factors as the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct is the most appropriate.[5]

Upon consideration of the totality of the circumstances, including the previously enumerated factors, the Court finds that $10,000 is an appropriate civil penalty amount.  As the evidence showed at trial, the breadth of this conspiracy was intricate, far-reaching and involved a deliberate attempt to rig bids on USAID contracts.[6]  The Frankfurt Club's agreement to rig bids–and its amazing step of documenting this illegal agreement–clearly demonstrates the means by which the defendants flouted the law in this case.  This brazen attitude, combined with the intricate steps taken to cover up this scheme, demonstrates the wide-reaching nature of the conspiracy.  As the evidence showed, this complex scheme involved confusion created by

---

[5] As plaintiffs note in their motion, various other district courts have utilized to one degree or another each of these factors in assessing the proper civil penalty amount.  *See Hays v. Hoffman*, 325 F.3d 982, 994 (8th Cir. 2003) (factoring seriousness of misconduct and harm caused by the misconduct into civil penalty amount calculation); *United States v. Rogan*, 459 F. Supp. 2d 692, 727 (N.D. Ill. 2006) (same); *United States ex rel. Ervin v. Hamilton Sec. Group*, 370 F. Supp. 2d 18, 50 (D.D.C. 2005) (Oberdorfer, J.) (factoring degree of scienter of wrongdoers into civil penalty amount calculation).

[6] Indeed, as the Sixth Circuit has found, the involvement of a defendant in bid-rigging is sufficient to impose the maximum $10,000 civil penalty under the FCA.  *See United States v. Murphy*, 937 F.2d 1032, 1035-36 (6th Cir. 1991), *remanded on other grounds*.

constant name changing of corporate entities.  Moreover, the evidence showed that the scheme employed suspect financial transactions in which illegal profits were shifted and funneled between contracts and companies so as to avoid detection.  Accordingly, in light of the nature of the misconduct, the Court finds that the conduct was deliberate and serious enough to weigh in favor of applying the maximum civil penalty in this case.

The evidence also showed that the defendants engaged in conduct with actual knowledge–far greater than a mere reckless disregard of the wrongdoing found by Judge Oberdorfer in *Ervin*.  Defendant Anderson was present at, and participated in meetings at which the rigging of bids was discussed and agreed upon.  Moreover, defendant Anderson, as managing partner of the Harbert Jones Joint Venture, submitted tenders on the contracts at issue to the government, with the knowledge of the bid-rigging conspiracy.  The evidence also shows that Bill L. Harbert possessed the requisite knowledge of the conspiracy, as he held various ownership and officer positions at the various corporate entities involved in the bid-rigging conspiracy.  Accordingly, with regard to the level of scienter, the Court finds that the defendants' level of scienter weighs in favor of the maximum penalty.

Finally, the Court would be remiss if it did not consider the nature of these penalties as deterrents to future conduct from entities in similar situations to the defendants in this case.  As the plaintiffs note in their motion, the United States, through USAID and other agencies, continues to finance construction and rebuilding projects around the world, notably in Iraq. Imposing the minimum penalty would serve as little deterrent to would-be bid-riggers on future contracts in countries in which the successful completion of these projects–within budget–is vital to the restoration of the country's infrastructure.  Therefore, the Court finds that the maximum

penalty is most appropriate in order to most ably act as a deterrent of future misconduct in similar situations.  Accordingly, for the foregoing reasons, the Court finds that the maximum civil penalty of $10,000 per false claim shall be applied.

        D.       Calculation of Damages and Liability

       With respect to damages under the FCA, the U.S. Supreme Court has found that the actual damages must first be multiplied pursuant to the statute, and then be reduced by any compensatory payments previously received by the Government from other co-defendants who have settled.  *Bornstein*, 423 U.S. at 316-17 ("[I]n computing the double damages authorized by the [False Claims] Act, the Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received by the Government from any source.").[7]  As noted *supra*, the offset of these settlement amounts must be made in proportion to the jury's determination of the defendants' respective levels of liability. *McDermott*, 511 U.S. at 204, 220; *Rose*, 501 F.2d at 809-10.  Therefore, the $13.7 million must be allocated in the manner in which the jury apportioned liability across each of the three contracts.  Of this single damages amount, the jury apportioned damages for each contract in the following manner: Contract 20A: $29,920,000.00; Contract 29: $3,400,000.00; Contract 07: $1,026,029.22.  These amounts result in the following approximate ratio of damages on each contract to the total amount of damages: Contract 20A (87.11% of the total amount); Contract 29 (9.899% of the total amount); Contract 07 (2.987% of the total amount).  Accordingly, the $13.7 million settlement amounts shall be allocated across the three contracts in the following manner of reduction: Contract 20A ($11,934,546 reduction); Contract 29 ($1,356,220 reduction);

_____

[7] *See supra* note 4.

Contract 07 ($409,234 reduction).

The total trebled amount of damages on all three contracts amounts to $103,038,087.66. This equals an amount of $89,760,000 on contract 20A, $10,200,000 on contract 29, and $3,078,087.66 on contract 07.  Factoring the proportionate offset of the previously received settlement amounts, results in a total amount of liability of $89,338,087.66, proportionately divided by contract in the following manner: $77,825,454 total liability on contract 20A, $8,843,780 total liability on contract 29, and $2,668,853.66 total liability on contract 07.

Added to this amount is the total amount of civil penalties.  The jury found that 111 false claims were submitted by the defendants: 33 on contract 20A, 56 on contract 29, and 22 on contract 07.  Accordingly, applying the $10,000 penalty per false claim, a total of $1,110,000 shall be imposed for the total of civil penalties, $330,000 of which relates to contract 20A, $560,000 of which relates to contract 29, and $220,000 of which relates to contract 07.

Accordingly, based on the above calculations, the Court finds that the total liability in this case, including statutory penalties equals $90,438,087.66 ($89,338,087.66 in compensatory damages + $1,100,000 in statutory penalties).  Of this total judgment, the Court finds that defendants BHIC, HII, HC, and Bilhar are jointly and severally liable for the full amount, as the jury found them liable for all claims on all contracts at issue in this case.

Of this total judgment, the Court further finds that defendant Harbert UK is jointly and severally liable with the other defendants for the total amount associated with contract 20A, namely: $77,825,454 in trebled compensatory damages arising out of contract 20A, plus $330,000 in civil penalties, for a total of $78,155,454.

Of the total judgment, defendant E. Roy Anderson is jointly and severally liable with the

11

other defendants for his proportionate share of liability, namely $139,615.20 in trebled

compensatory damages, plus $10,000 in civil penalty for the single false claim on contract 29, for

a total of $149,615.20.

A separate Judgment will issue this date.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, August 10, 2007.