## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**UNITED STATES OF AMERICA,** *ex rel.*   )
**RICHARD F. MILLER,**                    )
                                          )
        **Plaintiffs,**      )
                                          )
        **v.**               )    **Civil Action No. 95-1231 (RCL)**
                                          )
**BILL HARBERT INTERNATIONAL**            )
**CONSTRUCTION, INC., et al.**            )
                                          )
        **Defendants.**      )
_____   )

### MEMORANDUM OPINION

Now before the Court comes relator Richard F. Miller's supplemental motion [980] for attorneys' fees.  Upon consideration of the motion [980], the oppositions, the replies, the entire record herein, and applicable law, the Court will GRANT relator's motion in part for the reasons set forth below.

## I.    BACKGROUND

On May 14, 2007, the jury found defendants[1] liable for damages totaling approximately $34.4 million, which after trebling is $103.2 million.  After subtracting for prior settlements and adding civil penalties, this Court entered final judgment for plaintiffs on August 10, 2007, in the amount of $90,438,087.66.  (*See* docket entry [883].)  The Court also entered judgment in favor

_____

[1]Bill Harbert International Construction, Inc. ("BHIC"), Harbert Construction Services (U.K.), Ltd. ("Harbert U.K."), Harbert Corporation ("HC"), Harber International, Inc. ("HII"), E. Roy Anderson, and Bilhar International Establishment ("Bilhar").

of relator against defendants for reasonable attorneys' fees, costs, and expenses under 31 U.S.C.

§ 3730(d).  (*See id.*)

On September 18, 2007, relator filed his fee petition and bill of costs. (Docket [929],

[930].)  The relator's fee petition sought reasonable fees, costs, and expenses incurred from June

1995 through July 31, 2007.  After considering the relator's fee petitions, the oppositions, and

the replies, the Court awarded relator $7,245,169.07 in reasonable attorneys' fees and

$287,025.52 in reasonable expenses.  In determining the fee award, the Court denied the relator's

vigorous request for an enhancement (Docket [971] at 7) ("Fee Opinion I").  The Court also

made limited reductions based on specific categories of time that were non-compensable (*See*

Fee Opinion I at 51) as well as a 10% across-the-board reductions for vague descriptions of time

entries, a 10% reduction for use of block billing, and a 5% reduction for excessive and redundant

work.  (Rel.'s Mot. 9.)  The Court's ultimate Fee Order awarded the relator approximately 73%

of the requested base fees and approximately 56% of the requested base costs.[2] (Rel.'s Mot. 7.)

The defendants then filed eight different post-trial motions challenging the verdict.  (*See*

Rel.'s Mot. [980] at 2.)  Relator took the lead on opposing four of the eight post-trial motions,

and the government took the lead on opposing the other four post-trial motions.  (*Id*. at 2–3.)  On

June 23, 2008, this Court entered an order denying all eight of defendants' post-trial motions.[3]

(Dkt [965].)  As a result, relator was the prevailing party against defendants Bill Harbert

_____

[2]When taking into account the requested enhancements, relator actually received a far
smaller percentage of his requested fees.  With enhancements, relator actually requested
$19,979,414 in fees.  (BHIC Opp'n [991] at 14.)

[3]Except for the limited extent that Anderson's post-judgment motion sought to amend the
judgment to give him a proportionate credit based on payments the government received from
settling co-defendants.

International Construction, Inc. ("BHIC"), Harbert Corporation ("HC"), Harbert International, Inc.("HII"), Bilhar International Establishment ("Bilhar"), and Harbert U.K.

The relator now files his supplemental motion for attorneys' fees. The relator seeks compensation for the hours spent opposing defendants' post-trial motions, as well as the time spent preparing and submitting the first fee petition to the Court. The relator seeks a total of $478,198.50 in attorneys' fees and $30,194.06 in costs and expenses for the post-trial merits work and $636,537.92 in attorneys' fees and $119,105.84 in costs and expenses for work done in conjunction with obtaining fees in the case. Thus, relator's supplemental fee petition requests a total award of $1,264,036.32.[4]

For the reasons set forth below, the Court has decided to award the relator $303,526.16 in reasonable fees for merits-related work and $18,116.44 in reasonable merits-related costs and expenses. The Court has also decided to award the relator $319,972.04 in reasonable fees for fees-related work and $91,064.10 in reasonable costs and expenses for fees-related work. Therefore, the Court will award the relator a total of $732,678.74 in this supplemental fee petition. (*See infra* Appendices 1–4.)

## II.   <u>ANALYSIS</u>

As this Court has previously held, relator is entitled to attorneys' fees under the False Claims Act. 31 U.S.C. § 3730(d)(1).

---

[4]Relator requests that he be compensated for all hours at his attorneys' 2008 billing rates even though much of the work was done in 2007. When applying the 2007 billing rates to the work done in 2007 and the 2008 billing rates to the work done in 2008, relator's total request for attorneys' fees is actually $1,150.269.65. (*See* Appendices 1–3.)

The initial estimate for attorneys' fees is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."[5]  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  A strong presumption exists that the product of these two variables—the "lodestar figure"—represents a reasonable fee.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

## A.      Reasonable Rate

First, the Court must determine the rate that should apply to WilmerHale's[6] hours.  This Court has already determined that WilmerHale's 2007 rates are reasonable.  (Mem. Op. [971] at 15–23.)  In this supplemental fee petition, however, relator argues that 2008 rates should apply—both to the work that was done in 2007 and to the work that was done in 2008.  Relator argues that he is entitled to be compensated at WilmerHale's 2008 rates for all of their work as a means of approximating the value of historic rates had they been paid when the services were actually rendered.

The Court rejects the relator's request to use 2008 rates for the work performed in 2007.

─────────────────────

[5]Although this idea is simple in theory, it creates the loathsome task of wading through pages of time entries to determine compensation.  For example, this Court produced a 169 page opinion (including appendices) in response to the first fee petition in this case.  *See Miller v. Holzmann*, 575 F. Supp. 2d 2 (D.D.C. 2008).  Now the parties are back again filing massive briefs to debate the intricacies of, among other things, block billing and what constitutes a "clerical task."  This process not only takes up too much of the Court's time but also requires a remarkable amount of time on the part of counsel and a large amount of money on the part of the clients.  As a result, fee litigation like the litigation that has occurred in this case is yet another reason to proclaim that "[t]his is the time to get rid of the billable hour."  *See* Jonathan D. Glater, *Billable Hours Giving Ground at Law Firms*, N.Y. Times, January 30, 2009 at A1 (quoting partner at Cravath, Swaine & Moore).

[6]WilmerHale was responsible for relator's legal work during the time encompassed by the supplemental fee petition.

First, "it is clear that the Supreme Court contemplated a substantial delay when it referred to compensation received 'several years' after the services were rendered as not being equivalent to the same dollar amount as if received 'reasonably promptly' after the legal services were performed." *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)).  In addition, using the 2008 rates for 2007 work would result in a windfall in this case, which even if the Court accepted relator's "time value of money argument," would be impermissible.  *See Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984).  From 2007 to 2008, those WilmerHale attorneys who performed merits-based work on this case saw their rates increase by an average of 19%.  (BHIC Opp'n [991] at 11.)  This is a far sharper increase than inflation or the "time value of money."  As a result, the Court will apply WilmerHale's 2007 rates to the work done in 2007.

As for the work done in 2008, the Court will apply WilmerHale's 2008 rates.  A law firm's market rate is presumptively reasonable. *Laffey v. Northwest Airlines, Inc*. 746 F.2d 4, 22 (D.C. Cir. 1984) (overruled on other grounds).  Moreover, WilmerHale's 2008 rates are within those prevailing in D.C. for lawyers conducting complex, federal-court civil litigation and its rates align with those of its competitors.  (*See* Ex. 1, Bell 2d Supp. Decl. ¶ 23; Ex. 2, Davidson 2d Supp. Decl. ¶ 13; Ex. 3, Braga 2d Supp. Decl. ¶ 4.)  The attorneys who worked on the case also appear to have the level of skill, experience, and reputation that would command those rates on the open market.  (*See* Rel.'s Mot. at 15–16.)  Relator has supported his argument for the new rates with declarations of experts.  (Rel.'s Mot. 15.)  The defendants' speculation that WilmerHale's rates "may be rejected by clients" (Opp'n of Harbert International Inc. [992], *et al*

at 10)[7] is not enough to overcome WilmerHale's evidence and the presumption of reasonableness.

## B.     Reasonable Hours

The Court has already stated the principles that govern the determination of whether hours were reasonably expended in litigation.  (*See* Fee Opinion I at 30–32.)  In brief, a fee petitioner must submit documentation supporting its fee request, and the documentation must be sufficiently detailed to permit the Court to make a determination of whether the claimed hours are justified.  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).  The district court can exercise discretion in reducing the fee award by specific amounts in response to specific objections.  *Donnell v. United States*, 682 F.2d 240, 250 (D.C. Cir. 1982).  However, the Court can also reduce fees "by a reasonable amount without providing an item-by-item accounting."  *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004).

In this case, the second approach is appropriate.  Although the Court undertook an item-by-item accounting in the original fee petition, and then took a further percentage reduction, that analysis resulted in a 169 page opinion.  Although that may have been appropriate with respect to the original petition, in which the relator sought approximately $20,000,000 in legal fees, the Court is now at the "fees-for-fees" stage, where undertaking an item-by-item accounting would result in marginal utility; indeed, "once the district court determines the reasonable hourly rates to be applied, for example, it need not conduct a minute evaluation of each phase or category of counsel's work."  *Cobell v. Norton*, 407 F. Supp. 2d 140, 1466 (D.D.C. 2005) (citing *Lindy Bros.*

---

[7]Hereinafter "HII Opp'n."  The page numbers used by Harbert International in its opposition do not match the docketed page numbers.  In this opinion, the Court has used the docket page numbers.

*Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir. 1976)).  The percentage reduction approach has been endorsed by the D.C. Circuit when the Court recognizes that a large number of entries suffer from one or more deficiencies.  *Role Models America, Inc.*, *v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reducing hours by fixed percentage and multiplying by a reasonable rate); *Copeland v. Marshall,* 641 F.2d 880, 903 (D.C. Cir. 1980) (affirming district court for "simply decreas[ing] the lodestar by a substantial fixed amount").  Indeed, the Supreme Court has cautioned that "a request for attorney's fees should not result in a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Culling through the minutiae of the time records each time a fee petition is submitted in this case would be impossible "lest [the Court] abdicate the remainder of its judicial responsibilities for an indefinite period."[8]  *Cobell v. Norton*, F. Supp. 2d 140, 166 (D.D.C. 2005).  "It is neither practical nor desirable to expect the trial court judge to have reviewed each paper in this massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours."  *Id*. (citing *Copeland*, 641 F.2d at 903).  The Court believes that, with regard to the supplemental fee petition, using percentage reductions is "a fair and expeditious solution to determining the sum total of reasonable fees and expenses that plaintiff incurred." *Cobell*, 407 F. Supp. 2d at 166 (citing *Jones v. Clinton*, 57 F. Supp. 2d 719, 728 n.16 (E.D. Ark. 1999)).

Accordingly, instead of scrutinizing each and every time record to determine the amount

---

[8]This supplemental fee petition is not the last fee petition that the relator will file in this case.  The relator has already indicated that he plans to file a second supplemental fee petition to recover fees associated with preparing the first supplemental fee petition and to recover fees associated with any appeals.  (Rel.'s Mot [980] at 2.)

of hours reasonably expended in the case, the Court will multiply the reasonable rate by the number of hours that the relators attorneys have claimed.  It will then reduce that final "lodestar" amount by the percentage that it feels warranted based on the arguments contained in the parties' briefs, a review of the relevant time records[9], precedent in this Circuit, and the reductions that were made for similar deficiencies in Fee Opinion I.

### C.     Defects in Relator's Time That Warrant Percentage Reductions

#### 1.     Inadequate Records

As noted above, a fee petitioner must provide sufficient support for his claims to "permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  Relator's supplemental fee petition suffers from the same defects that were present in the original fee petition: 1) counsel's time records contain vague and ambiguous entries; and 2) counsel have followed the practice of block billing.  The Court will therefore reduce the total lodestar amount by 10% for each of these two deficiencies.

#### a.     Vague Descriptions

In Fee Opinion I, the Court reduced the total lodestar award by ten percent because of vague descriptions.  (Fee Opinion I at 52–56.)  The time entries in the supplemental petition are "virtually identical to the sorts of descriptions this Court and others have repeatedly deemed inadequate." (Fee Opinion I at 53.)  For example, with regard to the merits work, there are entries from numerous attorneys such as "Research re: posttrial issues." (*See, e.g.*, Bell Supp.

---

[9]When reviewing the time records the Court has reviewed the apparent number of deficiencies, their seriousness, and whether they appear to have been replicated throughout various entries.

Decl., Ex. A-2, at 3, Bell, Robert, 8/7/07.)    Other examples include "Review posttrial motion research memos"; "Work on responses to post-trial motions"; and "Edit sections of post-trial motion."[10] Of course, with such generic descriptions, the Court cannot determine which trial brief was being worked on, let alone whether the research was excessive or duplicative.  Other entries are even more vague.  For example, Robert Bell has entries that state "Telcon Rick Miller re: status" at least six times.  (Bell Supp. Decl. Ex. A-2, 8/7/07, 8/28/07, 9/20/07, 10/8/07, 1/30/08, 8/16/08).

With regard to the fee petition billing entries, vague descriptions are even more troubling because relator's attorneys did not prevail with respect to many of the fee petition issues.  As a result, they are not entitled to recover attorneys' fees with respect to those issues.  However, when the time entries contain vague descriptions such as "Telecons Steve Braga and Steve Davidson re: case status"; "Discuss fee petition issues with Gelfond"; and "Research to compile statistics for fee petition. . ."[11], the Court cannot determine whether those hours were spent on issues upon which the relator prevailed.

Accordingly, the Court agrees with the defendants that the vague entries require an across-the-board reduction.  Consistent with Fee Opinion I, the Court will reduce the lodestar by 10% for the vague descriptions.  (Fee Opinion I at 52–56); *See also In re Olson*, 884 F.2d 1415, 1428–1429 (D.C. Cir. 1989).

---

[10](*See* BHIC Opp'n [991] at 7 (citing to time entries)).  More examples of vague entries are detailed, in the BHIC Opp'n [991] at 7–8 and BII Opp'n [992] at 22.  These examples are more than sufficient to convince the Court that relator's billing records suffer from the same deficiencies as those that were presented in conjunction with the first fee petition.

[11](*See* BHIC Opp'n [991] at 19 (citing to time entries)).

#### b.    Block Billing

This Court reduced the relator's fees by 10% in the original fee petition because of the practice of block billing.  (Fee Opinion I at 58.)  Block billing "make[s] it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discrete activity," leaving the court "to estimate the reduction to be made because of such insufficient documentation."  *In re Olson,* 884 F.2d 1415, 1428–29 (D.C. Cir. 1989).  This Court has previously refused to "undertake the futile task of separating the plaintiff's block entries into their constituent tasks and apportioning a random amount of time to each."  *Cobell*, 407 F. Supp. 2d at 160.  Relator concedes that the supplemental petition suffers from the same block billing defects as the original petition[12]; as a result, there is no reason to belabor the issue: the Court will again reduce the total lodestar figure by 10% to account for the practice of block-billing.  (Fee Order I at 56–58.)

#### c.    Clerical Work

Much like in the original fee petition, relators' supplemental fee petition includes some hours that were spent on clerical tasks.  A prevailing party entitled to reasonable attorneys' fees may not recoup fees for time professionals spend on purely clerical tasks because such tasks "ought to be considered part of normal administrative overhead."  *Michigan v. United States EPA*, 254 F.3d 1087, 1095–96 (D.C. Cir. 2001).  Accordingly, tasks such as the copying and storage of pleadings, updating the qualifications of various attorneys for submission in the fee

---

[12](*See* Rel.'s Mot. [980] at 20.)

petition, and making copies and tabs are not compensable.[13]   The defendants pointed out some instances of clerical work that were included in relator's billing records but did not attempt to point out all instances of clerical work and neither will the Court.   The Court is again convinced that clerical work occupied only a very small portion of the hours billed by attorneys and a slightly larger portion of those billed by paralegals.   Accordingly, consistent with the prior fee opinion, the lodestar will be reduced by five-percent for all paralegals and one-half percent for all attorneys for clerical work.   (Fee Opinion I at 45–47.)

### 2.      Inefficiencies and Improperly Claimed Work

#### a.      Merits-Related Work

Relator claims to be entitled to $478,198.50 in attorneys' fees for merits-based work for the period from August 1, 2007 to July 31, 2008.   (Rel.'s Mot [980] at 18.)   Indeed, the defendants filed eight post-trial motions, and they ultimately did not prevail.   The relator's attorneys took the lead responding to four of those motions.    Therefore, the relator is entitled to a substantial amount of attorneys fees for the post-trial merits work.   The defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).

Nevertheless, WilmerHale's work on post-trial merits issues did result in some excesses. In response to defendants' post-trial motions, WilmerHale produced four briefs totaling approximately 115 pages.   (BHIC Opp'n [991] at 4.)   For the production of those briefs,

---

[13]*See, e.g.*, Bell Supp. Decl., Ex. A-2 [Doc. 980–4], at 11–12, Tillotson, Nancy, 9/10/07, 9/11/07, 9/12/07, 9/18/07, 10/22/07, 11/2/07 (copying and storage of pleadings); Gelfond, Bell Supp. Decl., Ex. B–2, at 5, 12/27/07, (updating attorney qualifications); Caswell, Bell Supp. Dec., Ex. B–2 at 31, 12/26/07, 12/27/07 (copies and tabs).

relator's attorneys billed 989.2 hours, which works out to approximately $4,052.96 in attorneys' fees for each page of the brief that was produced.[14]  Moreover, most of these fees were racked up in one month.  As noted by the defendants, the fact that relators attorneys billed nearly $500,000 in legal bills for approximately one month's work, although not dispositive, weighs toward the conclusion that its merits-based work was excessive.  (*See* BHIC Opp'n [991] at 5–6.)

Indeed, after examining WilmerHale's staffing practices, it becomes apparent how the attorneys racked up such a large figure in a relatively short amount of time.  First, relator's counsel assigned one partner and one associate to each of the four opposition briefs and had six additional associates conduct specific research and drafting tasks as needed.  Relator's counsel also had each of the four oppositions reviewed by each of the four partners assigned to oversee a specific response brief.  (Bell Supp. Decl. [Doc. 980] at ¶ 9.)  This staffing practice appears to be excessive and inefficient.  As the Court stated in Fee Opinion I, the division of labor does not necessarily require that each participant have complete knowledge of each stage in the overall process. (Fee Opinion I at 61, n. 65.)  Relator's counsel, however, had four partners review each response brief, ensuring quadruplication of the fees generated with regard to the most expensive attorneys—the partners.  Even if this practice resulted in briefs in which "the best arguments were being made," as relator contends (Rel.'s Reply [1021] at 20), that does not mean that the hours expended were *reasonable*.  Were this argument to prevail, there would be no limit to the

---

[14]According to relator, this overestimates the price per page (not including expenses) because some of the relator's hours are attributable to commenting on the four opposition briefs authored by the government.  (Rel.'s Reply [1021] at 20–21.)  Regardless, even a price of $2,000 per page is excessive, particularly when examining the circumstances of this case.  *Compare Cobell v. Norton*, 407 F. Supp. 2d 140, 162 (stating that a request that averaged out to $1,615 per page was egregiously excessive).

12

number of lawyers that law firms could use to review briefs in order to ensure that the best possible work product was produced. Instead of endorsing this approach, the Court must cap the attorneys' fees at an amount that it deems reasonable. *See Goos v. National Ass'n of Realtors*, 997 F.2d 1565, 1572 (D.C. Cir. 1993) ("There is a point at which thorough and diligent litigation efforts become overkill.")

Nor are the WilmerHale's staffing practices justified by the fact that they had only two weeks to respond to the post-trial motions. First, having each opposition brief reviewed by four partners instead of one would increase the amount of time necessary to prepare the post-trial briefs, not shorten it. Second, as pointed out by defendants, if relators were really pressed for time it is unclear why they did not seek the defendants' consent to a motion for extension of time. (HII Opp'n [992] at 32.)

Another reason that WilmerHale's fees were so high for the post-trial merits work was because relator's attorneys conducted "advance preparation" work beginning more than three weeks before defendants even filed their post-trial motions. Of course, defendants are correct that they should not be required to pay for "prep" work directed at issues that ultimately went unaddressed. (HII's Opp'n [992] at 30.) And, because of relator's vague entries and block billing, it is impossible for the Court to determine the work that was directed at unaddressed issues.

Because of the astronomical amount billed for the amount of work produced, the attorneys' staffing inefficiencies, and the advance preparation work that may have been directed

at issues that ultimately went unaddressed,[15] the Court feels that a merits-related reduction is

warranted.  Consistent with Fee Opinion I (Fee Opinion I at 69), the Court feels that a five

percent reduction[16] for overstaffing inefficiencies, improperly billed time, and excessive work is

warranted with respect to merits-related work.

### b.        Fees-Related Work

Relator seeks $636,537.92 in fees for the 1,326 hours spent drafting and defending the

Fee Petition.  (Rel.'s Mot. [980] at 21.)  Relator's fee petition was extensive and included a 42

page brief, an attorney declaration from the lead attorney for the relator, a declaration from the

Assistant United States Attorney describing relator's role in the matter, three expert declarations,

and supporting exhibits.  (*See* Rel.'s Mot. [980] at 4.)  However, the Court finds that the relator's

request of over $600,000 just to prepare the fee petition is unreasonable.  *See, e.g. Fabi Constr.*

*Co. v. Sec'y of Labor*, 541 F.3d 407, 413 (D.C. Cir. 2008) (finding that 236.8 hours of attorney

time to prepare the fee application was *per se* unreasonable and reducing award by 50%); *Am.*

*Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 331 (D.C. Cir. 2004) (finding that 118 hours of

attorney time billed to prepare the fee petition was unreasonable and reducing award 50%); *Goos*

*v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1572–73 (D.C. Cir. 1993) (affirming reduction of 50%

---

[15]The Court considered the fact that new attorneys who had previously not worked on the case were assigned to the fee petition.  However, the Court did not feel that an additional reduction was warranted on this basis.  Both partners and associates frequently change firms or leave for public practice, or are assigned to new cases or tasks that take up their time.  (*See* Fee Opinion I at 64–65.)  Absent specific evidence of duplication of effort, the Court will not further reduce the fees on this basis.

[16]The Court has also taken into account the fact that the relator voluntarily excluded approximately 158.7 hours of merits-related work.  (*See* Rel.'s Mot. at 20.)  These voluntary reductions are mitigated by the fact that relator was billing for the time it took to determine the hours that it would voluntarily exclude.  (*See* Rel.'s Mot. at 22.)

for fees incurred while preparing the fee petition because the hours were "grossly excessive");

*Cobell v. Norton*, 407 F. Supp. 2d 140, 163 (D.D.C. 2005) (reducing the 1,137.04 hours spent to

prepare the fee petition by 50% for "excessive, redundant, or otherwise unnecessary" work).   As

a result, the Court believes that a substantial reduction in the fee-related hours is warranted.

Certainly, relator's attorneys are correct that this case required a substantial amount of

time to prepare the fee petition.  This litigation has now been going on for over fourteen years

and has been contested at every step of the way.  Nevertheless, the Court agrees with the

defendants that fee petitions in False Claims Act cases are routine, not novel, and the law

regarding permissible recovery is well-established; 1,326 hours for preparing the fee petition in

the case is *per se* unreasonable.  (*See* HII Opp'n [992] at 13.)

The fact that preparing the fee petition should have been time-consuming—but not

particularly complex—also leads the Court to question why senior attorneys spent a

disproportionate amount of time on the fee-related work.  For example, Robert Bell, a senior

partner billing at a $695 an hour rate, billed 292.6 hours on fee-related work.  Given that fee

petition issues are relatively well-settled, and that Bell billed the second-most time of any lawyer

at the firm with respect to the fee petition,[17] including more than the combined time spent by the

two paralegals, the Court concludes that WilmerHale's use of senior attorneys was

disproportionate and excessive.[18]  The Court can therefore reduce the fee award accordingly.  *See*

---

[17]The attorney who billed the most hours on fee work was a 2000 law school graduate
billing at $470 (in 2007) or $530 (in 2008) an hour.

[18]While it is true that relator can recover, at least in part, for time spent exercising billing
judgment and excising non-compensable hours, it is unclear why a senior partner should be
tasked with that duty.  The Court agrees with defendants (*See* HII Opp'n [992] at 6) that a
private client probably would not pay for a partner charging $695 an hour to perform these tasks.

*Mitchell v. AMTRAK*, 217 F.R.D. 53, 59 (D.D.C. 2003).

Moreover, in contrast to the work done on the post-trial merits related work, relator cannot contend that "fees-for-fees" were mostly incurred because of the defendants' "vigorous opposition." Defendants did, in fact, file four separate oppositions to the original fee petition. (Rel.'s Mot. at 6.) As pointed out by defendants, however, approximately $300,000 in fees were billed in conjunction with the original fee petition before an opposition had even been filed. (HII Opp'n [992] at 13.) In the context of this case, that figure is grossly excessive. The Court is wary of allowing this case to become a cash cow for the relator's attorneys, in which they can run up bills by having senior partners do excessive work knowing that the defendants will eventually have to foot the bill.

Even with respect to the extensive work done on the replies to the fee petition, which the relator claims "were necessitated by the need to defend against numerous and ultimately unsuccessful challenges" (Rel.'s Mot. at 7), the defendants cannot be altogether blamed for filing numerous objections to the fee petition. The original fee petition asked for approximately $20,000,000 in fees; the defendants filed oppositions with which the Court substantially agreed—it reduced the base fees by approximately 25% and denied the relator's request for an enhancement—resulting in an award of approximately $7,532,194.32. The Court found, *inter alia*, that the fee petition "went overboard" (Fee Opinion I at 63), that some of the staffing practices were "troublesome" (Fee Opinion I at 62), and that the request for an enhancement

---

*See Cobell v. Norton*, 407 F. Supp 2d 140, 163 (D.D.C. 2005) (stating that although hours reasonably expended reviewing time records is generally compensable, reducing those hours by 75% because they were grossly excessive). For examples of senior WilmerHale attorneys, including Bell, billing for these tasks, *see* BHIC Opp'n [992] at 16 (citing to the billing records).

should be rejected because WilmerHale's "superstars already bill at superstar rates." (Fee Order I at 81.) In other words, the Court found that many of the defendant's objections were warranted, and they cannot be blamed for filing lengthy oppositions when their oppositions had substantial merit.

The relator's attorneys were also not as successful in their original fee petition as they claim; therefore, their voluntary reduction[19] was not nearly enough to compensate for the amount of time spent on issues on which they did not ultimately prevail. WilmerHale's claim that it spent only 130 hours of attorney time seeking an enhancement in the fee petition (Rel.'s Reply [1021] at 13)—when that issue generated approximately 37 pages of briefing[20]—is dubious. (*See* HII Opp'n [992] at 18–21.) The relator argues that even though the enhancement issue was a large portion of their original fee petition, it required minimal relevant case law, and therefore it took less time than other aspects of the fee petition. (Rel.'s Reply [1021] at 14.) However, because of WilmerHale's acknowledged block billing deficiencies, it is impossible to substantiate relator's claims; relator has only voluntarily eliminated hours that relate "*solely* to issues on which he did not prevail in the fee petition."[21] (Rel.'s Mot. 21, 25) (emphasis added).

---

[19]Relator's attorneys state that they have already voluntarily removed $176,453.08 in requested legal fees. (*See* Rel.'s Mot. 980.)

[20]*See* docket entries [930], [959], and [960]. Including the table of contents and table of authorities, approximately 41.5 pages of the briefs were expended on the enhancement issue.

[21]Nor have the relator's attorneys properly accounted for time spent working on supporting the attorney declarations. For example, relator's counsel have not deducted *any* hours for time working on Robert Bell's original declaration, despite the fact that his declaration was cited 21 times in support of the enhancement issue. (Opp'n HII [992] at 17; Fee Petition I [930] at 35–48.) Relator argues that no reduction should be made because his declaration supported the underlying reasonableness of the billing rates and therefore would have been created anyway. (Rel.'s Reply [1021] at 15.) While relator may have had to create a declaration in some form, it is clear that many portions of Bell's original declaration were specifically

Relator essentially acknowledges this point, stating that the "need for contemporaneous documentation has precluded relator's counsel from. . . address[ing] this Court's requirement." (Rel.'s Mot. 26.)  And, as the Court has already noted, the burden is on the fee petitioner to provide time records that are sufficiently detailed to substantiate its claims to fees.[22]  In the absence of sufficient documentation by the relator, a good approximation of the time spent on a particular issue such as the enhancement issue is the number of pages devoted to arguing that issue.[23]  The number of pages devoted to arguing the enhancement issue was significantly more than 9%[24] of the total fee petition hours.[25]  And because the relator did not prevail with regard to

_____

designed to support an argument for an enhancement.  (*Compare* Rel.'s Mot. [930] 35–48 *with* Bell decl. [930–3].)  Accordingly, a fair accounting of Bell's declaration would subtract a substantial number of attorney hours because the relator did not prevail on the enhancement issue.

[22]For example, relator voluntarily reduced hours for entries that were related *solely* to the enhancement issues.  However, many other entries contain general language such as "meet with Mr. Bell and Ms Gelfond re: every aspect of project" and "research issues for fee replies."  Much of this time was undoubtedly spent on the enhancement issue, but is not reflected because of the general language contained in the billing entries.  (*See* BHIC Opp'n [992] at 20 (citing examples)).

[23]An alternative measure would be to examine the award obtained in comparison to the amount of fees sought, including the multiplier.  For example, in *In re Burlington Northern Inc.*, the Seventh Circuit noted that including multiplier, the attorneys had sought $5.1 million in the fee petition.  832 F.2d 430, 435 (7th Cir. 1987).  However, they were only awarded $2.2 million, which represented 42% of the amount sought.  *Id*.  Therefore, the Court had discretion to reflect the "fees-for-fees" to reflect the limited success.  *Id*.  Using that measure, the relator's award should also be reduced significantly—the relator was awarded approximately $7,000,000 in conjunction with the original fee petition despite seeking approximately $20,000,000.

[24]Relator's counsel states that it reduced its fee petition hours (1429.6 hours) by approximately 130 hours for time spent on the enhancement issue, which is 9% of the total fee petition hours.  (*See* Rel.'s Reply [1021] at 13.)

[25]The Court also agrees with the defendants that WilmerHale's claim that it spent only 130 hours on the enhancement issue is dubious given that it spent 125 hours opposing defendants efforts to postpone the fee litigation, seek discovery, and seek leave to file a surreply—fairly

18

the enhancement issue, he cannot recover fees for time spent researching, drafting, and

reviewing that issue. *See INS v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation

should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").

Accordingly, with respect to the hours devoted to preparing the fee petition the Court

will cut an additional 25% from the fees-related work.[26]  The Court finds that this percentage is

warranted because relator's attorneys billed a total number of hours was *per se* unreasonable for

the complexity of a fee petition, used senior attorneys disproportionately, and, most

substantially, failed to fully account for issues on which relator did not prevail.[27]

### D.       Summary of Attorneys' Fees Reductions

mundane procedural issues.  (*See* Rel.'s Mot. [980] at 24; BII Opp'n [992] at 14–15.)  It is true
that when viewed in isolation, it seems like it should not have taken relator's attorneys more than
130 hours to argue the enhancement issue; however, it also seems like it should not have taken the
relator a total of 1,429.6 hours to prepare the fee petition and draft replies.  In other words,
given that other aspects of the fee petition appear to have taken longer than necessary, combined
with the fact that the relator provided time records using block billing, the Court cannot simply
rely on the relator's assurance that it made a "good-faith effort" to reduce the hours devoted to
the enhancement issue.  (*See* Rel.'s Reply [1021] at 15.)

[26]This is in addition to the 10% reduction for vague time descriptions and the 10%
reduction for block billing.

[27]Relator argues that any across-the-board reduction by the Court should be "minimal"
because relator already voluntarily reduced its "fees-for-fees" request by $176,453.08. (*See*
Rel.'s Reply [1022] at 9.)  However, relator's attorneys cannot be rewarded for fulfilling its
requirements—excising out the hours for which they should not be compensated.  Therefore,
relator's attorneys attempts to frame the issue as a voluntary reduction of 21.7% of their fees
(Rel.'s Reply [1022] at 8) is misleading, because relator was never entitled to those fees in the
first place.  Certainly, their voluntary reductions helped them avoid being sanctioned by the
Court or having their fee request thrown out altogether, *see Envtl. Def. Fund v. Reilly*, 1 F.3d
1254, 1258 (D.C. Cir. 1993) (stating that a court can altogether deny an unreasonable fee
request); however, it does not insulate them from further reductions based on additional defects.

### 1.      Across-the-Board Reductions

The Court reduced all requested fees by 10% for vague time descriptions.  *Supra* at 8–9.
The Court also reduced all requested fees by 10% for block billing.  *Supra* at 9.  The Court
reduced all attorneys fees by 0.5% and all paralegal fees by 5% for clerical work.  *Supra* at
10–11.

### 2.      Additional Reductions for Merits-Based Work

The Court also reduced the merits-based fees by an additional 5% because of
redundancy, excessiveness, or otherwise non-compensable work.  *See supra* at 11–14.  By
adding the across-the-board reductions, the total reduction for all merits-based attorneys fees was
25.5% and the total reduction for all merits-based paralegal fees was 30%.  (*See infra* Appendix
1.)

### 3.      Additional Reductions for Fees-Based Work

The Court also reduced the fees-based work by an additional 25% because of
redundancy, excessiveness, or otherwise non-compensable work.  *See supra* at 14–19.  By
adding the across-the-board reductions, the total reduction for all fees-based attorneys fees was
45.5% and the total reduction for all fees-based paralegal fees was 50%.  (*See infra* Appendix 2.)

### 4.      Total Attorneys' Fees Award in Supplemental Fee Petition

The Court has reduced all merits-based attorneys' fees by 25.5% and all merits-based
paralegal fees by 30%.  The Court will therefore award relator $303,526.16 in merits-based fees.
(*See infra* Appendix 1.)  The Court has reduced all fees-related attorneys' fees by 45.5% and all
fees-based paralegal fees by 50%.  The Court will therefore award relator $319,972.04 in fees-
related fees. (*See infra* Appendix 2.)  The total attorneys' fees award in this case is $623,498.20.

20

### D.    Costs and Expenses

The False Claims Act also awards "reasonable expenses" and costs that were "necessarily incurred."  31 U.S.C. § 3730(d)(1).  Reasonable expenses can include "out-of-pocket litigation expenses for postage, photocopying, telephone calls, facsimile transmissions, messengers, local travel, Westlaw, [&] transcripts . . . ."  *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16–17 (D.D.C. 2000).

Relator seeks a total of $30,194.06 in expenses expended during the merits-related work. Relator also seeks $119,105.84 in expenses that were expended in conjunction with the fee petition work.

### 1.    Reductions to Merits-Based Costs and Expenses

In Fee Opinion I [94], the Court reduced relator's requested expenses by forty percent for—*inter alia*—vague, generic, and ambiguous billing descriptions.  (Fee Opinion I at 93–94.) As the relator acknowledges, the bulk of its entries suffer from the same defects as those in the original petition: "[F]or most expenses . . . because of the manner in which WilmerHale maintains its expense records, Relator's counsel did not have more detailed information specifying the subject matter of the expense at issue."  (Rel.'s Reply [1022] at 20.)  For example, defendants assertion that more than $24,000 of the merits-related fees is computerized research that only contains the name of the researcher and the date that the research was conducted is not disputed by relator's counsel.  (HII Opp'n [992] at 37.)  The Court has already held that entries this vague do not allow the Court to "meaningfully assess whether they were necessarily incurred in pursuing this litigation."  (Fee Opinion I at 92.)  Other expenses are similarly vaguely described, poorly documented, or simply not documented.  (*See* HII Opp'n [992] at 37; BHIC

Opp'n [991] at 22–23.)  Accordingly, consistent with Fee Opinion I, the Court will reduce

relator's attorneys' merits-based expenses by forty percent. (*See* Fee Opinion I at 94.)

## 2.  Reductions to Fees-Related Costs and Expenses

Relator seeks $119,105.84 in fees-related costs and expenses.  The bulk of these

requested expenses—$85,605.46[28]—are for expert fees.

As for the non-expert costs and expenses, the Court will reduce those by forty percent.

Those fees are subject to the same deficiencies as the merits-based expenses.  Most of the non-

expert expenses are for electronic research that is only identified by the name of the researcher

and the date that the research was conducted.  Another example of poor documentation is a

request for $1,097.25 in outside photocopying expenses—relator's counsel has not even included

an invoice.  (*See* BHIC Opp'n [991] at 24; Bell. 2d Supp. Decl. [980–17].)  Relator does not

mount any serious opposition to defendants' arguments that the documentation of costs and

expenses is vague or non-existent, stating that "no greater than a 40% reduction is warranted."

(Rel.'s Reply [1021] at 25.)  Indeed, consistent with Fee Opinion I, a forty percent reduction is

warranted for vague, ambiguous, and poorly documented entries.

As for the expert costs and expenses, relator's counsel requests $85,605.46.  Relator

engaged three experts in conjunction with preparing the fee petition: Steven Davidson, Stephen

Braga, and Michael Kavanaugh.  (Rel.'s Mot [980] at 29.)  Indeed, relator's experts played an

important role in this Court's disposition of the fee petition.  However, they also spent a

significant amount of their time on issues on which the relator did not ultimately prevail, which

---

[28]Relator actually requested $88,700.21 in expert fees.  However, according to the
Court's calculation of relator's experts as provided in the costs detail in Exhibit B-9 to the
motion [980-16], the total comes up just short of that amount.

means that they are not entitled to recover those hours from the defendants.

Mr. Braga and Mr. Davidson approximated the time that they spent on issues on which relator was not ultimately successful.  Braga 2d Supp. Decl. ¶ 5 (20% of his initial declaration and 33.33% on his supplemental declaration; Davidson 2d Supp. Decl. ¶ 19 (20% on his declaration and supplemental declaration).  Relator reduced the requested expert fees accordingly.  Relator also reduced Dr. Kavanaugh's fees for his original declaration by 66% based on the portions of his declaration that were used on issues on which the relator did not ultimately prevail.  (Rel.'s Mot. [980] at 31.)

Defendants argue that the expert expenses require additional reductions.  Defendants point to the fact that Davidson's and Braga's bills were submitted in block billing format and are replete with overly broad entries.  (BHIC Opp'n [991] at 25.)  Examples of entries include "Exchange emails with R. Bell," "Telephone conference with J. O'Connor", and "Telephone conference with R. Bell and R. Gelfond."  (*See id.*)  Defendants also argue that the voluntary reductions by relator's counsel significantly underestimate the amount of time that the experts spent on issues on which the relator did not ultimately prevail.  Specifically, defendants argue, Davidson devoted at least 50% of his declarations to issues upon which relator did not fully prevail.  "Of the 40 pages comprising Davidson's first two declarations, eleven pages are devoted to the enhancement issue, five are devoted to the amount of detail in WilmerHale's time entries, three are devoted to the use of paralegals and "clerical" tasks, and one is devoted to travel time."  (HII Opp'n [992] at 40.)  Similarly, approximately 50% of the pages of Braga's declarations are devoted to the enhancement issue.  (*See id.*)   Relator responds that measuring how much time the experts spent on each issue in the declaration by looking at the number of

pages spent on each issue is an "oversimplified approach" because it "assume[s] incorrectly that the only task undertaken by the experts was drafting their declarations and that drafting each paragraph took an equal amount of time." (Rel.'s Reply [1022] at 21.) Instead, relator's counsel urges the Court to rely on the conclusory assertions of Mr. Davidson and Mr. Braga about how much time they spent on the unsuccessful issues. (*See* Rel.'s Reply [1022] at 22 (Davidson stating that his reduction was based on his review of timesheets and his own personal recollection); (Braga stating that he assigned his reduction to the "best of [his] ability").)

While defendants' proposed method is perhaps "oversimplified," it is at least empirically verifiable. And, the burden is on the party presenting the fee petition to produce time records showing that its costs and expenses were "necessary" and "reasonably incurred." As stated above, many of the experts' time entries are vague or in block billing format, making it impossible for the Court to independently verify the experts' conclusory assertions. Therefore, the Court will approximate the amount of time that each expert spent on unsuccessful issues by looking at the number of pages devoted to that issue and reducing the expenses accordingly. However, the Court does agree with relator's counsel that defendants' statement of the number of pages that the experts spent on issues on which they did not prevail is slightly overstated because it does not take into account the issues on which the relator partially prevailed. (*See* Rel.'s Reply [1022] at 22 n.15.) Taking into account the fact that the relator partially prevailed on some issues such as the number of hours reasonably expended, the clerical issues, and the specificity of the billing entries, the Court's review of the declarations approximates the time that the expert's spent on unsuccessful issues at approximately 40%. Because the relator has already reduced Davidson's and Braga's experts' fees by approximately 25% to reflect lack of

success on some issues,[29] the Court will reduce Braga and Davidson's costs and expenses by an additional 15% to approximate the appropriate reduction for time spent on unsuccessful issues. Dr. Kavanaugh's fees were already reduced by relator's counsel by 66% and the new amount was not challenged by defendants.

### 3.      Summary of Reductions of Costs and Expenses

The Court has made an across-the-board 40% reduction of relator's non-expert costs and expenses for inadequate, vague, and ambiguous documentation.  The Court has also reduced Messrs. Davidson's and Braga's fees by 15% to reflect the vagueness of the experts' time entries and the fact that the relator did not prevail on a substantial portion of his fee petition.

After reductions, the Court's award for merits-based costs and expenses is $18,116.44. The Court's award for fees-based costs and expenses is $91,064.10.  Therefore, the Court will award a total of $109,180.56 in costs and expenses in conjunction with this supplemental fee petition.

### III.      <u>CONCLUSION</u>

For the reasons set forth above, the Court shall grant in part and deny in part relator's motion for supplemental attorneys' fees, costs, and expenses [980].  Pursuant to 31 U.S.C. section 3730(d)(1), the Court shall order defendants BHIC, HUK, Bilhar, HII, and HC to pay relator $623,498.20 in reasonable attorneys' fees and $109,180.54 in reasonable expenses, which

---

[29]Relator reduced Braga's initial declaration by 20%, his supplemental declaration by 33%, and both of Davidson's declarations by 20%.

this Court finds were necessarily incurred—in total, $732,678.74.

A separate order shall issue this date.

SO ORDERED.


Signed by Chief Judge Royce C. Lamberth on February 26, 2009.

## APPENDIX 1

Merits-Related Time (Aug. 1, 2007-July 31, 2008).  Before percentage reductions.

| Name | Law School Class | Time Billed 2007 | Time Billed 2008 | Total Time Billed | 2008 Billing Rate | 2007 Billing Rate | Total 2008 Fees | Total 2007 Fees | Total Fees |
|------|------------------|------------------|------------------|-------------------|-------------------|-------------------|-----------------|-----------------|------------|
| Robert Bell | 1980 | 33.6 | 4.7 | 38.3 | $695 | $650 | $3,266.50 | $21,840 | $25,106.50 |
| Robert Cultice | 1978 | 25.3 | 2 | 27.3 | $700 | $625 | $1,400 | $15,812.50 | $17,212.50 |
| Jennifer O'Connor | 1997 | 71.2 | 0 | 71.2 | $555 | $510 | 0 | $36,312 | $36,312 |
| Jonathan Cederbaum | 1996 | 62.4 | 2.4 | 64.8 | $550 | $495 | $1,320 | $30,888 | $32,208 |
| Jeffrey Ayer | 1995 | 127.5 | 0 | 127.5 | $560 | $520 | 0 | $66,300 | $66,300 |
| Gregory Reece | 2003 | 144.4 | 0 | 144.4 | $475 | $385 | 0 | $55,594 | $55,594 |
| Michael Gottlieb | 2003 | 130.1 | 0 | 130.1 | $475 | $385 | 0 | $50,888.50 | $50,888.50 |
| Daniel Volchok | 2003 | 77.5 | 0 | 77.5 | $475 | $385 | 0 | $29,837.50 | $29,837.50 |
| Monya Bunch | 2004 | 102.1 | 0 | 102.1 | $440 | $350 | 0 | $35,735.00 | $35,735.00 |
| Ashley Baynham | 2004 | 12.9 | 0 | 12.9 | $440 | $350 | 0 | $4,515 | $4,515 |
| Matthew Baumgartner | 2004 | 38.5 | 0 | 38.5 | $440 | $350 | 0 | $13,475 | $13,475 |
| Kevin Heffel | 2005 | 32.3 | 0 | 32.3 | $395 | $315 | 0 | $10,174.50 | $10,174.50 |
| Allison Murphy | 2006 | 42.2 | 0 | 42.2 | $345 | $275 | 0 | $11,605.00 | $11,605.00 |
| Nancy Tillotson | Paralegal | 74.1 | 0 | 74.1 | $215 | $175 | 0 | $12,967.50 | $12,967.50 |
| Mary Beth Caswell | Paralegal | 31.3 | .4 | 31.7 | $250 | $210 | $100 | $6,573 | $6,673 |
| TOTAL | | 1005.4 | 9.5 | 1014.9 | | | $6,086.5 | $402,517.50 | $408,604.00 |

$ 388,963.50 in merits-related attorneys' fees prior to percentage reductions.
$19,640.50 in paralegals fees prior to percentage reductions.

$388,963.50 * 74.5%[1]= $289,777.80 total attorneys' fees for merits-related work.
+  $19,640.50 * 70%[2]  = $13,748.35 total paralegals' fees for merits-related work.

**$303,526.16 in merits-related fees after percentage reductions.**

---

[1] 10% reduction for vague entries, 10% reduction for block billing, 5% reduction for excessive work, 0.5% reduction for clerical work.  (Mem. Op. at 20.)
[2] 10% reduction for vague entries, 10% reduction for block billing, 5% reduction for excessive work, 5% reduction for clerical work (Mem. Op. at 20)

# APPENDIX 2

Fees-Related Time (May 1, 2007-July 31, 2008)[3].  Before percentage reductions.

| Name | Law School Class | Time Claimed 2007 | Time Claimed 2008 | Total Time Claimed | 2008 Billing Rate | 2007 Billing Rate | Total 2008 Fees | Total 2007 Fees | Total Fees |
|---|---|---|---|---|---|---|---|---|---|
| Robert Bell | 1980 | 188.06 | 104.51 | 292.6 | $695 | $650 | $72,634.45 | $122,239 | $194,873.45 |
| Mary Beth Caswell | Paralegal | 141.76 | 105.10 | 246.9 | $250 | $210 | $26,275 | $29,769.60 | $56,044.60 |
| Jonathan Cederbaum | 1996 | 70.13 | 18.37 | 88.5 | $550 | $495 | $10,103.50 | $34,714.35 | $44,817.85 |
| Rebecca Gelfond | 2000 | 161.94 | 179.46 | 341.4 | $530 | $470 | $95,113.80 | $76,111.80 | $171,225.60 |
| Allison Murphy | 2006 | 75.50 | 65.40 | 140.9 | $345 | $275 | $22,563 | $20,762.50 | $43,325.50 |
| Gregory Reece | 2003 | 122.32 | 57.50 | 179.8 | $475 | $385 | $27,312.50 | $47,093.20 | $74,405.70 |
| Nancy Tillotson | Paralegal | 4.20 | 32.27 | 36.5 | $215 | $175 | 6,938.05 | $735.00 | $7,673.05 |
| TOTAL | | 763.91 | 562.61 | 1326.52 | | | $260,940.30 | $331,425.45 | $592,365.75 |

$528,648.10 in fees-related attorneys' fees prior to percentage reductions.
$63,717.65 in fees-related paralegal fees prior to percentage reductions.

$528,648.10 * 54.5%[4]= $288,113.21 total attorneys' fees for fees-related work.
+ 63,717.65 * 50%[5] = $31,858.83 total paralegal fees for fees-related work.

**$319,972.04 in fees-related fees after percentage reductions.**

---

[3] Relator has already voluntarily reduced some of its fee-related hours for time spent on unsuccessful issues. (*See* Bell 3d Supplemental Declaration. Ex. A-2.)
[4] 10% reduction for vague time entries, 10% reduction for block billing, 25% reduction for excessive work, 0.5% reduction for clerical work.  (Mem. Op. at 20.)
[5] 10% reduction for vague time entries, 10% reduction for block billing, 25% reduction for excessive work, 5% reduction for clerical work.  (Mem. Op. at 20.)

# APPENDIX 3

**Costs and Expenses Award**

    **1.**    **Merits-Based Costs and Expenses**

$30,194.06 in requested fees and expenses (Rel.'s Mot. [980] at 28)

\* 60%[1]

**= $18,116.44 awarded merits based costs and expenses**

    **2.**    **Fees-Based Costs and Expenses**

        a.  Non-expert fees
            $30,405.63 in requested fees and expenses (Rel.'s Mot. [980-15] at 2.)
            \* 60%[2]
            = 18,243.38 awarded fees-based non-expert fees
        b.  Expert fees
            $ 85,605.46 in requested expert fees (Rel.'s Mot. [980-16] at 1–17.)
            $ - 374 in Kavanaugh fees with no further reduction ([980-16] at 9.)
            = $85,231.46 in Davidson and Braga fees
            \* 85%[3]
            = $72,446.74 in awarded Davidson and Braga fees
            + $374 in Kavanaugh fees
            = $72,820.74 in total awarded expert fees
        c.  Total awarded fees-based costs and expenses
            18,243.38 fees based non-expert fees
            +72,820.72 fees based expert fees

**= $91,064.10 awarded fees-based costs and expenses**

    **3.**    **Total Awarded Costs and Expenses in Supplemental Fee Petition**

    $18,116.44 awarded merits-based costs and expenses
    +$91,064.10 awarded fees-based costs and expenses

# = $109,180.54 total awarded costs and expenses

---

[1] The Court reduced merits-based costs and expenses by 40% for inadequate documentation and other reasons. (*See* Opinion at 21–22.)

[2] 40% reduction for inadequate documentation and other reasons. (Opinion at 22.)

[3] 15% reduction for underestimating time spent on unsuccessful issues. (Opinion at 24–25.)

## APPENDIX 4

<u>**Total Award in Supplemental Fee Petition:**</u>

   $303,526.16 in merits-based fees (*See* Appendix 1)
+ $319,972.04 in fees-based fees (*See* Appendix 2)
<u>+ $109,180.54 in total costs and expenses (*See* Appendix 3)</u>

# =  **$732,678.74 total award in supplemental fee petition**