# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* RICHARD F. MILLER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 95-cv-1231 (RCL) |
| BILL HARBERT INTERNATIONAL CONSTRUCTION, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Four years ago, following a seven-week trial, a jury concluded that defendants Bill Harbert International Construction, Inc., Harbert International, Inc., and Harbert Corporation (collectively, the "defendants")[1] engaged with several others in a conspiracy to defraud the United States Agency for International Development ("USAID") by rigging the bidding process for several development contracts in Egypt, fleecing the U.S. government for more than $30 million. Based on the jury's findings, this Court entered judgment on behalf of the government in excess of $90 million under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. This past year, the D.C. Circuit affirmed the judgment against several entities, but found that the government prejudiced these defendants by introducing evidence that contradicted a stipulation concerning BHIC's formation and eliciting testimony concerning the wealth of HII and HC. Based on these concerns, the Circuit Court vacated judgment as to defendants and remanded the matter for a new trial. With retrial in sight, the government now argues that the Circuit Court's mandate and

---

[1] The Court will refer to these defendants by the now-familiar acronyms BHIC, HII, and HC, respectively.

opinion, read together, require the Court to leave the first jury's conclusion that a conspiracy that cost the government more than $30 million undisturbed by limiting the scope of the upcoming proceedings to the sole question of whether defendants joined the conspiracy. Alternatively, the government asks the Court to exercise its discretion to place equivalent constraints on the retrial. Defendants counter that the Circuit Court's mandate and opinion voided all findings of liability and damages, insisting that the issues are so interrelated, and the prejudice caused by the errors identified by the Circuit Court are so pervasive, as to necessitate a full trial on the merits. The Court agrees, and will direct the parties to prepare for a trial on all issues.

## II. BACKGROUND

The full history of this matter has been set forth many times, and is only briefly recounted where relevant. In 1995, Richard F. Miller, then-vice president of an international construction company, filed claims under the False Claim Act alleging that numerous entities had defrauded the government's USAID program by conspiring to rig the bids for construction contracts in Egypt awarded by USAID in return for that country's agreement to recognize Israel following the Camp David Accords of 1979. For the next seven years, the government kept the complaint under seal while undertaking an investigation that resulted in several criminal convictions. In 2002, the government unsealed the complaint and, after years of procedural maneuvering and a transfer of judges, this matter proceeded to trial in 2007. After a seven-week trial, the jury returned a verdict in favor of Mr. Miller and the government, finding that (1) an overarching conspiracy to defraud the government with respect to several USAID contracts in Egypt existed, Verdict Form 2, May 14, 2007 [858], (2) several entities—including defendants—took part in that conspiracy, *id*. at 2–8, and (3) the government had lost $29,920,000 on Contract 20A—which involved a sewer project in Cairo—$1,026,029.22 on Contract 07—which involved a

sewer project in Alexandria—and $3,400,000 on Contract 29—which involved the construction of a wastewater treatment facility in Cairo. *Id.* at 9–12. Based on the jury's findings, the Court entered judgment against defendants and several others for approximately $90 million, Judgment, Aug. 10, 2007 [883], and subsequently denied defendants' motions to set aside the verdict. *Miller v. Holzmann*, 563 F. Supp. 54 (D.D.C. 2008) ("*Miller I*").

On appeal the D.C. Circuit reversed this Court on three matters. First, the Circuit Court found that the statute of limitations had run on all claims relating to Contracts 07 and 29, which were only added by the government after the complaint was unsealed in 2002. *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 877–85 (D.C. Cir. 2010) ("*Miller II*"). Second, the Circuit Court held that the introduction of, and references to, a document implying that BHIC was formed in 1986 contradicted the parties' stipulation that the company did not exist before 1992, resulting in "substantial prejudice" to BHIC. *Id.* at 888–89. Third, the Circuit Court explained that testimony concerning the wealth of HII and HC was not "of consequence to the determination of the action" but did prejudice the jury. Aside from these three errors, the Circuit Court found that there was sufficient evidence to support (1) the existence of an overarching conspiracy, *id.* at 899–901, (2) other entities' participation in that conspiracy, *id.* at 901–904, and (3) the amount of damages awarded by the jury. *Id.* at 904–07. The Circuit Court then issued the following mandate:

> [T]he judgment of the District Court . . . is hereby vacated, pursuant to the statute of limitations, with respect to the claims concerning Contracts 07 and 29; vacated as to defendants HII, HC, and BHIC and remanded for a new trial; and affirmed with respect to the claims concerning Contract 20A against the remaining defendants.

Mandate, Oct. 19, 2010 [1078]. The *Miller II* Court subsequently remanded this action for further proceedings concerning these defendants. *Id.*

3

Following resolution of a dispute concerning attorneys' fees, *United States ex rel. Miller v. Bill Harbert Int'l Contr.*, No. 95 Civ. 1231, 2011 U.S. Dist. LEXIS 50788 (D.D.C. May 12, 2011), the Court held a status conference at which the government stated its belief that retrial must be limited to the question of whether BHIC, HII and HC joined the conspiracy. In accordance with the Court's invitation, the government subsequently moved to limit the scope of the new trial. Motion to Limit Further Proceedings, June 14, 2011 [1102] ("Gov. Mtn."). In support of its request, the government asserts that a limited retrial is required by the Circuit Court's mandate and necessary to prevent inconsistent verdicts, and argues that the Court should exercise its discretion to circumscribe future proceedings. *Id*. at 7–19. Defendants challenge this position, insisting that vacatur of the earlier judgment mandates a full retrial and arguing that the Circuit Court's opinion in *Miller II* is incompatible with the government's proposal. Opposition to Motion to Limit Further Proceedings, June 28, 2011 [1103] ("Ds' Opp."). Having reviewed the relevant background and applicable law, the Court turns now to the merits of the parties' contentions.

### III. DISCUSSION

"It is well settled that [an appellate court] may . . . divide the issues and limit the scope of a new trial." *Wash. Gas Light Co. v. Connolly*, 214 F.2d 254, 256 (D.C. Cir. 1954). Thus, in reviewing the Circuit Court's mandate and opinion, the question for the Court is not whether it *may* limit the scope of the retrial, but whether it *must* or *should* circumscribe future proceedings. The government argues that a full retrial could undermine earlier findings—upheld by the Circuit Court—that an overarching conspiracy existed which cost the government nearly $30 million on Contract 20A, and, alternatively, that a partial retrial—even if not compelled by the disposition on appeal—is appropriate under the circumstances. The Court addresses each argument in turn.

4

### A. The D.C. Circuit's Mandate

The government's primary argument is that "it is the duty of this Court to determine which issues relating to the remanded defendants were finally determined by the first trial and affirmed on appeal and which issues remain open to redetermination," Gov. Mtn. at 7, and that a limited retrial on the question of whether defendants joined the overarching conspiracy is compelled by the mandate rule in light of the Circuit Court's disposition of the appeal in *Miller II*. *Id.* at 13–19. When remanding an action for further proceedings, a federal circuit court generally includes, along with any written opinion, a mandate directing the district court to take certain action. *See Black's Law Dictionary* 980 (8th ed. 2004) (defining "mandate" as "[a]n order from an appellate court directing a lower court to take a specified action."). "No principle of law is better established than the rule that a District Court is bound 'by the decree of the Court of Appeals and must carry it into execution, according to the mandate.'" *Consarc Corp. v. Dep't of Treasury*, 71 F.3d 909, 915 (D.C. Cir. 1995) (quoting *Mays v. Burgess*, 152 F.2d 123, 124 (D.C. Cir. 1945)); *Role Models Am., Inc. v. Geren*, 514 F.3d 1308, 1311 (D.C. Cir. 2008) (holding that district court on remand has "no 'power or authority to deviate from the mandate'") (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)). This general principle—known as the "mandate rule"—is "a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 597 (D.C. Cir. 2001). According to the government, the Circuit Court's mandate does not *require* a full retrial but—read in conjunction with the opinion in *Miller II*, which makes clear that the conspiracy and damages issues were finally decided—*necessitates* a partial retrial. Gov. Mtn. at 7–10 & 13–19. Defendants respond that the mandate unequivocally commands a new trial on all issues, D's Mtn. at 7–9, and that, in

5

the alternative, a partial retrial cannot be squared with the *Miller II* opinion. *Id*. at 10–13. The Court, for the reasons set forth below, finds that the Circuit Court's mandate and opinion does not strictly define the proper scope for the new trial.

1. **The Plain Language of the Mandate**

Where the text of a mandate is clear, the district court is without authority to act contrary to those instructions. *Role Models*, 514 F.3d at 1311; *see also United States v. White*, 751 F. Supp. 2d 173, 174–75 (D.D.C. 2010) ("A district court is without authority to take any action that is inconsistent with an appellate court's mandate."). In this instance, the Circuit Court's mandate, which is quoted more fully above, declares that this Court's earlier judgment is "vacated as to defendants HII, HC and BHIC and remanded for a new trial." Mandate at 1. Nothing in this mandate expressly instructs the Court to hold a new trial on a limited number of issues—thus distinguishing the situation from the circumstances before the district court in the cases cited by the government. *See, e.g.*, *Role Models*, 514 F.3d at 1311 (affirming lower court's decision to hold partial retrial because mandate "made clear that we were remanding only for the re-screening of other interested parties"); *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 86 (D.D.C. 2002) (holding limited retrial on remedies based on court of appeals' instructions to "hold a remedies-specific evidentiary hearing' and to 'fashion an appropriate remedy'") (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 103, 105 (D.C. Cir. 2001)). In other words, the plain language of the mandate does not, standing alone, compel the government's desired result.

At the same time, the language in the Circuit Court's mandate also does not require a new trial on every issue, as defendants urge. Defendants maintain that the Circuit Court's instruction to hold a "new trial," Mandate at 1, bars the Court from "preclu[ding] . . . one or more issues for retrial, absent specific limiting language in the mandate." Ds' Opp. at 8. But this position

6

assumes that the requirement of a new trial inherently encompasses reconsideration of every issue previously decided—an assumption lacking foundation. *See Sherwin v. Welch*, 319 F.2d 729, 731 (D.C. Cir. 1963) (noting that "judgment of reversal and remand did not necessarily require a complete new trial"). A new trial *may* require reconsideration of every issue; but nothing about this instruction *commands* a full retrial. *See Black's* at 1543 (defining "new trial" as "[a] postjudgment retrial or reexamination of some or all of the issues determined in an earlier judgment"). And defendants' fixation on the Circuit Court's vacatur of the earlier judgment is equally misplaced. In certain circumstances—such as those cited by defendants—the act of vacating an earlier opinion has invalidated prior factual findings. *See, e.g.*, *Aviation Enters., Inc. v. Orr*, 716 F.2d 1403, 1408 (D.C. Cir. 1983) (noting that by vacating lower court's judgment, appellate court "drain[ed] the court's underlying findings of fact of whatever vitality they might otherwise have had"). Such broad statements, however, were made only in the context of a case that was dismissed *in its entirety* for lack of standing. *Id*. at 1407.[2] To "vacate," which is to "annul[] or set[] aside," is to void the effect of a prior legal determination—such as a judgment. *Black's* at 1584. A court might vacate a judgment for an error in instructing on an affirmative defense, or it might vacate a judgment in light of a pervasive error that infected the entire proceedings. In either event, the procedural mechanism—vacatur—is not tied to the type or effect of error, but rather to the fact that a *judgment* having legal effect was entered, and its effects must be annulled. By vacating this Court's earlier judgment, the Circuit Court did not specifically determine that any particular findings of the jury were incorrect, but only that this

---

[2] The other examples cited by defendants are equally unconvincing. For example, defendants point to *United States v. Musingwear* for the Supreme Court's observation that vacatur renders "null and void" the "former judgment." 76 U.S. 608, 610 (1869). That statement, however, pertains to a *judgment*—not to a particular finding of fact. *See also Pahuta v. Massey Ferguson, Inc.*, 60 F. Supp. 2d 74, 76 (W.D.N.Y. 1999) ("[T]he court vacated the district court's *final judgment*.") (emphasis added). The Court is also unmoved by defendants' citation to *Kelso v. Dep't of State*, as that case stands for the unremarkable principle that vacatur defeats application of the doctrines of *res judicata* or collateral estoppel, 13 F. Supp. 2d 12, 17 (D.D.C. 1998)—doctrines the government does not pursue.

Court's entry of judgment *based* on those findings was improper. Absent more specific instructions in the mandate, it is up to the Court, on remand, to determine *why* the entry of judgment was improper—relying of course on the Circuit Court's opinion. Accordingly, the Circuit Court's use of "vacatur" in this instance does not foreclose the survival of certain prior factual determinations, provided they were not infected by the underlying errors identified by the Circuit Court. And while defendants note that the Circuit Court could have expressly limited any retrial had it so desired, it could just as easily have commanded a new trial on every issue if it wished. In light of the ambiguous mandate, the Court turns to the Circuit Court's opinion to determine whether any further guidance is available.

### 2. Reading the Mandate and the Opinion Together

When a district court is considering proceedings on remand, a circuit court's opinion "may be consulted to ascertain what was intended by its mandate." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895); *see also Sherwin*, 319 F.2d at 731 ("The nature and extent of proceedings on remand should be determined by the district court according to the circumstances of each case, in light of any instructions in our mandate."); *Pahuta v. Massey-Ferguson, Inc.*, 60 F. Supp. 2d 74, 76 (W.D.N.Y. 1999) (including "a copy of the court's opinion" among items comprising mandate). In this instance, both parties point to certain aspects of the *Miller II* opinion to support their position. The government, for example, quotes the Circuit Court's statement that—outside of the particular errors identified in the opinion—"'[i]n all other respects, we affirm.'" Gov. Mtn. at 13 (quoting *Miller II*, 608 F.3d at 875).[3] It also argues that—had the Circuit Court found that any evidence concerning BHIC's existence or HII's and

---

[3] On this point, the government cites *United States v. White*, but in that case the appellate court directed the lower court to dismiss the indictment as to one conviction, and upheld the conviction and sentences on the other counts, leading the court to refuse to reconsider the defendant's sentence on those counts, as it was "untouched" on appeal. 751 F. Supp. 2d at 175. In this case, however, the Court cannot say that the Circuit Court left every aspect of the jury's verdict *other than* whether BHIC, HII, HC joined the conspiracy similarly "untouched."

8

HC's wealth affected the jury's findings on the overarching conspiracy or calculation of damages—it would have vacated the judgment with respect to the other entities. *Id*. at 13–19. In response, defendants explain that the Circuit Court "address[ed] only the sufficiency arguments made by HUK and BIE,'" Ds' Mtn. at 10 (quoting *Miller II*, 608 F.3d at 898), insisting that the Circuit Court never considered any prejudicial effects on the jury's determination of these issues. *Id*. at 10–13. Defendants also maintain that the errors identified by the Circuit Court were too broad to have been cabined to particular factual findings, but instead infected the entirety of the earlier trial, necessitating a full retrial. *Id*. at 19–23.

The Court need not linger long on this matter. The fact that language from the Circuit Court's opinion at times indicates that a partial retrial is required and at other times suggests that a full retrial is necessary is the best available evidence that the opinion—like the mandate—does not unequivocally dictate a particular scope for retrial. On remand, the job of the Court is to "scrupulously avoid implementing the mandate in a manner that exceeds, or limits, the appellate decision." *Tex. Oil & Gas Corp. v. Hodel*, 654 F. Supp. 319, 323 (D.D.C. 1987). In this instance, where the mandate and opinion do not provide an unmistakable direction for further proceedings, the Court will not finely parse the applicable language to fashion a clear appellate instruction that the Circuit Court did not see fit to articulate itself.[4]

## B. A Partial Retrial is Inappropriate

Having found no evidence in the Circuit Court's mandate that the Court *must* proceed in any particular manner, the Court now turns to whether it *should* limit the scope of a new trial.

---

[4] The government also points to the Supreme Court's statement that, in conspiracy cases, courts should attempt to avoid "the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). But this statement was made in support of the "*preference*" for joint trials, *id*. (emphasis added), and cannot be read to *foreclose* defendants' ability to present a full defense in this instance. Indeed, just a few paragraphs after this statement, the *Zafiro* Court recognized that coconspirators may sometimes need to be tried separately. *Id*. at 539. And as the D.C. Circuit has previously explained, concerns related to consistent conspiracy verdicts only arise in "cases in which a *single* jury hear[d] the *same* evidence." *United States v. Lewis*, 716 F.2d 16, 22 (D.C. Cir. 1983) (emphasis in original). No such risk exists here, as the jury on retrial will not hear the *same* evidence.

9

The Supreme Court has explained that "where the requirement of a jury trial has been satisfied by a verdict . . . that requirement does not compel a new trial of [one particular] issue even though another and separable issue must be tried again." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499 (1931). A district court's authority to structure a retrial, codified in Federal Rule of Civil Procedure 59, turns on two key questions: First, are the issues to be retried sufficiently distinct from resolved issues so that only those issues may be presented to a jury without causing undue confusion or prejudice? Second, did the error necessitating retrial affect the earlier determinations on issues that might otherwise be treated as resolved? The former inquiry rests principally on a party's right to a full and fair hearing of the issues. And to protect this right, "the power to grant a partial new trial 'may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 421 (D.C. Cir. 1975) (quoting *Gasoline Prods.*, 283 U.S. at 500). The latter inquiry invokes efficiency interests, in pursuit of which a court may limit future proceedings "to prevent the retrial of any issue already *properly* decided." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 276 F. Supp. 2d 264, 276 (D.N.J. 2003) (citing *Yates v. Dann*, 11 F.R.D. 386, 392–93 (D. Del. 1951); emphasis added), *rev'd on other grounds*, 438 F.3d 240 (3d Cir. 2006). For the reasons set forth below, the Court finds that some issues cannot be adequately segregated, and that in all respects the errors identified by the Circuit Court permeated the earlier proceedings to a degree requiring a full retrial of all relevant factual issues.

    1.    **Separation of Issues**

The first inquiry is whether the issue that all parties agree must be retried—whether defendants joined an overarching conspiracy to rig the bidding process—can be separated in an

equitable manner from questions of (1) whether a conspiracy existed and (2) what damages were suffered as a result of the bid rigging. The key factor, in making this evaluation, is whether the question of joining a conspiracy "'is so interwoven with [the other questions] that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty.'" *Camalier*, 513 F.2d at 421 (quoting *Gasoline Prods.*, 283 U.S. at 500); *see also Williams v. Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995) (holding that when one issue is "so intertwined" with another "that one cannot be submitted to the jury independently of the other without confusion and uncertainty, then a new trial must extend to all issues").

### a. The Overarching Conspiracy

Can a new jury be asked to determine whether defendants joined a conspiracy without considering the nature, extent or existence of that illegal enterprise? The Court does not see how it can. As an initial matter, to establish a civil conspiracy, a jury must find, *inter alia*, "an agreement between two or more persons." *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). But this inquiry is no different than the underlying question of whether a particular defendant joined a conspiracy, which also requires a finding that each defendant entered an agreement. Indeed, the first jury was instructed that it could find "that a particular defendant willfully became a member of the conspiracy" relying on evidence allowing it to "infer . . . an intent to participate in an unlawful enterprise." Trial Tr. 59:22–60:2, Oct. 16, 2008 [1047]. Moreover, a fundamental aspect of determining whether an entity joined a conspiracy is an understanding of the nature and scope of that conspiracy—which the fact-finder must define. *See United States v. Booze*, 108 F.3d 378, 382 (D.C. Cir. 1997) ("To determine the scope of the conspiratorial agreement entered into by a defendant, the district court must 'spell out specific findings about the individual defendants and their relation to the conspiracy.'"). And

11

finally, even if the Court were able to fashion a way around these obstacles, an instruction barring defendants from challenging the existence of a conspiracy might have an undue influence on the jury's determination of whether these defendants participated in such an enterprise; indeed, an entire line of cases in the D.C. Circuit concerns the ease with which evidence concerning the existence of, and participation in, a conspiracy is readily transferrable. *See, e.g.*, *United States v. Gatling*, 96 F.3d 1511, 1519–20 (D.C. Cir. 1996). Put simply, this is an instance where the jury will need a thorough knowledge of the underlying conspiracy—one that cannot be properly disassociated from the question of whether these defendants joined that conspiracy. *See Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538–39 (5th Cir. 1984) (ordering full retrial where evaluation of particular claim required "understanding" of another claim). Thus, just as the *Gas Prods.* jury could not "fix the amount of damages unless also advised" of key contract terms—which necessitated further findings of fact, 283 U.S. at 499–500—the Court is at a loss as to how the jury could determine whether BHIC, HII and HC joined the enterprise without also defining the nature and scope of that conspiracy.

### b. Damages

The difficulties inherent in the conspiracy question do not similarly intrude upon the calculation of damages. As the Circuit Court observed, any injury suffered by the government in this case is not tied to the nature of the conspiracy, but represented by "the difference between what the United States paid and what it would have paid had there been no bid-rigging agreement." *Miller II*, 608 F.3d at 904. Consistent with this measure of damages, the Court in the first trial instructed the jury: "The damages that the United States is entitled to recover under the False Claims Act is the amount of money that the government paid out by reason of the false claims over and above what it would have paid out had the claims not been false." Trial Tr.

65:11–15. And as the government correctly notes, the verdict form neither mandates that damages be apportioned among defendants, nor requires any consideration of a particular defendant's involvement in any conspiracy. *See generally* Verdict Form at 9–12. In these circumstances, the Court has little difficulty concluding that the jury could—were it otherwise appropriate—determine whether an illegal enterprise exists and whether defendants were part of that conspiracy without also evaluating the damages caused by such actions.

### 2. The Prejudice Identified by the D.C. Circuit Cannot be Isolated

The second inquiry for the Court is whether "the error which requires the new trial of [a particular] issue does not affect the determination of any other" issue. *Ecker v. Potts*, 112 F.2d 581, 582 (D.C. Cir. 1940). As a general rule, the authority to permit a partial retrial should not be exercised "when the error which necessitates a new trial is in respect of a matter which might well have affected the jury's determination of other issues." *Geffen v. Winer*, 244 F.2d 375, 376 (D.C. Cir. 1957); *see Feinberg v. Mathai*, 60 F.R.D. 69, 70 (E.D. Pa. 1973) (explaining that partial retrial of issues is proper only where "the error requiring a new trial has not affected the determination of any other issue"). In other words, "a complete new trial is necessary . . . where it would be manifestly prejudicial not to retry the entire case," *Channel 20 v. World Wide Towers Servs.*, 607 F. Supp. 551, 558 (S.D. Tex. 1985), and a partial retrial is appropriate only "where some error requires a new trial on some distinct and separable issues but leaves the verdict on completely separate issues uninfected." *Id.* at 559.

The errors identified by the Circuit Court are not expressly tied to a particular element of the underlying claims, and therefore may not be readily cabined, as in other cases. *See, e.g.*, *East Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 532 (5th Cir. 2009) (remanding for partial trial on whether defendant was prejudiced by late notice of suit, where

jury's findings on liability and damages were upheld); *Ryan v. McDonough Power Equipment, Inc.*, 734 F.2d 385, 388 (8th Cir. 1984) (permitting partial retrial where one count was overturned for lack of evidence); *Zanetti Bus Lines, Inc. v. Hurd*, 320 F.2d 123, 129 (10th Cir. 1963) (granting partial retrial where legal error occurred on instruction "which relates only to the liability" and "would have no bearing on the amount of the jury's award"); *Channel 20*, 607 F. Supp. at 559 (collecting cases permitting partial retrial on damages where error was only "with respect to damages"). In the absence of a direct link between the error and a particular jury finding, the key issue for the Court is the *effect* of the identified errors, and whether the resulting prejudice necessitates reconsideration of every factual issue or only certain matters.[5] *See Brownlee v. United Fidelity Ins. Co.*, 117 F.R.D. 383, 389–90 (S.D. Miss. 1987) (noting that where counsel inflamed jury during closing argument—causing prejudice—"a complete new trial is the only adequate remedy"). The Circuit Court held that introduction of certain evidence prejudiced defendants, and a necessary implication of a prejudice finding is that this evidence *improperly* affected the jury's judgment. *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (explaining that finding of "unfair prejudice" implies that jury made its decision "on an improper basis, commonly, though not necessarily, an emotional one") (quotations omitted). The Court therefore examines whether the prejudice identified by the Circuit Court may have affected the prior jury's findings on the conspiracy and damage issues.

      **a.    BHIC**

The error identified by the Circuit Court with respect to BHIC was that the government was permitted to "introduce[] evidence that . . . contradicted the joint stipulation of fact that

---

[5] While the government urges that "'the same issue presented a second time in the same case in the same court should lead to the same result,'" Mtn. at 19 (quoting *United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009)), it ignores the simple fact that where the evidence presented a second time varies—as it will by virtue of the Circuit Court's holdings with respect to certain pieces of evidence—it cannot be said that the retrial involves *the same issue presented a second time*.

BHIC did not exist at the time companies were bidding on and entering into the relevant contracts." *Miller II*, 608 F.3d at 888. According to the Circuit Court, because the government was allowed to insinuate that BHIC existed earlier than 1992—the date of the parties' stipulation—"the evidence establishes BLH was not in fact a predecessor to BHIC, but actually the same company." *Id*. at 889. The government argues that this error is confined to "the question whether BHIC was in existence in order to have participated in the conspiracy." Gov. Mtn. at 14. On this understanding, the government insists that its earlier introduction of evidence contrary to the stipulation "has no bearing on whether a conspiracy existed," *id*., and that there is otherwise "no plausible basis on which to suggest that the date of formation of BHIC somehow affected the jury's consideration of damages." *Id*. at 17. The Court disagrees.

The government's attempts to cabin this error cannot be squared with the opinion in *Miller II*. Nowhere does the Circuit Court suggest that the harm befalling BHIC was limited to the factual dispute of whether the company existed before 1992. Quite the contrary, the Circuit Court emphasizes that the prejudice suffered by BHIC was realized through the discrediting and undermining of its counsel: "[A]llowing the government to contradict the stipulation called into question the credibility of BHIC's counsel, severely impeding counsel's ability *to effectively advocate for his client*." 608 F.3d at 889 (emphasis added). In contrast to the government's narrow version of prejudice, this statement speaks of no qualification or limit. In *Camalier*, the D.C. Circuit found that the wrongful instruction of the trial judge—though concerning only liability—could have had several effects on the damage calculation by either inflaming prejudices or mitigating perceived harm, and therefore, "viewing the situation realistically," held that no assurance existed that prejudice did not have an effect warranting an entire new trial. 513 F.2d at 421–22; *see also Feinberg*, 60 F.R.D. at 71 (granting full new trial where "the Court has

15

no way of fathoming what motivated the jury"). In light of the Circuit Court's understanding of the pervasive nature of the prejudice befalling BHIC, the Court remains unconvinced that any lingering questions as to the veracity or trustworthiness of BHIC's counsel did not affect the jury's evaluation of either the conspiracy or damages issues. Accordingly, the Court concludes that all these issues must be presented anew.

### b. HII & HC

Turning to HII and HC, the error identified by the Circuit Court is the government's elicitation of testimony concerning the assets owned or controlled by HII or HC, as well as its closing, in which the government "recalled this testimony and juxtaposed the wealth of all the Harbert companies with the relative poverty of those in countries benefitting from projects funded by the USAID, saying that the excess money . . . 'could have been used for less fortunate people in other countries.'" *Miller II*, 608 F.3d 871. With respect to this error, the government asserts that "the wealth of HII and HC has no plausible relationship to the existence of a conspiracy," Gov. Mtn. at 14, and argues that because the "damages award here was not defendant-specific but was for losses caused by the overarching conspiracy . . . . [h]ad the D.C. Circuit concluded that the improper admission of wealth evidence with respect to HII and HC had prejudicially affected the jury's damages award, it necessarily would have vacated that award as incorporated in the judgments against BIE and HUK." *Id.* at 17. The government's understanding of *Miller II* cannot be reconciled with the plain language of the opinion.

As an initial matter, the government's reading of the Circuit Court's opinion in *Miller II* with respect to HII and HC suffers the same problems that its understanding of the error as to BHIC—it reads the opinion too narrowly. Once again, the government focuses strictly on the logical result of the *evidence* in question, without also considering what the Circuit Court stated

16

with respect to the resulting *prejudice*. Nowhere does the *Miller II* Court imply that the evidence concerning wealth could *only* affect the jury's determination as to whether either HII or HC joined the overarching conspiracy, but rather spoke in very broad terms, explaining that "[t]he only way the information could have affected the jury was to prejudice it," 608 F.3d at 898, and noting that "arguments to the jury about a defendant's wealth are grounds for a new trial." *Id*. at 897 (citing *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970)). These broad statements of prejudice—along with the Court's earlier determination that the conspiracy existed—cannot be fairly separated from the question of whether defendants joined that conspiracy, and counsel in favor of a full retrial. *See Shessel v. Murphy*, 920 F.2d 784, 787 (11th Cir. 1991) (directing full retrial where error below could have affected jury's consideration of other issues).

Turning to the damages issue, it strains credibility to argue that remarks establishing the significant wealth of defendants HII and HC had absolutely no effect on the jury's calculation of damages. Indeed, this Court previously acknowledged the effect in *Miller I*, observing that "knowledge that a defendant has the resources to pay a judgment may increase jurors' comfort level in making a large damages award." 563 F. Supp. 2d at 112 (collecting cases).[6] And the Supreme Court has observed that "the emphasis on the wealth of the wrongdoer increase[s] the risk that the award may have been influenced by prejudice," *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 464 (1993), while the D.C. Circuit previously found grounds for a mistrial where counsel made remarks concerning a plaintiff's poverty and a defendant's wealth. *Wash. Annapolis Hotel Co. v. Riddle*, 171 F.2d 732, 740 (D.C. Cir. 1948). Finally, the Circuit Court made clear that the "several inappropriate references to . . . wealth," along with counsel's

---

[6] Though the Court found that the testimony had some prejudicial effect, it permitted the evidence because it was relevant to the question of whether particular defendants joined the conspiracy, and could not otherwise find that "a bare handful of remarks . . . created such unfair prejudice as to *substantially outweigh* the significant probative value of evidence of defendants' wealth." *Miller I*, 563 F. Supp. 2d at 112 (emphasis in original). It is on this point that the Court was overruled. *See Miller II*, 608 F.3d at 897 (finding wealth evidence irrelevant).

17

"insinuat[ion] that the money would be in better hands if it were taken from the defendants," caused substantial prejudice. *Miller II*, 608 F.3d at 898.[7] And while the government's argument that the Circuit Court should have vacated the entire damage judgment if it believed that the award was prejudiced by the evidence concerning certain defendants' wealth may be logically appealing, the Court will not place defendants' right to a full and fair opportunity to be heard in jeopardy by parsing the language of the *Miller II* opinion, particularly in light of the Circuit Court's own statement that it was only reviewing positions taken by the remaining defendants, which did not include any argument that evidence of HII's or HC's wealth prejudiced the jury's damage calculations. *Miller II*, 608 F.3d at 898.

## IV. CONCLUSION

Having completed one seven-week trial on the underhanded practices of many entities in Egypt in the 1980s, the Court is less than enthusiastic at the prospect of having a second jury review the entirety of the evidence, particularly where it previously concluded that the evidence was more than sufficient to support the first jury's findings. *Miller I*, 563 F. Supp. 2d at 138–39. But when structuring a retrial, the Court must remain vigilant to neither confuse nor prejudice the jury, and must provide defendants a full and fair opportunity to mount an unhindered defense. The Circuit Court has declared that the first jury was broadly and unduly prejudiced when BHIC's counsel was undermined and when the wealth of HII and HC was exposed, and it has said that a new trial is the only appropriate remedy. The Court shall see it done.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 29, 2011.

---

[7] A second problem for the government is that it has stated that the damage calculation turns on the harms caused by the conspiracy. Because the Court has held that the conspiracy question must be tried anew, the necessity for new factual findings on the nature and scope of the conspiracy also require new findings regarding the damage caused by that enterprise, as it is defined by the new jury.

18